OLSHAN FROME WOLOSKY LLP
Jonathan T. Koevary, Esq.
Anthony B. Crawford, Esq.
Sahand Farahati, Esq.
1325 Avenue of the Americas
New York, NY 10019
212.451.2300
jkoevary@olshanlaw.com
acrawford@olshanlaw.com
sfarahati@olshanlaw.com

*Counsel for Arch Real Estate Holdings LLC*

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
(212) 972-3000
Sean C. Southard, Esq.
Brendan M. Scott, Esq.
ssouthard@klestadt.com
bscott@klestadt.com

-and -

SCHWARTZ LAW PLLC
Allen Schwartz, Esq.
150 Broadway, Suite 701
New York, New York 10038
347-460-5379
allen@allenschwartzlaw.com

*Counsel for Jared Chassen*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>JEFFREY SOLOMON SIMPSON,<br><br>                   Debtor. | Chapter 11<br><br>Case No. 26-10359 (LGB) |
| GREAT AMERICAN TITLE INSURANCE COMPANY,<br><br>               Plaintiffs,<br><br>- against -<br><br>ARCH REAL ESTATE HOLDINGS, LLC, JEFFREY SIMPSON, JARED CHASSEN, WIGGIN AND DANA LLP, GRIFFIN LLP, and OFFIT KURMAN PA.,<br><br>               Defendants. | Adversary No. 26-01015 (LGB)<br><br>**ARCH REAL ESTATE HOLDINGS LLC'S AND JARED CHASSEN'S JOINT MOTION TO REMAND BASED ON LACK OF JURISDICTION OR, IN THE ALTERNATIVE, PRINCIPLES OF ABSTENTION OR <u>EQUITY</u>** |

Table of Contents

Page

PRELIMINARY STATEMENT ...........................................................................................1

PROCEDURAL BACKGROUND.......................................................................................3

A. AREH Sues Great American for Funding Mr. Simpson's Illegal JJ Arch Bankruptcy Filing .............................................................................................3

B. The State Court Action and Its Consolidation with the GAIC Action ...................4

C. Prior to His Personal Bankruptcy Filing, Mr. Simpson Twice Improperly Caused the Removals of the Interpleader Action, Effectively Delaying Settlement .........................................................................................................5

D. After Causing Delay Through Removal, Court Orders Expedited Summary Proceeding Over Mr. Simpson's Objection Designed to Direct Funds to Qualifying Parties Ahead of a Summer 2026 Trial in the Corporate Control Action ..........................................................................................7

E. Facing Criminal Contempt, Mr. Simpson Goes On Record in the Interpleader Action and Related Cases that He Will Boycott All Proceedings Before Justice Cohen.................................................................9

F. Mr. Simpson Has Been Found By Multiple Courts in Related Cases to Have Engaged in Forum Shopping Behavior ......................................................12

ARGUMENT...................................................................................................................14

I. THE DEBTOR HAS NOT MET HIS BURDEN .................................................14

II. MANDATORY ABSTENTION REQUIRES REMAND OF THE STATE COURT ACTION...............................................................................................16

a. The Motion Is Timely .................................................................17

b. The State Court Action Was Commenced in the Commercial Division and Is Based on State Law Claims.............................................17

c. The State Court Action Does Not Arise in the Chapter 11 Case or Under the Bankruptcy Code.................................................................18

d. There Is No Other Basis for Federal Jurisdiction ...................................22

e. The Interpleader Action Can Be Timely Adjudicated by the Commercial Division.................................................................23

i

Table of Contents
(continued)

Page

III.     PERMISSIVE ABSTENTION PROVIDES AN ADDITIONAL BASIS FOR REMAND OF THE INTERPLEADER ACTION ....................................... 24

      a.     Forum Shopping ....................................................................... 27

IV.     EQUITABLE REMAND OF THE INTERPLEADER ACTION IS APPROPRIATE ....................................................................................... 31

CONCLUSION ................................................................................................... 34

ii

CASES

*Allstate Ins. Co. v. Ace Secs. Corp.*,
   No. 11 Civ. 1914 (LBS), 2011 WL 3628852 (S.D.N.Y. Aug. 17, 2011) ....................14, 17, 23

*Arch Real Estate Holdings, LLC v. Great American Insurance*,
   Index No. 652914/2024 (Sup Ct. N.Y. Co.) ..............................................................................3

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).........................................................15

*Baker v. Simpson*,
   613 F.3d 346 (2d Cir.2010)......................................................................................................19

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).........................................................15

*BGC Partners, Inc. v. Avison Young (Canada), Inc.*,
   919 F.Supp.2d 310 (S.D.N.Y. 2013).......................................................................................14

*Bianco v. Hoehn (In re Gaston & Snow)*,
   173 B.R. 302 (S.D.N.Y. 1994).................................................................................................20

*Binder v. Price Waterhouse Co., LLP (In re Resorts Int'l, Inc.)*,
   372 F.3d 154 (3d Cir.2004)......................................................................................................19

*Brown v. Valdez*,
   No. 25-cv-1685 (BMC), 2025 WL 974607 (E.D.N.Y. April 1, 2025) ...................................15

*Buckingham Apts., Ltd. v. Liberty Mut. Ins. Co.*,
   508 N.Y.S.2d 493 (2d Dep't 1986)..........................................................................................24

*Carter v. HealthPort Techs.*,
   LLC, 822 F.3d 47 (2d Cir. 2016) .............................................................................................15

*Channel Bell Assocs. v. W.R. Grace & Co.*,
   No. 91 Civ. 5485 (PKL), 1992 WL 232085 (S.D.N.Y. Aug. 31, 1992).................................17

*Chassen v. Simpson*,
   25-cv-02373 (S.D.N.Y.) (JHR) (HJR)......................................................................................14

*Drexel Burnham Lambert Grp. v. Vigilant Ins. Co.*,
   130 B.R. 405 (S.D.N.Y. 1991).............................................................................................15, 32

iii

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
544 U.S. 280 (2005).................................................................................................13

*Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*,
496 B.R. 706 (S.D.N.Y. 2013)........................................................................ passim

*Goldome Sav. Bank v. Am. Cas. Co. of Reading*,
521 N.Y.S.2d 940 (4th Dep't 1987)........................................................................24

*Goldstein v. Joseph*,
No. 14-cv-4477 (NSR), 2015 WL 4039851 (S.D.N.Y. June 30, 2015).......................23, 31, 32

*Great American Insurance Co. v. Arch Real Estate Holdings LLC et al.*,
Index No. 653208/2024 ..............................................................................................1

*Halper v. Halper*,
164 F.3d 830 (3d Cir. 1999).....................................................................................19

*Harris v. Rand*,
682 F.3d 846 (9th Cir.2012) ....................................................................................15

*Hunter v. McMahon*,
75 F.4th 62 (2d Cir. 2023) .......................................................................................13

*In re AOG Ent., Inc.*,
569 B.R. 563 (Bankr. S.D.N.Y. 2017)...............................................................13, 14

*In re EMS Fin. Servs. LLC*,
491 B.R. 196 (E.D.N.Y. 2013) ................................................................................20

*In re Guild & Gallery Plus, Inc.*,
72 F.3d 1171 (3d Cir. 1996).....................................................................................19

*In re JJ Arch LLC*,
663 B.R. 258 (Bankr. S.D.N.Y 2024).....................................................................6, 13

*In re JJ Arch LLC*,
Nos. 24-10381 (JPM), 24-1335 (JPM), 2024 WL 2933427 (Bankr. S.D.N.Y.
June 10, 2024)................................................................................12, 13, 21, 27

*In re Maa-Sharda, Inc.*,
2015 WL 1598075 ....................................................................................................26

*In re Old Carco LLC*,
636 B.R. 347 (Bankr. S.D.N.Y. 2022).....................................................................18

*In re Peanut Corp. of Am.*,
    407 B.R. 862 (W.D. Va. 2009) .........................................................................................19

*In re Partners In Hope, Inc*,
    662 B.R. 120 (Bankr. D.S.C. 2024) .................................................................................20

*In re U.S. Lines, Inc.*,
    197 F.3d 631 (2d Cir. 1999)............................................................................................20

*J.T. Moran & Co. v. Phonetel Tech, Inc. (In re J.T. Moran Fin. Corp.)*,
    119 B.R. 447 (Bankr. S.D.N.Y. 1990)............................................................................18

*Joremi Enters., Inc. v. Hershkowitz (In re New 118th LLC)*,
    396 B.R. 885 (Bankr. S.D.N.Y. 2008)..................................................................19, 21, 24

*Leite v. Crane Co.*,
    749 F.3d 1117 ................................................................................................................15

*Little Rest Twelve, Inc. v. Visan*,
    458 B.R. 44 (S.D.N.Y. 2011)...............................................................................17, 22, 33

*Longhorn Partners Pipeline L.P. v. KM Liquids Terminals, L.L.C.*,
    408 B.R. 90 (Bankr. S.D. Tex. 2009) .............................................................................19

*McCord as Tr. of Est. of Haniff v. Gov't Emps. Ins. Co.*,
    No. 22-MC-3611 (MKB), 2023 WL 4209542 (E.D.N.Y. June 27, 2023).......................20, 21

*Mt. McKinley Ins. Co. v. Corning Inc.*,
    399 F.3d 436 (2d Cir. 2005)..........................................................................................18, 20

*Official Comm. of Unsecured Creditors Hydrogen, L.L.C. v. Blomen (In re
    Hydrogen, L.L.C.)*,
    431 BR 337 (Bankr. S.D.N.Y. 2010).................................................................................18

*Onewoo Corp. v. Hampshire Brands, Inc.*,
    566 B.R. 136 (Bankr. S.D.N.Y. 2017)..............................................................................17

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*,
    639 F.3d 572 (2d Cir. 2011)..................................................................................14, 17, 23

*Quackenbush v. Allstate Ins. Co.*,
    517 U.S. 706 (1996)........................................................................................................13

*R.G. Barry Corp. v. Mushroom Makers, Inc.*,
    612 F.2d 651 (2d Cir. 1979)............................................................................................14

13202665-1

*Rescap Liquidating Trust v. CMG Mortg., Inc.* (*In re Residential Capital*),
   Case No. 14-4950, 2014 WL 4652664 (S.D.N.Y. Sept. 10, 2014) ......................................... 20

*Roman Cath. Diocese of Rockville Ctr. v. Certain Underwriters at Lloyds, London
   & Certain London Mkt. Companies*,
   634 B.R. 226 (S.D.N.Y. 2021) ........................................................................................... 21

*Schumacher v. White*,
   429 B.R. 400 (E.D.N.Y. 2010) ........................................................................................... 18

*Simpson v. Chassen*,
   25-CV-4004 (JMF), 2025 WL 1784931 (S.D.N.Y. June 27, 2025) ................................. 13, 27

*Simpson v. Cohen et. al.*,
   Civ. No. 1:26-cv-00130 (LTS) (S.D.N.Y.) ........................................................................... 12

*Simpson v. Cohen et. al.*,
   Civ No. 1:26-cv-00193 (LTS) (S.D.N.Y.) ............................................................................ 12

*Simpson v. New York State Unified Court System, et. al.*,
   Civ. No. 1:26-cv-00110 (LTS) (S.D.N.Y.) ........................................................................... 12

*Simpson v. Wilson et. al.*,
   Civ. No. 2:26-cv-00125 (SJB)(ARL) (E.D.N.Y.) ................................................................. 12

*Stahl v. Stahl*,
   No. 03 Civ. 0405 VM, 2003 WL 22595288 (S.D.N.Y. Nov. 7, 2003) ....................... 32, 33, 34

*Stern v. Marshall*,
   564 U.S. 462 (2011) .......................................................................................................... 21

*Weiss v. Yotta Techs., Inc.*,
   No. 22-cv-8569 (JPO), 2024 U.S. Dist. LEXIS 174052 (S.D.N.Y. Sept. 25,
   2024) ................................................................................................................................ 14

STATUTES

11 U.S.C. § 541(a) ................................................................................................................. 16

28 U.S.C. § 1334 ............................................................................................................. passim

28 U.S.C. § 1446 ................................................................................................................. 1, 6

28 U.S.C. § 1447 ............................................................................................................... 1, 17

13202665-1

28 U.S.C. § 1452.................................................................................................. 1, 15-18, 31, 34

42 U.S.C. § 1983 ...................................................................................................12, 30

OTHER AUTHORITIES

CPLR 3001...........................................................................................................18

Fed.R.Bankr.P. 9027 ..............................................................................................1

Fed.R.Civ.P. 8(a)(1).............................................................................................15

U.S. Const. Art. III..............................................................................................21

13202665-1

Jared Chassen ("Mr. Chassen") and Arch Real Estate Holdings LLC ("AREH" and together with Mr. Chassen, the "Movants"), by and through their respective undersigned counsel, submit this joint motion to pursuant to 28 U.S.C. §§ 1334, 1446, 1447 and 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure (the "Motion") to remand the claims in the above-referenced proceeding originally commenced by Great American Insurance Company ("GAIC") before the Supreme Court of the State of New York, County of New York, Commercial Division (the "Commercial Division") and styled *Great American Insurance Co. v. Arch Real Estate Holdings LLC et al.,* Index No. 653208/2024, and the related proceedings consolidated therewith (the "State Court Action" or the "Interpleader Action"), removed by Mr. Simpson to this Court pursuant to the Notice of Removal, Adv. Pro. Dkt. No. 1 (March 3, 2025) ("Notice of Removal"). As set forth more fully below, remand is appropriate based upon the failure to adequately plead subject matter jurisdiction, or, in the alternative, on grounds of abstention or on equitable grounds. In support of the Motion, the Movants respectfully state as follows:

**PRELIMINARY STATEMENT**

1. This Motion seeks to remand to the Commercial Division the Interpleader Action brought by the GAIC against Jeffrey Simpson ("Mr. Simpson" or the "Debtor"), a non-debtor affiliated entity, JJ Arch LLC ("JJ Arch"), and five other non-Debtor defendants, including AREH and Mr. Chassen. GAIC's complaint in the Interpleader Action alleges competing claims to coverage under an officer and director policy purchased and owned by AREH (the "Policy").[1], which claims uniformly arise under state law and were asserted long before the Debtor's bankruptcy petition.

---

[1] Asset Management Liability Solution Policy No. PEPE246619 with a policy period of April 18, 2023, to April 18, 2024.

2. As more further set forth below, GAIC initiated the Interpleader Action in the wake of AREH having commenced a prior suit against GAIC in the Commercial Division for breaching the same Policy on account of GAIC's improper advancement of proceeds to cover JJ Arch's attorneys' fees. GAIC responded by filing the Interpleader Action, which actions were eventually consolidated.

3. Prior to the consolidation, the Interpleader Action had been removed at Mr. Simpson's direction and then subsequently remanded twice before, which had the net effect of slowing down what should have otherwise been a summary process. As of the Debtor's bankruptcy filing on February 19, 2026 (the "Petition Date"), a so-ordered summary process was set to begin in earnest with a March 26, 2026 return date set to consider competing claims and briefing due on February 26, 2026. The schedule was then stayed automatically once again as of the Petition Date and as a consequence of the Debtor's bankruptcy.

4. The mandatory and permissive doctrines of abstention, as well as principles of equity, each mandate remand of this Interpleader Action. Mandatory abstention is warranted because the Interpleader Action was commenced prior to the bankruptcy filing, does not arise under title 11, and can be timely adjudicated. Permissive abstention and equitable remand are also warranted because all applicable factors weigh in favor of abstention, of which, as in the JJ Arch case, Mr. Simpson's record of forum shopping, is of particular relevance here. Mr. Simpson is on record for asserting that "I will not present myself in front of a disastrous abomination of any type of justice system that occurs in the courtroom of Judge Joel Cohen." In fact, in late 2025, Mr. Simpson engaged in a campaign of defiance, going on record again and again to make his position crystal clear that he would no longer appear before the Commercial Division in the Interpleader Action or otherwise. This conduct comes on the heels of Mr. Simpson having removed the

Interpleader Action twice before: first in connection with the JJ Arch bankruptcy case, which was subsequently remanded when the JJ Arch case was dismissed, and later by Mr. Simpson, which the District Court remanded for having been improper. The most recent Notice of Removal also comes in the wake of two previous decisions, one by Bankruptcy Judge Mastando, and the other District Judge Furman, each finding that Mr. Simpson engaged in forum shopping to escape the very same judge presiding over the Interpleader Action, with Judge Furman finding that Mr. Simpson acted vexatiously in doing so.

## PROCEDURAL BACKGROUND

**A.** **AREH Sues Great American for Funding Mr. Simpson's Illegal JJ Arch Bankruptcy Filing**

5. On June 7, 2024, AREH brought suit against GAIC in the case captioned, *Arch Real Estate Holdings, LLC v. Great American Insurance*, Index No. 652914/2024 (Sup Ct. N.Y. Co.) (the "AREH Action"), alleging breach of contract arising from GAIC's voluntary payment of JJ Arch's attorneys' fees in violation of the terms of the Policy AREH Action Complaint NYSCEF No 2. A copy of the Policy is found at Adv. Pro. ECF. 1-2. AREH also sought a declaration that it was entitled to coverage under the Policy for several litigations that it was defending against. *Id.*

6. Specifically, AREH alleged that GAIC's voluntary payment of legal fees for JJ Arch's chapter 11 bankruptcy filing—despite having previously determined that JJ Arch was not an insured under the Policy—was improperly eroding or reducing the policy limits and causing AREH damages.

7. AREH sought damages caused by GAIC's breach of the terms of the Policy in funding litigation adverse to AREH's interests and harming AREH by impairing its ability to perform important, time-sensitive business transactions and failing to provide coverage for several litigations that AREH was defending against. *See* AREH Action Complaint, NYSCEF No 2.

13202665-1

AREH subsequently amended its complaint by way of counterclaims as part of the later consolidation with the Interpleader. NYSCEF Nos. 240, 309.[2]

8.      AREH also sought a declaration that: "(a) JJ Arch is not an insured (which Great American has already conceded); (b) Great American's decision to pay JJ Arch's costs in the Bankruptcy Case and any payment of such costs constitutes a voluntary payment; and (c) Great American's payment of JJ Arch's costs in the Bankruptcy Case does not erode the Policy's available limits for AREH and other insureds to the extent of such payments." *Id.* at 22-23.

**B.      The State Court Action and Its Consolidation with the GAIC Action**

9.      On June 26, 2024, GAIC filed its Interpleader Complaint instead of answering or otherwise moving in response to AREH's lawsuit. GAIC sought to deposit the amounts remaining under the Policy limits ($2,105,999.29 after accounting for previous advances) with the New York City Department of Finance. and named as defendants AREH, Mr. Simpson, Mr. Chassen, Wiggin and Dana LLP, Griffin LLP, and Offit Kurman PA as parties with competing interests in such Policy.

10.      The Interpleader Complaint alleged that GAIC properly advanced $894,000.71 in Policy proceeds for purported "Costs of Defense." Interpleader Complaint [Adv. Pro. ECF. 1-1] ¶¶ 33-35. It further alleges that the entirety of this amount was advanced to or on behalf of Mr. Simpson. *Id.* In so doing, GAIC made clear that it has favored Mr. Simpson's claims over other insureds, and that it had refused to make any payments to Mr. Chassen at Mr. Simpson's request.

11.      On November 29, 2024, the Commercial Division granted JJ Arch LLC's motion to intervene in the Interpleader Action. NYSCEF No. 135. AREH filed a counterclaim on August

---

[2] Unless otherwise denoted, cites to NYSCEF will be to the Commercial Division's docket in the Interpleader Action.

13202665-1

30, 2024, seeking declaratory judgment that the policy covers AREH with respect to a separate litigation. NYSCEF No. 69.

12.     On December 9, 2025, the Commercial Division ordered the AREH Action consolidated with the Interpleader Action.  AREH amended its counterclaim to reflect AREH's claims for coverage under the policy with respect to the case captioned, *Jeffrey Simpson, individually and derivatively, as managing member of JJ Arch LLC, suing derivatively as managing member of Arch Real Estate Holdings LLC and JJ Arch LLC, v. Jared Chassen, et al.*, Index No. 158055/2023, (the "Corporate Control Action") (including related proceedings), and certain other related litigation.

13.     AREH also sought a declaration that GAIC's funding of JJ Arch's bankruptcy case was improper, and that any payments made to fund JJ Arch's bankruptcy case constituted a voluntary payment by GAIC that did not erode the policy limits and which should be restored to the available limits under the Policy. Mr. Chassen also asserted independent counterclaims against GAIC. NYSCEF Doc. 104.

**C.     Prior to His Personal Bankruptcy Filing, Mr. Simpson Twice Improperly Caused the Removals of the Interpleader Action, Effectively Delaying Settlement**

14.     The Debtor concedes that the Interpleader Action has been previously twice removed.  NYSCEF No. 369 ¶ 9. The prior removals were each caused by the Debtor. First, JJ Arch, operating under Mr. Simpson's direction, removed the Interpleader Action to the JJ Arch bankruptcy case on September 19, 2024, while AREH and Mr. Chassen's joint motion to dismiss the JJ Arch bankruptcy case was pending. Notice of Removal [Adv. Pro. ECF 1] ¶ 9. Although JJ Arch was not a party to the Interpleader Action at the time (it later intervened), it argued in its Notice of Removal that JJ Arch "is the active party and is the real party in interest." 24-04026 (Bankr. S.D.N.Y. Dkt. 1), Notice of Removal ¶ 11. The State Court Action was remanded on

13202665-1

October 30, 2024, in connection with Judge Mastando's October 11, 2024 order dismissing the JJ Arch bankruptcy case for cause based upon a substantial or continuing loss or diminution of the estate, Mr. Simpson's gross mismanagement, and Mr. Simpson's bad faith, including forum shopping from Justice Cohen. *In re JJ Arch LLC*, 663 BR 258 (Bankr. S.D.N.Y. 2024).

15. Second, on March 20, 2025, following the JJ Arch dismissal, Mr. Simpson removed the case himself to the District Court. 25-cv-02375 (S.D.N.Y.).[3] GAIC objected, arguing that the removal was improper because it was (1) untimely pursuant to 28 U.S.C. § 1446(b)(1); (2) not all defendants consented as required by 28 U.S.C. § 1446(b)(2)(A); and (3) lack of federal subject matter jurisdiction *Id*. Dkt. No. 9. Defendants Chassen and AREH joined. *Id*. Dkt. No. 10. On July 1, 2025, District Judge Vyskocil entered an order remanding the State Court Action on the second ground—not all defendants consented and AREH actively opposed—without reaching any other ground. *Id*. at Dkt. No. 32.

16. This second removal came on the heels of a hearing where Justice Cohen orally ruled on a path forward that would grant the interpleader and consolidate the two insurance cases. NYSCEF No. 288. However, the removal occurred prior to entry of any order memorializing Justice Cohen's ruling and the case was not restored to the Commercial Division's docket until July 16, 2025. NYSCEF No. 285.

---

[3] At the time of the March 2025 removal, Mr. Simpson concurrently removed two other actions pending before Justice Cohen (Corporate Control Action NYSCEF Nos. 1380 & Chassen v. Simpson (654928/2024), NYSCEF Doc. No. 101). At that time, the Commercial Division indicated it was going to appoint a receiver over Mr. Simpson's objection. Corporate Control Action NYSCEF No. 1352.

13202665-1

**D.** **After Causing Delay Through Removal, Court Orders Expedited Summary Proceeding Over Mr. Simpson's Objection Designed to Direct Funds to Qualifying Parties Ahead of a Summer 2026 Trial in the Corporate Control Action**

17. On November 25, 2025, the State Court conducted a conference in the AREH Action. The Court put on the record that the conference had been in error and that the Court had intended to schedule a conference in the Interpleader Action. NYSCEF No. 308. Justice Cohen stated that he would soon reschedule a conference for the Interpleader Action, which was subsequently held on December 1, 2025. Justice Cohen further stated at the November conference:

> There hasn't been any real discussion apart from coming to court about getting this insurance dispute resolved because the obvious point I wanted to make today was I don't know if I would call it a wasting asset, but this insurance -- these insurance proceeds are intended to be used for these cases, and if the insurance dispute doesn't get resolved soon, it becomes sort of not very sensible, and I have made that point before, but the removal and remand process has thrown everything off from what it should have been. But you know, we've now had the case back here I guess since July. And so my goal is to light a fire. I'll light a fire under you two, but my real point is to communicate this to the others, and I guess what I'll do is set another calendar as soon as I can with everyone which is the idea for today.
>
> ***
>
> I certainly am fine with you communicating that we had this hearing and that we're going to have it the right way shortly and that the Court is very anxious to get to a final resolution on the insurance proceeds.

11/25/25 Hr'g Trans. at 5:2-16; 6:12-15. NYSCEF No. 308.

18. Shortly after the subsequent December 1 conference, parties submitted a joint proposal for the Court to conduct a summary proceeding that called for opening briefs due January 15 with a February 12 return date. Mr. Simpson and JJ Arch (acting at Mr. Simpson's direction) were the only two holdouts:

> We have conferred with counsel for the Interpleader Defendants; and Arch Real Estate Holdings, LLC, Jared Chassen, Wiggin & Dana LLP, Griffin LLP and Offit Kurman PA do not oppose the proposed Order and are amenable to the process to address the claims to the Stake laid out therein. Interpleader Defendant Jeffrey Simpson, personally and derivatively on behalf of JJ Arch LLC, does not join and otherwise opposes the request to enter the proposed Order; and based upon

7

discussions with counsel, we understand that Mr. Simpson intends to submit a separate filing in short order stating his/JJ Arch's positions directly.

12/12/25 Letter on behalf of GAIC, attaching proposed order. NYSCEF No. 311.

19.     On December 12, 2025, the Commercial Division set a Case Management Order scheduling trial in the Corporate Control Action for July 27, 2026. Corporate Control Action NYSCEF No. 2167

20.     January 22, 2026, the Commercial Division entered the proposed order (the "Summary Order") as slightly modified, providing for a summary adjudication process concerning the stake of $2,105,999.29 (the "Stake") with opening briefs due February 26, 2026 and a March 26, 2026 return date. NYSCEF No. 360 (also available at Adv. Pro. ECF. 1-55.). The order directed GAIC to deposit the Stake with the New York City Department of Finance.

21.     The Debtor filed his bankruptcy case one week prior to the submission deadline. Claiming interests in the Stake, AREH and Mr. Chassen each intended to file submissions in accordance with the Summary Order.

22.     The Summary Order recognized that "some Interpleader Defendants claim a right to amounts beyond the Stake, and contend that more remains available under the Policy than the Stake and/or assert independent liability against GAIC (the "Independent Claims");"

23.     Importantly, the Commercial Division ordered that:

> the Independent Claims, and all other claims for independent liability asserted against GAIC relating to the Policy, and all claims for amounts beyond the Stake asserted against GAIC relating to the Policy shall be severed and adjudicated in this Interpleader Action following resolution of the distribution of the Stake, on a schedule to be set by the Court that will include appropriate time for discovery;

Summary Order at 2, 4.

13202665-1

24. Accordingly, the Summary Order contemplates AREH's additional claims against GAIC from the AREH Action that were consolidated with the Interpleader Action will remain viable as part of the Interpleader Action after resolution of the entitlements to the Stake and will be adjudicated on a later schedule set by the Commercial Division.

**E.      Facing Criminal Contempt, Mr. Simpson Goes On Record in the Interpleader Action and Related Cases that He Will Boycott All Proceedings Before Justice Cohen**

25. In the months leading to his personal bankruptcy filing, Mr. Simpson wrote a series of letters and emails declaring he had no intention of allowing Justice Cohen to continue to preside over the Interpleader Action or the Corporate Control Action. Many of these communications came in the wake of Justice Cohen's late November scheduling of a December 1, 2025 conference in the Interpleader Action, for which the "main focus is on directing that this matter proceed efficiently and expeditiously and in a consolidated manner now that the cases are back in this Court." 11/26/25 Letter from Hon. Joel N. Cohen, NYSCEF No. 296 at 2. See for example,

> So you lost your chance at the table here, unless an unless a competent jurisdiction tells me otherwise (no, that's not you with what you've done). Again this is my show as a business owner and operator , not yours to attack by 14th amendment right to private business"

> So no again. Focus on all the parties but I'm the only one relevant here because this is my show and you somehow think you got to take control of my businesses . I cannot wait for the day for the federal courts or criminal justice folks to look at everything that you did and put you in the hot seat because you actually did bad things, very bad things, those that no Court in any world would do, unlike me - the other guy who stands up for justice and in a normal world has people like you for breakfast and they never sued me because I never could but because of immunity you get to play this game.

11/26/2025 Email to Justice Cohen NYSCEF No. 296.

> And anyone that reads this will want to understand why you have the right to touch my insurance and no sir, go ahead do what you want to do on Monday [the date of the scheduled conference in the State Court Action] but I'll have nothing to do with it or anything in front of you. Any negative consequence will simply just be added to the list of damages by an incompetent Court.

11/26/25 Email NYSCEF No. 297.

> The insurance issue is non issue because Scott Schecter, made demands similar to mine of Schwartz, and he avoided answering the questions. He also told me, on behalf of his client, that the moment this relationship, via the JDA was released, they would resume coverage for my for legal defense. He chose not to. Why would they do that? They have a judge on the take, who needs the circumstance for me to get obliterated so that he could save his own rear end. There is no other reason why last October he gave Mr. Schecter the choice, of behalf his client, to not resume funding of my defense. That's another law being breached by this court. The NYS law is explicit on insurance but why would that matter here? No rules matter here.

> ***

> Making an argument in front of incompetent judicial body that is either corrupt or allows corruption in front of its eyes, that suffices for me to speak up and stay far away. Instead my energy will be spent with prosecutors and law-enforcement.

11/27/25 Email NYSCEF No. 299.

> To the extent you (the court) proceeds forward with a Conference which with you never means a conference it always means that you do bad things to the one that you prejudice the most, me regardless how it all surrounds me how I own it all I have control over all of it how everything was for my benefit because it was my business, you still do whatever you want because you clearly just don't have that in your life so you need to jump in and try to control other people's destinies because you use power in ways that you were not granted to do, and it is unlawful. If Mr. Rajotte decides to appear today, he's doing that on his own but not with my support because no one will convince me to appear in front of a corrupt court. Unless I'm forced to by someone under the law (with competent jurisdiction) I will not present myself in front of a disastrous abomination of any type of justice system that occurs in the courtroom of Judge Joel Cohen.

> Any ruling, any decisions will be challenged, so will your proposed reappointment for June 2026.

12/1/2025 Email: NYSCEF No. 300.

> And no I've told Mr Rajotte to stay far away from you and my words are meaningful to me and I am not interested in appearing in front of you or going anywhere near you. When I talked about a restraining order against you I meant it. You have a vendetta to ruin my life, and it is horrific. So I'm not pleading to you I'm talking to you to tell you that you are not going to push Mr. Rajotte into a corner. You've caused enough damage and destruction.

12/24/25 NYSCEF No. 315.

Again, my position hasn't changed and it's very clear below and I don't need to repeat myself. When someone other than you decides about jurisdiction and what is right from wrong we will have further dialogue in NYS court.

If you consider any further harmful action against me and anything related to me further, it will be reported to all the authorities as I have for every other action that you've done to date. Your immunity only lasts so far.

You are on notice and I expect this to be our last communication other than the one where you are on the stand and you are on trial for what you've done here.

12/24/25 NYSCEF No. 316.

26. During this time period, Mr. Simpson was facing a fully submitted civil and criminal contempt motion for his long-standing defiance of orders concerning the appointment and direction of the receiver following a multi-day evidentiary hearing in the Corporate Control Action.[4] While the motion was pending, Mr. Simpson engaged in repeated acts of defiance of other state court orders that led to multiple sanctions orders. Corporate Control Action NYSCEF No. 1847, September 24, 2025 Order; NYSCEF No. 1851, September 29, 2025 Order; NYSCEF No. 1998, October 8, 2025 Order; NYSCEF No. 2157, December 5, 2025 Order.[5] Mr. Simpson also refused to appear at the contempt hearing. NYSCEF Nos. 2126-2127, October 2025 Emails from Simpson to Court; NYSCEF No. 2052, October 10, 2025 Hr. Tr.

---

[4] *See* Corporate Control Action NYSCEF Nos. 1537-1558, 1567-1569, 1586, 1591-1597, 1600, 1603-1606, 1608-1609, 1611-1678, 1683, 1688-1693, 1705-1760, 1811-1815, 1817-1819, 1842-1844, 1860-1897, 1918-1921, 1984-1987, 2000, 2005, 2050-2052, 2056, 2072, 2073, 2075.

[5] Many of Mr. Simpson's emails have been subsequently filed on the NYSCEF docket at Corporate Control Action NYSCEF Nos. 1860-1897, 1909-1911, 2126-2134, 2150, 2152-2153, 2179-2185. Mr. Simpson himself posted many such emails to NYSCEF and filed a letter to the state court where he said that in his view "we do not have a Court or a Judge on this Case …" Corporate Control Action NYSCEF Nos. 1929-1983. Mr. Simpson, unsurprisingly, has never paid any of the fines in those orders despite being ordered to do so. The last order warned Mr. Simpson that further defiance could lead to the striking of his pleadings. Corporate Control Action NYSCEF No. 2157. Demonstrating that he was undeterred even by such warnings or such consequences, after the fourth sanctions order, Mr. Simpson continued to send such emails and continued to defy the orders. *See e.g.*, Corporate Control Action NYSCEF Nos. 2239-2248.

13202665-1

27.     Mr. Simpson was also facing a fully submitted default judgment motion and motion to strike his pleadings for his open boycott of the state court proceedings, which included his longstanding refusal to participate in discovery. Corporate Control Action NYSCEF Nos. 2230-2255, 2322-2327, 2334-2343; NYSCEF Nos. 2258-2264.

28.     Prior to filing this personal chapter 11 bankruptcy case, Mr. Simpson filed three frivolous lawsuits under 42 U.S.C. § 1983 against Justice Cohen in federal district court, as well as a federal case against the temporary receiver appointed by Justice Cohen in the Corporate Control Action, and various counsel, all in a failed effort to stop the state court proceedings. *Simpson v. New York State Unified Court System, et. al.*, Civ. No. 1:26-cv-00110 (LTS) (S.D.N.Y.); *Simpson v. Cohen et. al.*, Civ No. 1:26-cv-00193 (LTS) (S.D.N.Y.); *Simpson v. Cohen et. al.*, Civ. No. 1:26-cv-00130 (LTS) (S.D.N.Y.); *Simpson v. Wilson et. al.*, Civ. No. 2:26-cv-00125 (SJB)(ARL) (E.D.N.Y.).

**F.**     **Mr. Simpson Has Been Found By Multiple Courts in Related Cases to Have Engaged in Forum Shopping Behavior**

29.     In April 2024, Mr. Simpson removed the Corporate Control Action to federal bankruptcy court after he filed a Chapter 11 bankruptcy petition on behalf of JJ Arch LLC during March of that same year as its purported "sole member" and without Mr. Chassen's consent. Corporate Control Action NYSCEF Nos. 629, 630, 631, 632, Notice of Bankruptcy and Correspondence; NYSCEF No. 635-636, Notice of Removal. The Bankruptcy Court found that Mr. Simpson's removal was an act of forum shopping. *See In re JJ Arch LLC*, Nos. 24-10381 (JPM), 24-1335 (JPM), 2024 WL 2933427 at *15-20 (Bankr. S.D.N.Y. June 10, 2024); *id.* at *19, n 24 (citing to and noting that "[m]any of Mr. Simpson's emails indicate a certain displeasure for Mr. Chassen … and—perhaps most notably—Justice Cohen's Interim Orders.").  Judge Mastando stated that "[i]t is well-established that state-court losers complaining of injuries caused by state-

13202665-1

court judgments' cannot use the federal judiciary as an appellate court." *Id.* at 20 (*citing Hunter v. McMahon,* 75 F.4th 62, 65 (2d Cir. 2023) (discussing the *Rooker-Feldman* doctrine). Judge Mastando further stated:

> *Rooker-Feldman*, of course, only applies where "the losing party in state court filed suit in federal court *after the state proceedings ended*." *Hunter v. McMahon*, 75 F.4th 62, 65 (2d Cir. 2023) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005)) (emphasis in original). The Court nonetheless finds that, in this case, the principle underlying *Rooker-Feldman* and its progeny support abstention under Section 1334(c)(1). *See* 28 § 1334(c)(1) ("[N]othing in this section prevents a district court in the interest of justice, or in the *interest of comity* with State courts or *respect for State law*, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.") (emphasis added); *see also In re AOG Ent., Inc.,* 569 B.R. 563, 573 (Bankr. S.D.N.Y. 2017) ("Federal courts abstain out of deference to the paramount interests of another sovereign, and the concern is with principles of comity and federalism.") (citing *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 723 (1996)).

*Id.*

30.     On October 11, 2024, the Bankruptcy Court dismissed the JJ Arch bankruptcy case entirely because it found that Mr. Simpson had filed it in subjective and objective bad faith and then grossly mismanaged JJ Arch during the bankruptcy proceeding. *In re JJ Arch LLC,* 663 B.R. 258 (Bankr. S.D.N.Y 2024).

31.     On June 27, 2025, the United States District Court sanctioned Mr. Simpson for filing a frivolous removal to federal court and enjoined him from further removals without the District Court's prior permission. *Simpson v. Chassen*, 25-CV-4004 (JMF), 2025 WL 1784931, at *2 (S.D.N.Y. June 27, 2025). In issuing an injunction, the District Court found that "Simpson's vexatious history of litigation is evidenced by his three baseless attempts to remove this action to federal court," and "[c]oupled with his vexatious conduct in state court" led the court "to believe that Simpson used the removals as a vehicle to defy the [state court's] orders." *Id*. (internal citations and quotations omitted).

13202665-1

32.     Finally, in yet another wrongfully removed case involving Mr. Simpson and Mr. Chassen, *Chassen v. Simpson*, 25-cv-02373 (S.D.N.Y.) (JHR) (HJR), Magistrate Judge Henry J. Ricardo entered a report and recommendation, subsequently adopted by District Judge Jennifer H. Rearden, found that

> While it is a close call, the Court should not impose sanctions in this case due to Simpson's pro se status. He is warned, however, that should he remove the State Court Action a second time, he should expect to be sanctioned. *See Weiss v. Yotta Techs., Inc.*, No. 22-cv-8569 (JPO), 2024 U.S. Dist. LEXIS 174052 at *4–5 (S.D.N.Y. Sept. 25, 2024).

 (May 28, 2025, ECF No. 29 at 12, adopted August 25, 2025, ECF No. 32).

## ARGUMENT

### I.

### THE DEBTOR HAS NOT MET HIS BURDEN

33.     Where removal of an action or claims from state court to federal court is challenged, the removing party "has the burden 'to establish its right to a federal forum by competent proof.'" *Allstate Ins. Co. v. Ace Secs. Corp.*, No. 11 Civ. 1914 (LBS), 2011 WL 3628852, at *3 (S.D.N.Y. Aug. 17, 2011) (quoting *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979)). "On a motion for remand, the court must construe all disputed questions of fact and controlling substantive law in favor of the [party seeking remand]." *Id*. (internal quotation marks and citation omitted). "Since [*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572 (2d Cir. 2011)], courts have placed the burden of proof on the party opposing remand." (In re AOG Ent., Inc., 569 B.R. 563, 573 (Bankr. S.D.N.Y. 2017) (citing *BGC Partners, Inc. v. Avison Young (Canada), Inc.*, 919 F.Supp.2d 310, 319 n.66 (S.D.N.Y. 2013) ("[P]articularly in the context of removal, where any doubts are to be resolved against removability, the burden should be on [the removing parties] to prove that the state court cannot adjudicate the claims in a timely manner.").

13202665-1

34. Section 1452(a) of the United States Code provides that a party may remove a claim or cause of action in a civil action "to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of [title 28 of the United States Code]." 28 U.S.C. § 1452 (a). Accordingly, jurisdiction under Section 1334—providing for federal bankruptcy jurisdiction—is a threshold requirement for "bankruptcy removal" of state court claims pursuant to Section 1452(a). *See Drexel Burnham Lambert Grp. v. Vigilant Ins. Co.*, 130 B.R. 405, 407 (S.D.N.Y. 1991).

35. To invoke a federal court's subject-matter jurisdiction, a plaintiff (or removing party) needs to provide "a short and plain statement of the grounds for the court's jurisdiction." Fed.R.Civ.P. 8(a)(1). The plaintiff must allege facts, not mere legal conclusions, in compliance with the pleading standards established by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). *See Harris v. Rand*, 682 F.3d 846, 850–51 (9th Cir.2012). Assuming compliance with those standards, the plaintiff's factual allegations will ordinarily be accepted as true unless challenged by the defendant. *Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir (2014) (applying requirement that jurisdictional statement must comply with Rule 8 pleading standards to removal notice citing Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1363, at 107 (3d ed.2004)_. *See also Carter v. HealthPort Techs*., LLC, 822 F.3d 47, 60 (2d Cir. 2016) ("[T]he Complaint is deficient because it contains no allegation as to the identity or citizenship of [the defendant LLC's] members."); *Brown v. Valdez*, No. 25-cv-1685 (BMC), 2025 WL 974607, at *1-2 (E.D.N.Y. April 1, 2025) (collecting cases supporting that subject matter jurisdiction allegation is subject to the Rule 8(a)(1) standard).

13202665-1

36.     In its Notice of Removal, the Debtor relies on 28 U.S.C. § 1334(b) as the potential basis for federal jurisdiction over the State Court Action "because the Interpleader Action is a civil proceeding arising in or related to a case under the Bankruptcy Code, namely the Debtor's bankruptcy case, and the Interpleader Action may therefore be removed to this Court, pursuant to 28 U.S.C. § 1452(a)." Removal Notice ¶ 5. The Debtor arrives at this position by arguing that "[t]he Debtor's claims for coverage and the Debtor's interest in the proceeds of the subject insurance policy are property of the Debtor's bankruptcy estate, pursuant to section 541(a) of the Bankruptcy Code, 11 U.S.C. § 541(a)." Id. ¶ 4.

37.     The Debtor offers no facts or supporting law beyond the foregoing threadbare allegations and does not provide any analysis for why the adversary proceeding might be "arising in" or "related to" the Debtor's bankruptcy case. Therefore, the Debtor has not met its burden to show subject matter jurisdiction exists for the Court to entertain this adversary proceeding.

**II.**

**MANDATORY ABSTENTION REQUIRES
REMAND OF THE STATE COURT ACTION**

38.     At most, this Court has related-to jurisdiction to consider the Interpleader Action. The mandatory abstention requirements under 28 U.S.C. § 1334 (c)(2) require this Court to remand the State Court Action to the Commercial Division.

39.     The standard for mandatory abstention is set forth in Section 1334(c)(2):

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. §1334(c)(2).

13202665-1

40.     There are thus six requirements for mandatory abstention: "(1) the motion to abstain is timely; (2) the action is based on a state law claim; (3) the action is 'related to' but not 'arising in' a bankruptcy case or 'arising under' the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) the action can be timely adjudicated in state court." *Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*, 496 B.R. 706, 711 (S.D.N.Y. 2013) (internal citation omitted). The Debtor bears the burden of demonstrating that the test for mandatory abstention has not been met. *Allstate Ins. Co.*, 2011 WL 3628852 at \*7 (citing *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 582 (2d Cir. 2011).

### a.     The Motion Is Timely

41.     The first prong of mandatory abstention analysis—whether the abstention motion is timely—is satisfied here. Although Section 1334 (c)(2) does not define a "timely" motion, "[c]ourts have generally adopted a flexible, case-specific approach in determining whether a motion for mandatory abstention is 'timely.'" *Channel Bell Assocs. v. W.R. Grace & Co.*, No. 91 Civ. 5485 (PKL), 1992 WL 232085, at \*5 (S.D.N.Y. Aug. 31, 1992). This Motion is being filed within 30 days of removal. *See Little Rest Twelve, Inc. v. Visan*, 458 B.R. 44, 54 (S.D.N.Y. 2011) (motion for remand "filed within the thirty-day window provided by 28 U.S.C. § 1447 (c)" is timely). No pleadings or other substantive filings, discovery practice, or significant case developments have yet taken place in this Court. Accordingly, this Motion for abstention is timely.

### b.     The State Court Action Was Commenced in the Commercial Division and Is Based on State Law Claims

42.     The second and fifth prongs of the mandatory abstention analysis are likewise satisfied here, as the State Court Action was filed in the New York state court, and the claims sought to be remanded are entirely state law claims that present no federal question. *See Onewoo*

*Corp. v. Hampshire Brands, Inc.*, 566 B.R. 136, 139 (Bankr. S.D.N.Y. 2017) (breach of contract claims are state law claims, not created by the Bankruptcy Code); *Official Comm. of Unsecured Creditors Hydrogen, L.L.C. v. Blomen (In re Hydrogen, L.L.C.)*, 431 BR 337, 346 (Bankr. S.D.N.Y. 2010) (breach of fiduciary claims are state law claims); see CPLR 3001 (providing NY Supreme Court with power to issue declaratory judgments "having the effect of a final judgment as to the rights and legal relations of the parties to a justiciable controversy…").

  **c.  The State Court Action Does Not Arise in the Chapter 11 Case or Under the Bankruptcy Code**

  43.  The third requirement is also met, for the claims asserted in the State Court Action are not core claims arising in a bankruptcy case or under the Bankruptcy Code. *See Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 447-48 (2d Cir. 2005) (non-core proceedings "subject to mandatory abstention").

  44.  In its Notice of Removal, the Debtor relies on 28 U.S.C. § 1334(b) as the potential basis for federal jurisdiction over the State Court Action "because the Interpleader Action is a civil proceeding arising in or related to a case under the Bankruptcy Code, namely the Debtor's bankruptcy case, and the Interpleader Action may therefore be removed to this Court, pursuant to 28 U.S.C. § 1452(a)." Removal Notice ¶ 5.

  45.  A "core proceeding" is a proceeding "arising under title 11, or arising in a case under title 11 .... A proceeding arising under title 11, or arising in a case under title 11 is one which would have no existence outside of the bankruptcy case." *Schumacher v. White*, 429 B.R. 400, 405 (E.D.N.Y. 2010) (citing *J.T. Moran & Co. v. Phonetel Tech, Inc. (In re J.T. Moran Fin. Corp.)*, 119 B.R. 447, 450 (Bankr. S.D.N.Y. 1990)). "Proceedings "arising in" a bankruptcy case are those "claims that are not based on any right expressly created by [the Bankruptcy Code], but nevertheless, would have no existence outside of the bankruptcy." *In re Old Carco LLC*, 636 B.R.

13202665-1

347, 355 (Bankr. S.D.N.Y. 2022) (citing *Baker v. Simpson*, 613 F.3d 346, 350–51 (2d Cir.2010) ("A case is a core proceeding "[1] if it invokes a substantive right provided by title 11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999) (*quoting In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171 (3d Cir. 1996)). *See also Joremi Enters., Inc. v. Hershkowitz (In re New 118th LLC)*, 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008) ("Generally, a core proceeding is one that invokes a substantive right under title 11, or could only arise in the context of a bankruptcy case.") citing *Binder v. Price Waterhouse Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 162–63 (3d Cir.2004); Wood, 825 F.2d at 96–97.

46. Here, the Debtor has not alleged which prong of section 157(b) would make this matter core such that it arises in the bankruptcy case. Moreover, the Debtor's threadbare assertion that the action concerns property of the state and is therefore a core proceeding is unsupported by applicable law. To the extent the Debtor is relying on any provision as a "catch all, such a reading would be impermissibly broad. *See, e.g., Longhorn Partners Pipeline L.P. v. KM Liquids Terminals, L.L.C.*, 408 B.R. 90, 96 (Bankr. S.D. Tex. 2009) ("But not all claims that fall within the literal language of § 157(b)(2)(O) can constitute core claims. Almost all debtor claims may affect the estate in that they could lead to a judgment increasing or decreasing the estate assets. If the Court accepted Longhorn's contention, then virtually all 'related to' proceedings would be considered core. Section 157 would serve no purpose."). *See also In re Peanut Corp. of Am.*, 407 B.R. 862, 865 (W.D. Va. 2009) ("As an interpleader action brought pursuant to federal statute and rule, FIC's adversary proceeding is non-core. It does not invoke a substantive right provided by title 11, nor is it a proceeding that could arise only in the context of a bankruptcy case. And because it does not involve issues uniquely related to bankruptcy law, the interpleader action could clearly

19

proceed in a forum outside Bankruptcy Court"); *In re Partners In Hope, Inc*, 662 B.R. 120, 139 (Bankr. D.S.C. 2024) (interpleader of tax refunds non-core).

47. Courts in this Circuit recognize that disputes invoking the "catch-all" subparts (A) and (O) of section 157(b)(2) are typically non-core." *See Rescap Liquidating Trust v. CMG Mortg., Inc*. (*In re Residential Capital*), Case No. 14-4950, 2014 WL 4652664, at *2-3 (S.D.N.Y. Sept. 10, 2014) (rejecting plaintiffs' argument that an "actionis core because it concerns the administration of its estate and affects the liquidation of the estate's assets" and explaining that the "Second Circuit [has also] rejected exactly this argument"); *also In re EMS Fin. Servs. LLC*, 491 B.R. 196, 203 (E.D.N.Y. 2013) ("[W]hile the debtor's rights under its insurance policies are property of a debtor's estate, the contract claims are not rendered core simply because they involve property of the estate."); *Bianco v. Hoehn (In re Gaston & Snow)*, 173 B.R. 302, 305 (S.D.N.Y. 1994) (explaining that "the two 'catchall' provisions, § 157(b)(2)(A) and (O)" "must not be read too broadly," lest they "obliterate the core/non-core distinction itself") (citations omitted).

48. While the Debtor may wish to rely upon *In re U.S. Lines, Inc.,* 197 F.3d 631 (2d Cir. 1999) in support of an assertion that the matter is core, such assertion would be misguided. *U.S. Lines* found a matter to be core where the insurance policies were the only available asset and where the policies required the estate to make a distribution on the underlying claims before the insurer would be liable *Id.* at 636-39. As recently explained in depth in *McCord as Tr. of Est. of Haniff v. Gov't Emps. Ins. Co*., No. 22-MC-3611 (MKB), 2023 WL 4209542, at *5 (E.D.N.Y. June 27, 2023), however, "recent cases suggest that [a contractual dispute over insurance policies] is "non-core" and "the Second Circuit has since limited U.S. Lines' holding to its facts." (*citing Mt. McKinley Ins. Co. v. Corning Inc.,* 399 F.3d 436, 448 (2d Cir. 2005) ("explaining that the Circuit Court's holding in U.S. Lines was based on 'mutually re-enforcing effects of two factors,' that the

20

policies were 'the only asset available' and 'were pay-first policies that required the trustee to pay the claims and then seek indemnification'"). *See also Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at \*6 . Here, as evidenced by the fact that GAIC has already advanced in excess of $800,000 and deposited the balance of the policy (in excess $2.1 million) with the Commercial Division, *U.S. Lines*' unique pay-first factor is simply not present.

49.     The Interpleader Action neither "invoke[s] substantive rights created by federal bankruptcy law nor encompasses claims that "would [not exist] outside of the bankruptcy." *JJ Arch*, 2024 WL 2933427, at \*20 (internal marks and citations omitted). *See also In re New 118th LLC*, 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008) (bankruptcy court "plainly lacks core jurisdiction" over state law guarantee claim asserted by non-debtor against another non-debtor where guarantor would have a reimbursement claim against the estate).  It further contemplates the consideration of non-Debtor defendant claims to the policy and, beyond the interpleader itself, the Interpleader Action includes AREH and Chassen's Independent Claims against GAIC for the excess of $800,000 in payments previously made by GAIC in violation of the policy.

50.     Based on the foregoing, the action is not statutorily core. It is also not constitutionally core: entry of a final judgment concerning the movants' contractual rights as against GAIC or the Stake necessarily involves the exercise of the "judicial power of the United States" on a state law claim independent of the bankruptcy law, and such determination is not a "public right," which, absent all parties' consent, is reserved for Article III courts. *Stern v. Marshall*, 564 U.S. 462, 487 (2011). *See also McCord*, 2023 WL 4209542, at \*6 (Bankruptcy Court's lack of authority to finally adjudicate breach of contract claim against D&O insurer weighed in favor of withdrawal of the reference); *Roman Cath. Diocese of Rockville Ctr. v. Certain Underwriters at Lloyds, London & Certain London Mkt. Companies*, 634 B.R. 226, 237 (S.D.N.Y.

13202665-1

2021) ("In sum, the Court concludes that the [debtors' claims against insurance policies] are non-core and that, under Stern, the bankruptcy court would not have final adjudicative authority over the claims.").

51. AREH has timely filed and served its statement of non-consent [Adv. Pro. ECF Nos. 5 & 6] and, at this time, neither movant has filed a proof of claim. Thus even if the case were statutorily core, under *Stern*, the Bankruptcy Court would not have final authority to adjudicate its claims against GAIC or any other parties' claims, as not all parties have consented to this Court's entry of final orders.

52. This dispute pre-dated the Debtor's bankruptcy filing. It concerns competing claims under state law to insurance proceeds by the individual members of a limited liability company and other non-debtor parties. By their very nature the claims "exist outside of bankruptcy" and "arise outside the context of a bankruptcy case." Clearly the State Court Action began before Mr. Simpson commenced this bankruptcy case and could be well handled by the Commercial Division. None of the underlying claims arise under title 11 or arise in the Chapter 11 Case.

**d.      There Is No Other Basis for Federal Jurisdiction**

53. For mandatory abstention to apply, the only basis for federal jurisdiction must be that the case is "related to" a bankruptcy case under Section 1334 of the United States Code. In other words, the case must be one that could not have been commenced in federal court based on diversity, federal question, or any other basis for federal jurisdiction. This requirement is satisfied because the Debtor removed solely on the basis of alleged federal jurisdiction pursuant to Section 1334. Adv. Pro. Dkt. No. 1 (Notice of Removal ¶ 5); *see also Little Rest Twelve*, 458 B.R. at 59 ("[a] notice of removal may not be sustained on a ground of jurisdiction not stated in that notice"). In addition, the Interpleader Action could not have been brought in federal court. The claims do not raise any federal question and there is no allegation of complete diversity of parties. Because

13202665-1

the Debtor bases jurisdiction exclusively on Section 1334 of the United States Code, and because removal could not have been premised on any other basis of federal jurisdiction, the fourth requirement for mandatory abstention is satisfied.

### e. The Interpleader Action Can Be Timely Adjudicated by the Commercial Division

54.     The final requirement for mandatory abstention—whether the Commercial Division can timely adjudicate the claims—is also met. In determining whether a civil proceeding can be "timely adjudicated" in a state forum, federal courts in this Circuit consider four factors: "(1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate." *Parmalat*, 639 F.3d at 580 (internal citation omitted). In conducting this analysis, it is "presume[d] that a state court will operate efficiently and effectively," *id*. at 582, such that the "party opposing remand should bear the burden to demonstrate that the proceeding cannot be timely adjudicated in state court." *Allstate Ins. Co.*, 2011 WL 3628852, at *9; *see also Goldstein v. Joseph*, No. 14-cv-4477 (NSR), 2015 WL 4039851, at *5 (S.D.N.Y. June 30, 2015).

55.     There is no basis for supposing that the Commercial Division suffers from a backlog of its calendar or is otherwise ill-equipped to adjudicate the Interpleader Action in a timely and efficient manner. The Commercial Division has repeatedly heard matters on an expedited basis at the request of parties. Indeed, the Commercial Division had arranged for a summary proceeding to be filed February 26, 2026 and a return date of March 26, 2026. NYSCEF No. 360.  Had the Debtor not filed for bankruptcy on February 19, 2026, one week later, all parties would have begun the summary process.

23

56.     Furthermore, adjudication of the claims asserted in the Interpleader Action will not have a significant impact on the timely administration of the Debtor's estate and will not unduly prolong the bankruptcy proceeding, and the Debtor has not established otherwise. *See Fried,* 496 B.R. at 711 ("timely adjudicated" factor satisfied where, among other things, it was "doubtful" that state court proceeding would have "any significant effect on the timely administration and liquidation of the [debtor's] estate"). *See also New 118th LLC*, 396 B.R. at 895 (timely factor met where "the state court is as equally capable as [the Bankruptcy Court] in liquidating the Guarantee Claim … [as it is] sufficient to point out that the state courts often adjudicate guarantee claims."

57.     Indeed, New York courts have been interpreting and adjudicating coverage issues arising from directors and officers insurance policies for well over 40 years.  *See e.g.*, *Buckingham Apts., Ltd. v. Liberty Mut. Ins. Co.*, 508 N.Y.S.2d 493 (2d Dep't 1986); *Goldome Sav. Bank v. Am. Cas. Co. of Reading*, 521 N.Y.S.2d 940 (4th Dep't 1987).  Moreover, under its rules, the Commercial Division is explicitly authorized to hear insurance coverage disputes, including those involving directors and officers insurance policies, provided the applicable monetary threshold is met. *See* 22 NYCRR § 202.70(b)(10).

58.     Accordingly, the third and fourth factors of the "timely adjudication" analysis are satisfied.

59.     Because each of the statutory requirements for mandatory abstention are present, this Court must remand the Interpleader Action to the Commercial Division.

**III.**

**PERMISSIVE ABSTENTION PROVIDES AN ADDITIONAL
BASIS FOR REMAND OF THE INTERPLEADER ACTION**

60.     Principles of permissive abstention also support remand of the Interpleader Action to the Commercial Division and do not require any determination of whether the matter is core.

Under 28 U.S.C. § 1334 (c)(1), a district court may exercise its discretion to abstain from hearing a proceeding in the interests of justice or comity. *See* 28 U.S.C. § 1334(c)(1); see also *Fried*, 496 B.R. at 712. Courts in the Second Circuit typically consider one or more of twelve factors in analyzing permissive abstention:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the court's] docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

*Fried*, 496 B.R at 712-13 (citations omitted). Distilled to its essence, this multi-factor analysis is intended to "balance the federal interest in efficient bankruptcy administration against the interest of comity between the state and federal courts." *Id*. at 713. Taken together, these twelve factors weigh in favor of discretionary abstention.

61.     With respect to factor 1, the Interpleader Action's only conceivable effect on administration is whether the estate's prompt recovery on a portion of the interpleader will provide a source of funds allowing the Debtor to maintain counsel needed to act as a debtor in possession and propose a plan. But whether the Interpleader Action is remanded ought to have no effect on administration, and to the extent it does, that is because of the Debtor's own doing. The Commercial Division already had put in place a summary procedure that was devised to give the Debtor an opportunity to seek funding in order to fund the Corporate Control Action.

62.     That summary procedure was designed to have fully submitted papers prior to the March 26, 2026 return date. With a remand, presumably the State Court can proceed on a similar

13202665-1

schedule. If the Debtor were relying on any portion of the funds to fund its bankruptcy case, it could have (i) waited for the summary procedure to have completed before filing; or (ii) sought immediate relief of the automatic stay to continue the Interpleader Action. Instead, the Debtor sought no stay relief and removed the action, causing further delay. This removal, however, comports with his forum shopping strategy, discussed below.

63.     With respect to factors 2, 6, 7, and 8, the claims asserted in the Interpleader Action are state law claims that preexisted the filing of this Chapter 11 Case. with respect to the claims at issue, resolution could be handled equally efficiently if not more so in the Commercial Division, on account of its general experience in matters of purely state law claims at issue and the extensive history with the facts underlying the insurance dispute.

64.     Further, there is no basis for suggesting that the Commercial Division's docket is unduly burdened (factor 9); all of the parties except for Mr. Simpson are non-debtors (factor 12); and, as discussed above, the only asserted basis for federal jurisdiction is 28 U.S.C. § 1334 (factor 5).

65.     Although not asserted in the Notice of Remand, the fact that the claims may present relatively straightforward issues of state law is "not a reason for the case to proceed in federal court," *Fried*, 496 B.R. at 713, and to the extent that the claims may raise any peculiarly difficult or unsettled issues of state law, the Commercial Division is best situated to resolve such issues (factor 3). The right to a jury trial is not present in a summary proceeding. Because, the claims are limited to the right to proceeds under the policy, there is no risk of inconsistent judgments (factor 4). *See In re Maa-Sharda, Inc.*, 2015 WL 1598075, at *8 (risk that parallel federal and state proceedings "could reach differing conclusions is an important factor weighing heavily in favor of permissive abstention").

### a. Forum Shopping

66. Factor 10 - Forum Shopping independently weighs heavily in favor of remand. As set forth above, the record is replete with Mr. Simpson boycotting proceeding before Justice Cohen, including with respect to the Interpleader Action. He sent email after email after email to Justice Cohen stating that he will not proceed. Mr. Simpson also has already been found by two courts to have engaged in forum shopping away from Justice Cohen, and was sanctioned for vexatious conduct by one of them, while another court found sanctions "a close call" on account of removal of a different case before Judge Cohen. Mr. Simpson also brought lawsuits against Justice Cohen and was facing a criminal contempt motion before Justice Cohen when he filed the bankruptcy case. The evidence of prior removals, communications demonstrating Mr. Simpson's unwillingness to go-forward, and lack of cooperation in agreeing to a summary order sufficiently demonstrates Mr. Simpson's forum shopping intent. *See e.g.* NYSCEF Nos. 296, 297, 299, 300, 315, 316.

67. When Judge Mastando found this provision had been met with the Corporate Control Action, it was on account of Simpson evading Justice Cohen for having temporarily lost control of AREH. *See JJ Arch* 2024 WL 2933427 (recommending remand because of, inter alia, Simpson's forum shopping and reciting record and evidence of forum shopping). When the Corporate Control Action was finally remanded, instead of cooperating, Mr. Simpson proceeded on a bridge burning path with Justice Cohen: he frivolously removed the Corporate Control Action twice more in efforts to disrupt the appointment of a receiver and then to interfere with the duties of a receiver. *See Simpson v Chassen*, 25-CV-4004 (JMF), 2025 WL 1784931, at *2 (S.D.N.Y. June 27, 2025) ("Simpson's vexatious history of litigation is evidenced by his three baseless attempts to remove this action to federal court," which "coupled with his vexatious conduct in state court — have caused needless expense to the other parties, burdened the federal and state courts

involved, and leads the Court to believe that Simpson "used the removal as a vehicle to defy the [state court's] orders."); *See also* Corporate Control Action, NYSCEF Doc. No. 2072, Joint Post-Trial Memo (detailing and citing to evidentiary record of Mr. Simpson's defiance of receiver orders).

68.     During the pendency of a civil and criminal contempt motion against him for violating the state court's receiver orders, Mr. Simpson was sanctioned four times by the state court for repeatedly violating the Court's rules barring substantive or *ex parte* emails. Corporate Control Action, NYSCEF No. 1847, September 24, 2025 Order (sanctioning Mr. Simpson $500 for repeatedly violating orders barring email communications even after repeated warnings, and noting that one email from Mr. Simpson to the state court said, "if you want to assess me a fine, please do."); Corporate Control Action,  NYSCEF No. 1851, September 29, 2025 Order (sanctioning Mr. Simpson $1000 after Mr. Simpson sent numerous emails right after the first sanctions orders, including an email that stated "So this time I'm going to step on the rules (the ones that apply only to the thieves and to the judge (when he wants to ) who has a serious memory and corruption problem) please issue me a fine and I'll appeal it, whatever it takes to get me far away from you because you have no respect for me and my rights, zero."); Corporate Control Action,  NYSCEF No. 1998, October 8, 2025 Order (sanctioning Mr. Simpson $1500 after Mr. Simpson continued to violate the Court's orders); Corporate Control Action,  NYSCEF No. 2157, December 5, 2025 Order (sanctioning Mr. Simpson $2000 and warning that further violations could lead to his pleading being stricken, after Mr. Simpson "sent more than a dozen emails" in which he became "increasingly aggressive and abusive, among other things, repeatedly and baselessly accusing the Court of 'being on the take' and daring the Court 'to give [him] sanctions.'"). After being warned that he faced having his pleadings stricken if he continued, Mr.

Simpson continued to violate these orders. Corporate Control Action, NYSCEF Nos. 2239, 2248, 2280-2288, 2346, 2349. !

69. As set forth on pages 9-11, *supra*, Mr. Simpson sent a barrage of emails to Justice Cohen making abundantly clear his boycott of the state court proceedings, including the Interpleader Action. Mr. Simpson also sent barrage of baseless accusatory emails to Court administration, DOJ, and Manhattan DA frivolously accusing Justice Cohen of corruption, and telling Justice Cohen that he would be boycotting proceedings in front of him. *See e.g.*, Corporate Control Action, NYSCEF Nos. 2126-2127 (informing Court that "I am not participating in anything regarding a court hearing with you as it's adjudicator, not happening."); Corporate Control Action, NYSCEF No. 2134 ("Unless I'm forced to by someone under the law (with competent jurisdiction) I will not present myself in front of a disastrous abomination of any type of justice system that occurs in the courtroom of Judge Joel Cohen."); Corporate Control Action, NYSCEF No. 2150 ("I'm going to copy the honorable Joel Cohen. His rules don't matter anyway he makes them up as he goes and he breaks the CPLR rules on a daily basis."); Corporate Control Action, NYSCEF No. 2152 ("[M]y Fed removal was money good so no you had no authority and any authority, you have when you broke the law. You break the law every day in this courtroom on this case I'm sure you do it elsewhere too."); Corporate Control Action, NYSCEF No. 2179 ("Go ahead with your sanctions there will be a lawsuit that will bring this court to the federal court by Monday for its horrific acts of extreme prejudice, bias, discrimination, negligence of reporting criminal acts and much more to be followed. Take up your sanctions there. as I said many moons ago I will not present myself in front of a corrupt / . judge court ever again."); *See also* Corporate Control Action, NYSCEF Nos. 2239-2248; NYSCEF Doc. Nos. 1860-1897, 1909-1911, 2126-2134, 2150, 2152-2153, 2179-2185; NYSCEF Nos. 1923-1983.

13202665-1

70. As set forth on page 12, *supra*, in January 2026, Mr. Simpson also filed a number of frivolous Title 1983 actions against Justice Cohen and counsel for numerous parties. The actions in this district were dismissed after Mr. Simpson failed to pay the filing fee.

71. On January 14, 2026, the state court scheduled a status conference in the Corporate Control Action for January 21, 2026 via Court Notice. Corporate Control Action, NYSCEF Doc. No. 2229, Court Notice. On January 16, 2026, in response to the Court Notice, Mr. Simpson wrote the state court the following:

> Joel Cohen,
>
> What don't you understand? You are corrupt and I filed an action against you and the participants here. Inviting the folks to take action against me is further deteriorating from the damages that you judge Joel Cohen have created. No independent outside party disagrees and I demand police intervention now.
>
> I demand justice and I demand it now. You don't get the right to speak up any further about anything here with what you've done to cause destruction. And Gold, you will lose your license for practicing soon just like the rest.

Corporate Control Action, NYSCEF No. 2285.

72. A few days later, Mr. Simpson wrote the state court: "There will NOT be a conference this week (or ever ), on my case (in front of Cohen) , that I called for until justice is served and we get clarity from people who are not biased and prejudicial. If you, Cohen, proceed you're doing at your own risk." Corporate Control Action, NYSCEF Doc. No. 2281. On January 17, 2026, Mr. Simpson wrote the state court "courtesy copy attached here of my letter to the bankruptcy court [Judge Beckerman] this morning reacting to breach of "stay", as I mentioned previously. It was submitted through ECF. I understand that Joel Cohen here has given his views on this issue that are arbitrary and prejudicial, because he hates bankruptcy court and he hates losing control of a case, especially when he's been wrong for over two years and if he loses control

13202665-1

of the situation, it will be more than me exposing him." Corporate Control Action, <u>NYSCEF No. 2287</u>.

73. The State Court held the status conference (the transcript has not yet been uploaded to the docket). On January 24, 2026, Mr. Simpson wrote Justice Cohen:

> Once again, SHAME ON YOU JUDGE JOEL COHEN, for what you have done and continue to do - all prejudicial, biased and with intentional harm to me, including your actions this week.

> If i must file for personal bankruptcy as a result to stop your absurdity, that i will do and your "unclean" hands will be investigated to the nth degree.

> I will once again go to all law enforcement agencies with your actions. I can only imagine where your immunity starts and stops as it relates to federal bankruptcy code crimes.

Koevary Decl., Ex. 1, Mr. Simpson Jan. 24, 2026 Email (emphasis added). On February 11, 2026, Mr. Simpson wrote to Judge Cohen, saying that "He is corrupt and he's not deciding a single thing in my case, the end." Corporate Control Action, <u>NYSCEF No. 2346</u>, Feb. 11, 2026 Email.

The foregoing overwhelmingly demonstrates the Debtor's desire and intent to forum shop the Interpleader Action into a new forum away from the Commercial Division, which demonstration comes in the wake of previous federal findings of Mr. Simpson's forum shopping in other cases to escape precisely the same forum.

**IV.**

**<u>EQUITABLE REMAND OF THE INTERPLEADER ACTION IS APPROPRIATE</u>**

74. Finally, remand of the Interpleader Action is warranted on equitable grounds. Pursuant to Section 1452 (b), "[t]he court to which [a] claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). A court has "broad discretion in conducting the equitable remand analysis." *Goldstein*, 2015 WL 4039851, at

31

*6 (citation and quotation marks removed). When determining whether equitable remand is appropriate, courts consider a number of factors, including:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

*Drexel*, 130 B.R at 407; *see also Stahl v. Stahl*, No. 03 Civ. 0405 VM, 2003 WL 22595288, at *2 (S.D.N.Y. Nov. 7, 2003). As discussed below, the *Drexel* factors weigh uniformly in favor of equitable remand.

75.     With respect to the first Drexel factor, restoring the Interpleader Action to the Commercial Division will in no way impair the efficient administration of the Debtor's estate. *See Goldstein*, 2015 WL 4039851, at *6 (equitable remand appropriate where state proceedings would have "little to no effect on the administration of the bankruptcy estate"). Indeed, the pending litigation, which the Debtor seeks so desperately to move to a new forum, is all pending in a single centralized forum, New York Supreme Court, New York County, before a single judge. Remand of the Interpleader Action would not result in the Debtor having to litigate in multiple forums around the country and consequently would not impact the efficient administration of the Debtor's estate. Moreover, because the claims are rooted exclusively in state law and implicate no specialized issues of bankruptcy law, judicial efficiency is best served by allowing those claims to proceed in state court. *See id*. (equitable remand appropriate where "[r]emand would not abdicate any bankruptcy function to the state forum[]"); see also Stahl, 2003 WL 22595288, at *3 (remand of state law claims supported by "greater expertise of state court judges as to state law"). Thus, the first and second Drexel factors strongly support remand.

76.     The third Drexel factor also supports remand on balance, for if the claims asserted pose any difficult or unsettled questions of state law, the Commercial Division is the best forum

13202665-1

for resolution of such issues, and the third Drexel factor is otherwise neutral. *See Fried*, 496 B.R. at 713 (mere fact that state law claims may be "straightforward is not a reason for the case to proceed in federal court").

77. In addition, because "New York State has a strong interest in having its own courts enforce its laws," principles of comity favor remand, satisfying the fourth Drexel factor. *Stahl*, 2003 WL 22595288, at *3; *see also Little Rest Twelve*, 458 B.R. at 60 ("Comity as a general matter counsels leaving matters of state law to state courts…."). The interests of comity do not support allowing the Debtor to engage in forum shopping in an effort to convince this federal Bankruptcy Court to reconsider years' worth of proceedings that have already occurred in the Interpleader Action, including numerous orders and decisions of the State Court. New York state law provides a mechanism for seeking the reconsideration of and appealing from decisions and orders of a trial court. Removing an action to federal court for the purpose of pursuing the reconsideration of or attempting a collateral appeal from the decisions and orders of a New York state trial court is inconsistent with the principles of comity.

78. The fifth Drexel factor requires "[s]omething more than a mere effect on the size and administration of the bankruptcy estate … to weigh against remand." Stahl, 2003 WL 22595288, at *3. Here, the fifth Drexel factor also weighs decidedly in favor of remand. Other than attempting to forum shop his way out of Judge Cohen's court, there is no legitimate bankruptcy purpose for the removal of the Interpleader Action. After having commenced the Bankruptcy Case for the illegitimate purpose of attempting (for a second time in the case of the Interpleader Action and third time in the case of the Corporate Control Action), to move the pending state court litigation matters to a new forum, the Debtor should not now be heard to argue

13202665-1

that the pending litigation must be removed because it has a high degree or relatedness to the Bankruptcy Case.

79.  The sixth Drexel factor—the right to a jury trial—carries no weight as the nature of the proceeding is in rem and there is no jury trial right. The seventh and final Drexel factor—prejudice to involuntarily removed parties—strongly favors remand, because the plaintiff and all defendants not controlled by Mr. Simpson consented to a summary proceeding that would have moved the case quickly which presumably can be quickly restored choice of forum and the Commercial Division has familiarity with the claims. Finally, equity favors remand because the Commercial Division is best prepared to move quickly and all delays and attempts at delay are of the Debtor's own making which stem from: (i) Mr. Simpson causing two prior removals: (ii) Mr. Simpson and JJ Arch's December 2025 objection to proceeding summarily in expedited fashion when Plaintiff and remaining Defendants alike agreed to proceed; and (iii) the filing of the bankruptcy and choosing to remove this case instead of seeking immediate relief from stay to proceed.

80.  In short, all of the relevant Drexel factors favor remand, and none weighs against. Accordingly, remand to the Commercial Division will best promote the expeditious and efficient resolution of the claims asserted in the Interpleader Action. Here, as in *Stahl*, the "State of New York has a strong interest in enforcing its laws, and there are no persuasive reasons not to allow it to do so." *Stahl*, 2003 WL 22595288, at *4. Under these circumstances, equitable remand under Section 1452 (b) is warranted, even on the assumption that this Court has jurisdiction over the claims in the first instance, and even if abstention were not otherwise mandated.

## **CONCLUSION**

**WHEREFORE**, for the reasons set forth above, Movants respectfully request that the Court enter proposed findings, or alternatively, grant their Motion to remand the Interpleader

13202665-1

Action on the ground of lack of jurisdiction or, in the alternative, on the ground of abstention or

equity; award costs and expenses, including attorney fees; and grant such other and further relief

as the Court deems just and proper.

Dated: April 1, 2026

**OLSHAN FROME WOLOSKY LLP**

*/s/* Jonathan T. Koevary
Jonathan T. Koevary
Anthony B. Crawford
Sahand Farahati
1325 Avenue of the Americas
New York, NY 10019
212.452.2300
jkoevary@olshanlaw.com
acrawford@olshanlaw.com
sfarahati@olshanlaw.com

*Counsel for Arch Real Estate Holdings LLC*

-and-

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

*/s/* Sean C. Southard
Sean C. Southard
Brendan M. Scott
200 West 41st Street, 17th Floor
New York, New York 10036
ssouthard@klestadt.com
bscott@klestadt.com

-and-

**SCHWARTZ LAW PLLC**
Allen Schwartz, Esq.
150 Broadway, Suite 701
New York, New York 10038
347-460-5379
allen@allenschwartzlaw.com

*Counsel for Jared Chassen*

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2026, a true and correct copy of the foregoing was served on all parties in interest by electronic transmission via the Court's ECF system to all parties authorized to receive electronic notice in this case.

/s/ Jonathan T. Koevary
Jonathan T. Koevary
