**BECKER, GLYNN, MUFFLY, CHASSIN & HOSINSKI LLP**
299 Park Avenue, 16th Floor
New York, New York 10171
Telephone: 212-888-3033
Facsimile: 212-888-0255
Alec P. Ostrow
aostrow@beckerglynn.com

*Proposed Attorneys for Jeffrey Solomon Simpson,*
*as Debtor and Debtor in Possession, Defendant*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>JEFFREY SOLOMON SIMPSON,<br><br>     Debtor. | Chapter 11<br><br>Case No. 26-10359 (LGB) |
| GREAT AMERICAN INSURANCE<br>COMPANY,<br><br>     Plaintiff,<br><br> - against -<br><br>ARCH REAL ESTATE HOLDINGS, LLC,<br>JEFFREY SIMPSON, JAREN CHASSEN,<br>WIGGIN AND DANA LLP, GRIFFIN LLP,<br>and OFFIT KURMAN PA.,<br><br>     Defendants. | Adversary No. 26-01015 (LGB) |

**DEBTOR'S MEMORANDUM OF LAW IN OPPOSITION**
**TO MOTION TO REMAND OR ABSTAIN**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

Preliminary Statement ...................................................................................................... 1

Statement of the Case ...................................................................................................... 1

Argument ......................................................................................................................... 6

    I.       THE DEBTOR'S CLAIMS TO THE STAKE IN THE
              INSURANCE INTERPLEADER ACTION ARE PROPERTY OF
              THE ESTATE ........................................................................................ 6

    II.      THE DEBTOR'S REMOVAL OF THE INSURANCE
              INTERPLEADER ACTION UNDER THE BANKRUPTCY
              REMOVAL STATUTE WAS PROPER .............................................. 10

    III.     MANDATORY ABSTENTION IS INAPPLICABLE BECAUSE
              THE INSURANCE INTERPLEADER ACTION IS A CORE
              PROCEEDING ...................................................................................... 13

    IV.     PERMISSIVE ABSTENTION IS NOT APPROPRIATE .................................. 18

    V.      EQUITABLE REMAND IS ALSO NOT APPROPRIATE ................................. 21

Conclusion ...................................................................................................................... 23

TABLE OF AUTHORITIES

**Cases**

*Amedisys, Inc. v. Nat'l Century Fin. Enters., Inc.*
(*In re Nat'l Century Fin. Enters., Inc.*), 423 F.3d 567 (6th Cir. 2005) ..................................... 16

*Cal. Pub. Emp. Ret. Sys. v. Worldcom, Inc.*,
368 F.3d 86, (2d Cir. 2004) ................................................................................................ 11

*Cathey v. Johns-Manville Sales Corp.*,
711 F.2d 60 (6th 1983) ...................................................................................................... 17

*Celotex Corp. v. Edwards*,
514 U.S. 300 (1995) ..................................................................................................... 11, 12

*Celsius Mining LLC v. Mawson Infrastructure Grp. Inc. (In re Celsius Network LLC)*,
658 B.R. 643 (Bankr. S.D.N.Y. 2024) .............................................................................. 17

*Chartschlaa v. Nationwide Mut. Ins. Co.*,
538 F.3d 116 (2d Cir. 2008) ................................................................................................ 6

*Commercial Union Ins. Co. v. Johns-Manville Corp.*
(*In re Johns-Manville Corp.*), 31 B.R. 965 (S.D.N.Y. 1983) ............................................. 22

*Delaware Tr. Co. v. Wilmington Tr. N.A.*,
534 B.R. 500 (S.D.N.Y. 2015) ...................................................................................... 19, 20

*Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin United Corp. Litig.)*,
765 F.2d 343 (2d Cir. 1985) .............................................................................................. 17

*Gruntz v. County of Los Angeles (In re Gruntz)*,
202 F.3d 1074 (9th Cir. 2000) ..................................................................................... 16, 17

*In re Caesars Ent. Operating Co.*,
540 B.R. 637 (Bankr. N.D. Ill 2015) ................................................................................. 16

*In re Celsius Network LLC*,
652 B.R. 34 (Bankr. S.D.N.Y. 2023) ............................................................................. 7, 16

*In re Congregation Birchos Yosef*,
535 B.R. 629 (Bankr. S.D.N.Y. 2015), *appeal dismissed*, No. 15-CV-6408,
2016 5394755 (S.D.N.Y Sept. 27, 2016, *aff'd*, 699 F. App'x 91 (2d Cir. 2017) ............... 16

*In re Downey Fin. Corp.*,
428 B.R. 595, 607 (Bankr. D. Del. 2010) ........................................................................... 8

*In re JJ Arch LLC*,
663 B.R. 258 (Bankr. S.D.N.Y. 2024) ................................................................................. 2

*In re JJ Arch LLC*,
Case No. 24-10381 (JPM) (Bankr. S.D.N.Y. filed Mar. 7, 2024) ........................................ 1

*In re Kilmer*,
501 B.R. 208 (Bankr. S.D.N.Y. 2013) ............................................................................... 17

*In re MF Global Holdings Ltd.*,
469 B.R. 177 (Bankr. S.D.N.Y. 2012) ........................................................................... 7, 16

*In re Residential Cap., LLC*,
519 B.R. 890 (Bankr. S.D.N.Y. 2014) .......................................................................... 19, 20

*In re SVB Fin. Grp.*,
650 B.R. 790 (Bankr. S.D.N.Y. 2023) ........................................................................... 7, 16

*In re Williamsburg Boutique LLC*,
663 B.R. 217 (Bankr. S.D.N.Y. 2024) ................................................................................. 6

*KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*,
   600 B.R. 214 (S.D.N.Y. 2019)...........................................................................21
*Lothian Cassidy, LLC v. Lothian Exploration & Dev. II, L.P.*,
   487 B.R. 158 (S.D.N.Y. 2013)................................................................. 19, 20
*Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*,
   304 F.3d 223 (2d Cir. 2002)...........................................................................18
*MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
   837 F.2d 89 (2d Cir. 1988)...............................................................................9
*McHale v. Alvarez (In re 1031 Tax Grp., LLC)*,
   397 B.R. 670 (Bankr. S.D.N.Y. 2008)..............................................................9
*Marshall v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*,
   740 F.3d 81 (2d Cir. 2014)................................................................................9
*Nisselson v. Marjerry Realty Corp. (In re Port Morris Tile & Marble LP)*,
   645 B.R. 500 (Bankr. S.D.N.Y. 2022)..............................................................9
*N.Y. Emp. Ret. Sys. v. Ebbers (In re Worldcom Sec. Litig.),* 293 B.R. 308
   (S.D.N.Y. 2003), *aff'd sub nom. Cal. Pub. Emp. Ret. Sys. v. Worldcom, Inc.*,
   368 F.3d 86 (2d Cir. 2004)..............................................................................21
*O'Toole v. M. Cabrera & Assocs., P.C. (In re Kaspar)*,
   667 B.R. 195 (Bankr. S.D.N.Y. 2025)............................................................18
*Orion Pictures Corp v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*,
   4 F.3d 1095 (2d Cir. 1993).............................................................................14
*Resolution Tr. Corp. v. Best Prods.*
   *Co. (In re Best Prods. Co.)*, 68 F.3d 26 (2d Cir. 1995) ...............................14
*S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips*
   *Constructors, Inc.)*, 45 F.3d 702 (2d Cir. 1995))........................................14
*Simpson v. Chassen*, Index No. 158055/2023,
   NYSCEF No. 2363 (Sup. Ct. N.Y. Cnty. Feb. 27, 2026) ..........................21
*SPV Osus Ltd. v. UBS AG*,
   882 F.3d 333, 339 (2d Cir. 2018)....................................................................12
*St. Clare's Hosp. & Health Ctr. v. Ins. Co. of N. Am.*
   *(In re St. Clare's Hosp. & Health Ctr.)*, 934 F.2d 15 (2d Cir. 1991) .........7
*St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*,
   884 F.2d 688 (2d Cir. 1989.............................................................................9
*U.S. Lines, Inc. v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n,*
   *Inc. (In re U.S. Lines, Inc.)*, 197 F.3d 631 (2d Cir. 1999) ..............7, 14, 15
*United States v. Whiting Pools, Inc.*,
   462 U.S. 198 (1983)..........................................................................................6
*Universal Oil Ltd v. Allfirst Bank (In re Millenium Seacarriers, Inc.)*,
   419 F.3d 83 (2d Cir. 2005)..............................................................................14

**Statutes**
11 U.S.C. § 101(5)(A).........................................................................................9
11 U.S.C. § 101(12) ............................................................................................9
11 U.S.C. § 323 ...................................................................................................9
11 U.S.C. § 362(a)(3)........................................................................................16
11 U.S.C. § 362(d) ............................................................................................16
11 U.S.C. § 541(a) ........................................................................................6, 13

11 U.S.C. § 541(a)(1)............................................................................................ 6
11 U.S.C. § 542(b)........................................................................................ 17, 18
11 U.S.C. § 1101(1)........................................................................................... 20
11 U.S.C. § 1107(a)........................................................................................ 9, 20
28 U.S.C. § 157(a) ............................................................................................... 1
28 U.S.C. § 157(b)(1) ........................................................................................ 13
28 U.S.C. § 157(b)(2)(E) ................................................................................... 18
28 U.S.C. § 157(b)(2)(G) ................................................................................... 17
28 U.S.C. § 1334 ............................................................................................... 18
28 U.S.C. § 1334(b) .............................................................................. 1, 12, 16
28 U.S.C. § 1334(c)(1)....................................................................................... 18
28 U.S.C. § 1334(c)(2)....................................................................................... 13
28 U.S.C. § 1441(a) ............................................................................................. 2
28 U.S.C. § 1446(b)(2)(A) ................................................................................... 2
28 U.S.C. § 1452(a) ........................................................................................ 1, 11
28 U.S.C. § 1452(b) ........................................................................................... 21
28 U.S.C. § 1478(b) (repealed 1984) ................................................................ 11

**Rules**

Fed. R. Bankr. P. 9005 ...................................................................................... 13
Fed. R. Bankr. P. 9027(a)(1)(A) ....................................................................... 12
Fed. R. Civ. P. 7(a) ........................................................................................... 12
Fed. R. Civ. P. 8(a)(1) ....................................................................................... 12
Fed. R. Civ. P. 61 .............................................................................................. 13

**Other Authorities**

*An Overview of D&O Insurance and Its Applicability in Bankruptcies*, 44 Am. Bankr. Inst. J. 26
(June 2025)......................................................................................................... 9

## Preliminary Statement

This memorandum of law is respectfully submitted on behalf of defendant Jeffrey Simpson (the "Debtor") in his capacity as debtor in possession in opposition to the Joint Motion (the "Motion") [ECF Doc. 7] of Arch Real Estate Holdings LLC ("AREH") and Jared Chassen to remand the instant adversary proceeding to the Supreme Court of the State of New York, County of New York (the "State Court"), based on lack of jurisdiction or, in the alternative, principles of abstention or equity.

## Statement of the Case

This adversary proceeding is before this Court as a result of the notice of removal filed by the Debtor with the United States District Court for the Southern District of New York (the "District Court") on March 2, 2026, following the filing of the Debtor's chapter 11 petition with this Court on February 19, 2026. The removal was pursuant to the bankruptcy removal statute, 28 U.S.C. § 1452(a). The notice of removal stated that the District Court had jurisdiction over the removed action as a civil proceeding arising in or related to a case under the Bankruptcy Code, pursuant to 28 U.S.C. § 1334(b). The District Court referred the removed action to this Court on March 3, 2026, pursuant to 28 U.S.C. § 157(a) and the District Court's Amended Standing Order of Reference, No. 12 Misc. 00032 (S.D.N.Y. Feb. 1, 2012).

The current removal of the State Court action is the third.[1] The first was by JJ Arch LLC ("JJ Arch") on September 20, 2024, during the pendency of its bankruptcy case.[2] JJ Arch had

---

[1] The discussion of the prior removals is based on a review of the documents filed on NYSCEF in the State Court, Index No. 653208/2024.

[2] *In re JJ Arch LLC*, Case No. 24-10381 (JPM) (Bankr. S.D.N.Y. filed Mar. 7, 2024).

moved to intervene. The action was remanded on October 28, 2024, upon the dismissal of the JJ Arch bankruptcy case.[3] The second removal was by the Debtor, *pro se*, prior to his bankruptcy filing, on March 20, 2025. The action was remanded on July 1, 2025, because all defendants had not joined in or consented to the removal, as required under the applicable non-bankruptcy removal statutes. 28 U.S.C. §§ 1441(a), 1446(b)(2)(A).

The removed action was originally commenced in the State Court on June 26, 2024, by the plaintiff, Great American Insurance Company ("GAIC") as an interpleader action against AREH, the Debtor, Mr. Chassen, and three law firms, regarding the competing claims to coverage under an insurance policy issued by GAIC to AREH as the "Named Insured" (the "Insurance Interpleader Action").[4] As stated in paragraph 2 of GAIC's complaint, the policy has an aggregate limit of liability of $3 million. As stated in paragraph 7 of GAIC's complaint, the remaining limit of liability is $2,105,999.29.

Paragraph 3 of GAIC's complaint states: "Interpleader-Defendants Simpson and Chassen have sought, and Simpson has been extended, coverage under the Policy as **Insureds.**"[5] Paragraphs 15 and 16 of GAIC's complaint state that the Debtor and Mr. Chassen are each an **Insured Person** under the policy. Regarding the various demands for coverage, GAIC's complaint states the following:

> VI.    **CURRENT LAWSUIT AGAINST GAIC**
>
> 36.    On June 7, 2024, GAIC was named as a defendant in an action brought by Arch Real Estate Holdings, LLC ("Arch"), filed in the New York County Supreme Court under Index No. 652914/2024; Plaintiff alleges that GAIC is wrongfully

---

[3] *See In re JJ Arch LLC*, 663 B.R. 258 (Bankr. S.D.N.Y. 2024).

[4] GAIC's summons and complaint are attached to the accompanying declaration of Alec P. Ostrow as Exhibit 1.

[5] GAIC's complaint's use of terms in bold is meant to provide the same meaning as in the policy. The policy is attached to the accompanying declaration of Alec P. Ostrow as Exhibit 4.

misappropriating the Policy proceeds in connection with the SDNY Bankruptcy matter and adversarial proceeding. Arch seeks a Judgment and Order stating, *inter alia*, that GAIC extended coverage related to these matters does not erode the Policy Limit, breach of the Policy contract, as well as damages. [Reference to the attached summons and complaint is omitted.]

## VII.    <u>JEFFREY SIMPSON'S DEMAND</u>

37.    In the New York County Lawsuit,[6] Simpson alleges that Chassen illegitimately sought to remove him as the managing member of Arch Real Estate Holdings (**the Insured**). Simpson's claims include breach of contract relating to the Arch Operating Agreement; breach of fiduciary duty; conversion; tortious interference with contractual relations; and he demands money damages in an amount to be determined at trial.

38.    As noted above, GAIC has acknowledged coverage for, and Simpson has incurred at least $894,000.71 in **Costs of Defense** in connection with the Noticed Matters.[7] Simpson has demanded that GAIC continue to advance **Costs of Defense** on his behalf, and has insisted that no **Costs of Defense** payment be made on behalf of Chassen.

## VIII.    <u>JARED CHASSEN'S DEMAND</u>

39.    In the New York County Lawsuit, Chassen asserted cross claims alleging, *inter alia*, that Simpson's business missteps led to his forced resignation under the Arch Operating Agreement, and that he breached his fiduciary duty as a member of Arch; that the Arch operating agreement is void; and he seeks compensatory and equitable relief.

40.    Chassen seeks coverage for at least $500,000 in **Costs of Defense** incurred in connection with the Noticed Matters, and has demanded that GAIC continue to advance Chassen's going-forward **Costs of Defense**. GAIC has acknowledged partial coverage for Chassen under the Policy.

---

[6] Paragraph 3 of GAIC's complaint defines the "New York County Lawsuit" as a lawsuit in New York County Supreme Court filed under Index No. 158055/2023.

[7] Paragraph 31 of GAIC's complaint defines the "Noticed Matters" as: (i) the New York County Lawsuit, with claims and cross-claims by **Insureds**, subject to GAIC's reservation of rights, filed on August 15, 2023; (ii) the Chapter 11 SDNY Bankruptcy filed by a member in interest (JJ Arch LLC) of the **Insured** company (Arch) under Index No. 1:24-BK-10381, filed on March 7 2024; and (iii) Chapter 11 SDNY Adversary Proceeding filed by Simpson, a member in interest of the debtor JJ Arch LLC, seeking to remove the matter to New York County Supreme Court under Index No. 1:24-AP-01335, filed on April 3, 2024. The references to the exhibits are omitted.

### IX.  ADDITIONAL CLAIMS TO THE POLICY PROCEEDS

41.     GAIC anticipates that Simpson will seek to enjoin GAIC from advancing any **Costs of Defense** on behalf of Chassen, and that Chassen will in turn sue GAIC in order to obtain coverage if GAIC does not advance on behalf of Chassen.

42.     Upon information and belief, one or more Interpleader Defendants Wiggin, Griffin, and Offit, provided attorney's services to JJ Arch LLC, a member in interest of the **Insured** (Arch) in relation to its Chapter 11 Bankruptcy filing and adversarial proceeding, may be entitled to recover incurred costs and fees that are potentially covered under the Policy.

43.     GAIC anticipates receiving a claim for compensation by the Interpleader-Defendants, Wiggin, Griffin, and Offit, for **Costs of Defense** incurred on Simpson's and/or JJ Arch's behalf.

All of the defendants have answered, and some have asserted cross-claims or counterclaims.  In particular, the Debtor, acting *pro se* having been blocked from using the policy proceeds to pay counsel, filed an amended answer with counterclaims on November 22, 2024, in which he explained in lay terms his claims under the policy and why Mr. Chassen's claims were invalid.[8]

During the pendency of the Insurance Interpleader Action in State Court, three significant orders have been entered.[9]  On November 29, 2024, JJ Arch was granted leave to intervene.  On December 10, 2025, the separate action commenced by AREH against GAIC was consolidated into the Insurance Interpleader Action.  On January 22, 2026, GAIC's deposit into court of the

---

[8] The Debtor's *pro se* Amended Answer with Counterclaims is attached to the accompanying declaration of Alec P. Ostrow as Exhibit 2.

[9] The discussion of the orders and the filing of the motions for summary judgment is based on a review of the documents filed on NYSCEF in the State Court, Index No. 653208/2024.

remaining limit of liability of the policy of $2,105,999.29 (the "Stake") was directed, and an injunction prohibiting the Interpleader Defendants and any other party claiming an interest in the Stake from instituting or prosecuting any proceeding in any state or federal court that may affect or encumber the stake was issued.  This order was amended the same day in one respect.  The original order fixed a deadline for all parties asserting an interest in the Stake to file motions for summary adjudication by January 15, 2026 to be returnable on February 12, 2026.  The amended order changed these dates to February 26, 2026 and March 26, 2026, respectively.  Prior to the February 26, 2026 deadline, interpleader defendants Wiggin & Dana LLP and Offit Kurman PA filed motions for summary judgment asserting claims to the Stake of $368,270.34 and $133,037.69, respectively.

A notice of the Debtor's bankruptcy filing was filed in the Insurance Interpleader Action on February 24, 2026.[10]  The next day counsel for Mr. Chassen wrote to the presiding justice, the Honorable Joel M. Cohen, as follows:

> On behalf of Jared Chassen, I write regarding tomorrow's deadline to file a motion for summary adjudication.  NYSCEF Doc. No. 360.  As evidenced by his docket filing, Jeffrey Simpson, an interpleader defendant and claimant to the disputed insurance stake in this proceeding filed a personal Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York late last week.  NYSCEF Doc. No. 364.  In this proceeding Mr. Chassen and Mr. Simpson are competing claimants to the disputed stake and their claims and positions are adverse to each other.  Moreover, granting any parties' claim to the stake might delete the stake to the detriment of other claimants, including Mr. Simpson.  Considering that the automatic stay may apply to Mr. Chassen's claims to the stake, Mr. Chassen will refrain from filing a summary judgment motion without further court direction.[11]

---

[10] The discussion of the activity in the State Court following the filing of the Debtor's petition is based on a review of  the documents filed on NYSCEF in the State Court, Index No. 653208/2024.

[11] The letter quoted above is attached to the accompanying declaration of Alec P. Ostrow as Exhibit 3.

The following day counsel for Griffin LLP wrote a similar letter to Justice Cohen explaining that, in light of the automatic stay, Griffin LLP would not be filing a motion for summary judgment by the deadline of February 26, 2026.  On February 27, 2026, Justice Cohen issued an order staying the Insurance Interpleader Action pending the Debtor's bankruptcy case.  On March 2, 2026, as set forth above, the Debtor, through counsel, filed the current notice of removal.

The Motion seeks an order from this Court remanding the Insurance Interpleader Action to the State Court for lack of jurisdiction or, in the alternative, principles of abstention or equity. For the reasons set forth below, the Debtor opposes the Motion, and believes that this Court is the appropriate court to adjudicate issues regarding property of and claims against the Debtor's estate.

**Argument**

**I**

**THE DEBTOR'S CLAIMS TO THE STAKE IN THE INSURANCE INTERPLEADER ACTION ARE PROPERTY OF THE ESTATE.**

The filing of the Debtor's bankruptcy petition created an estate.  11 U.S.C. § 541(a).  The estate consists in part of "all legal and equitable interests of the debtor in property as of the commencement of the case."  *Id.* § 541(a)(1).  The scope of this provision is broad.  *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 (1983) (citing legislative history).  It includes all kinds of property, tangible and intangible.  *In re Williamsburg Boutique LLC*, 663 B.R. 217, 223 (Bankr. S.D.N.Y. 2024).  "Every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541."  *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (cleaned up, internal quotation omitted).  It is

clear that a debtor's rights under insurance policies are property of the debtor's estate.  *U.S. Lines, Inc. v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. (In re U.S. Lines, Inc.)*, 197 F.3d 631, 637 (2d Cir. 1999); *St. Clare's Hosp. & Health Ctr. v. Ins. Co. of N. Am. (In re St. Clare's Hosp. & Health Ctr.)*, 934 F.2d 15, 18 (2d Cir. 1991).  Although these cases concern policies owned by corporate debtors, the breath of section 541 renders this principle equally applicable to the right of an individual debtor to insurance proceeds under a policy issued to a corporate entity.

The cases concerning insurance coverage generally deal with policies owned by a corporate debtor, and separate out the issue of the ownership of the proceeds of the policy.  As Chief Judge Martin Glenn of this Court has stated several times, the following principles apply:

- When the insurance policy only provides direct coverage to a corporate debtor, the general rule is that the proceeds are property of the corporate debtor's estate.

- When the insurance policy provides exclusive coverage to the directors and officers of the corporate debtor, the general rule is that the proceeds are not property of the corporate debtor's estate.

- When the insurance policy provides coverage to both the corporate debtor and the directors and officers, the proceeds will be property of the corporate debtor's estate if the depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution.

*In re Celsius Network LLC*, 652 B.R. 34, 42 (Bankr. S.D.N.Y. 2023); *In re SVB Fin. Grp.*, 650 B.R. 790, 798 (Bankr. S.D.N.Y. 2023); *In re MF Global Holdings Ltd.*, 469 B.R. 177, 190-91 (Bankr. S.D.N.Y. 2012).   In this case, the shoe is on the other foot.  The Debtor is an individual in the position of the directors and officers of the corporate cases.  But the analysis of the rights

7

to the proceeds under the insurance policy at issue are the same. The difference is the individual

Debtor's interests in the insurance proceeds are property of the individual Debtor's estate.

Significantly, because the policy at issue provides combined coverage, the order of

payment provision is critical. *In re Downey Fin. Corp.*, 428 B.R. 595, 607-08 (Bankr. D. Del.

2010). The Order of Payment provision of the instant policy,[12] Section IX.P, provides:

> In the event of **Loss** arising from a covered **Claim** for which
> payment is due under the provisions of this Policy, then the
> **Insurer** shall in all events:
>
> (1) first, pay **Loss** for which coverage is provided under Insuring
> Agreement A of this Policy; then
>
> (2) only after payment of **Loss** has been made pursuant to Insuring
> Agreement A of this Policy, with respect to whatever
> remaining amount of the Limit of Liability is available after
> such payment, the **Insurer** shall pay such other **Loss** for which
> coverage is provided under any other applicable Insuring
> Agreements in Section I of this Policy.
>
> The **Financial Insolvency** of any **Insured** shall not relieve the
> **Insurer** of any of its obligations to prioritize payment of covered
> **Loss** under this Policy.

This creates a priority for any covered Claim under Insuring Agreement A. *See Downey*, 428

B.R. at 607-08. Insuring Agreement A of the instant policy, Section I.A, provides:

> Except for **Loss** which the **Insurer** pays pursuant to Sections I.B
> or I.C of this Policy, the **Insurer** will pay on behalf of the **Insured**
> **Persons** all Loss which the **Insured Persons** become legally
> obligated to pay as a result of a **Claim** first made during the **Policy**
> **Period** or **Discovery Period**, if applicable, for a **Wrongful Act.**

Notably, the definition of Insured Person in Section III.J(1) of the Policy means "any natural

person who was, is or shall become a director, officer, general partner, manager, equivalent

executive or employee of an **Insured Organization**." The definition of Insured Organization in

---

[12] The policy is attached to the accompanying declaration of Alec P. Ostrow as Exhibit 4.

Section III.I of the Policy means "the **Named Insured** and any **Operating Entity**. **Insured Organization** shall not include any **Portfolio Company**." In other words, it is the humans who are covered in Insuring Agreement A, not the entities, and especially not the entity that is the Named Insured under the Policy, AREH. Thus, the humans have a priority over entities which are insured under Insuring Agreement B, Section I.B of the instant policy. *See generally*, Agostino A. Zammiello, *An Overview of D&O Insurance and Its Applicability in Bankruptcies*, 44 Am. Bankr. Inst. J. 26 (June 2025) (discussing Side A, Side B, and Side C coverage). The result is that the Insurance Interpleader Action concerns in a direct and significant way, property of the Debtor's estate.

Significantly, the Debtor's claims to the Stake as set forth in GAIC's complaint and the Debtor's *pro se* answer with counterclaims are not the only interests of the estate in the Insurance Interpleader Action. As a result of the bankruptcy filing, the Debtor, as the estate representative, pursuant to 11 U.S.C. §§ 323, 1107(a), obtained the exclusive right to assert claims belonging to the estate. *Nisselson v. Marjerry Realty Corp. (In re Port Morris Tile & Marble LP)*, 645 B.R. 500, 512 (Bankr. S.D.N.Y. 2022); *McHale v. Alvarez (In re 1031 Tax Grp., LLC)*, 397 B.R. 670, 679 (Bankr. S.D.N.Y. 2008). Such claims include those based on rights "derivative" or "derived" from the debtor. *Marshall v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 740 F.3d 81, 88 (2d Cir. 2014). A derivative claim is one based upon "a secondary effect from harm done to the debtor." *Id.* at 89 (quoting *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 704 (2d Cir. 1989). In this case, the claims of the law firms to the Stake, to the extent they are basing their claims on the Debtor's right to coverage under the policy, are derivative claims. The law firms are not themselves Insured Persons under the policy. *See MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89, 92 (2d Cir. 1988)

9

("MacArthur's rights as an insured vendor are completely derivative of Manville's rights as the primary insured."). In this regard the following discussion on page 7 of the November 22, 2023 letter from GAIC's counsel regarding coverage for counsel for JJ Arch is pertinent:

> As a threshold matter, we understand that the Noticed Matters have been submitted on behalf of Mr. Simpson. Mr. Simpson is the Managing Member of JJ Arch (which, in turn, is the managing member of AREH). JJ Arch, however, is not the **Named Insured** and otherwise does not constitute an **Operating Entity** as defined in the Policy. Specifically, an **Insured** does not maintain an ownership interest in JJ Arch; rather, JJ Arch maintains an ownership interest in the **Named Insured**, AREH. Accordingly, JJ Arch is not an **Insured** under the Policy.[13]

The law firms that are the interpleader defendants were counsel for JJ Arch.

The purpose of this discussion is not to seek a determination at this time that the law firm's claims are derivative and hence property of the estate assertable only by the Debtor. Rather, the purpose is to demonstrate that the Debtor has the right to make this assertion for a later determination on the merits, and if successful on the merits, these claims to the Stake are also property of the Debtor's estate.

In sum, the Debtor's claims to the Stake in the Insurance Interpleader Action, including claims to be asserted with regard to derivative claims made by existing interpleader defendants, are or concern property of the Debtor's estate.

## II

## THE DEBTOR'S REMOVAL OF THE INSURANCE INTERPLEADER ACTION UNDER THE BANKRUPTCY REMOVAL STATUTE WAS PROPER.

The bankruptcy removal statute provides:

> A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court

---

[13] The quoted letter is attached to the accompanying declaration of Alec P. Ostrow as Exhibit 5.

> or a civil action by a governmental unit to enforce such
> governmental unit's police or regulatory power, to the district court
> for the district where such civil action is pending, if such district
> has jurisdiction of such claim or cause of action under section 1334
> of this title.

28 U.S.C. § 1452(a).  Notably, this statute authorizes the removal by "A party," which includes a plaintiff and does not have any unanimity requirement.  *Cal. Pub. Emp. Ret. Sys. v. Worldcom, Inc.*, 368 F.3d 86, 103 (2d Cir. 2004). The bankruptcy removal statute fosters the goal of centralizing litigation that pertains to a bankruptcy estate.  Describing 28 U.S.C. § 1452(a) and its predecessor statute, former 28 U.S.C. § 1478(b), the Second Circuit observed:

> The Senate Report on the [Bankruptcy] Reform Act explains the
> purpose of the provisions as follows:
>
> > This broad grant of jurisdiction will enable the bankruptcy
> > courts . . . to dispose of controversies that arise in
> > bankruptcy cases or under the bankruptcy code.  Actions
> > that formerly had to be tried in the State court or in the
> > federal district court, at great cost and delay to the estate,
> > may now be tried in the bankruptcy court.
>
> S. Rep. No. 95-989, at 153 (1977), *reprinted in* 1978 U.S.C.C.A.N.
> 5787, 5989.  Similarly, the House Report explains that the breadth
> conferred by the new jurisdictional provisions was intended to
> "greatly diminish the basis for litigation of jurisdictional issues
> which consumes so much time, money, and energy of the
> bankruptcy system and of those involved in the administration of
> the debtors' affairs."  H.R. Rep. No. 95-595, at 46 (1977),
> *reprinted in* 1978 U.S.C.C.A.N. 5963, 6007.  In sum, Sections
> 1452(a) and 1334(b) were intended to decrease the litigation costs
> to the estate resulting from actions arising in or related to a
> bankruptcy case.

*Cal. Pub. Emp. Ret. Sys. v. Worldcom, Inc.*, 368 F.3d at 96-97.

As the Supreme Court has recognized, "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected to the bankruptcy estate."  *Celotex Corp. v. Edwards*, 514 U.S. 300, 308

(1995). Federal bankruptcy jurisdiction clearly encompasses all aspects of this action, because federal bankruptcy jurisdiction extends to "all civil proceedings arising under title 11, or arising in or related to a case under title 11." 28 U.S.C. § 1334(b). In the Second Circuit, an action is related to a bankruptcy case "if the action's outcome might have any conceivable effect on the bankrupt estate." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 339-40 (2d Cir. 2018). Explaining further, the Second Circuit stated that: "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the administration of the bankrupt estate." *Id.* at 340 (2d Cir. 2018) (quoting *Celotex*, 514 U.S. at 308 n.6). As demonstrated above, the Debtor's claims to the Stake are property of the Debtor's estate. Thus, there is little doubt that the Insurance Interpleader Action is within the federal bankruptcy jurisdiction because it encompasses claims by and against the Debtor, and implicates property of the Debtor's estate.

The Motion argues that the Debtor has not met his burden to establish removal jurisdiction. This argument is without merit. First, the argument is premised on applying Fed. R. Civ. P. 8(a)(1) to a notice of removal. Of course, Fed. R. Civ. P. 8(a)(1) applies to a pleading that states a claim for relief, and a notice of removal is not pleading, the permissible ones of which are set forth in Fed. R. Civ. P. 7(a), and does not seek relief against any party. The governing rule for bankruptcy removal notices, Fed. R. Bankr. P. 9027(a)(1)(A), requires a short and plain statement of the facts entitling the party to remove. The notice of removal states:

> 1. The Plaintiff commenced the Interpleader Action on June 26, 2024. The Debtor is a party defendant in the Interpleader Action.
>
> 2. The Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Bankruptcy Court on February 19, 2026. Pursuant to sections 1101(1) and 1107(a) of the Bankruptcy

Code, 11 U.S.C. §§ 1101(1), 1107(a), the Debtor is a debtor in possession with all of the rights, powers, functions, and duties of a bankruptcy trustee (except for the right to compensation). No separate trustee has been appointed in the Debtor's chapter 11 case.

3. The subject matter of the Interpleader Action concerns an insurance policy issued by the Plaintiff under which the defendants, including the Debtor, have made claims for coverage.

4. The Debtor's claims for coverage and the Debtor's interest in the proceeds of the subject insurance policy are property of the Debtor's bankruptcy estate, pursuant section 541(a) of the Bankruptcy Code, 11 U.S.C. § 541(a).

These four paragraphs constitute a short and plain statement of the facts entitling the Debtor the remove the Insurance Interpleader Action. Moreover, in light of the above discussion, if there is any error or defect in the notice of removal, it is a harmless error because it does not affect a substantive right, and should be disregarded. Fed. R. Bankr. P. 9005 (applying Fed. R. Civ. P. 61).

As a result, the removal of the Insurance Interpleader Action was entirely proper, and the Motion to remand predicated upon an improper removal should be denied.

### III

### MANDATORY ABSTENTION IS INAPPLICABLE BECAUSE THE INSURANCE INTERPLEADER ACTION IS A CORE PROCEEDING.

The Motion argues that the Insurance Interpleader Action should be remanded because it satisfies all the requirements for mandatory abstention under 28 U.S.C. § 1334(c)(2). This argument is without merit. It falters on the principal requirement for mandatory abstention, namely that the State law claim or cause of action is "related to a case under title 11 but not arising under title 11 or arising in a case under title 11," or stated differently, the proceeding is

13

not a core proceeding.  *See id.* § 157(b)(1) (equating core proceedings with those arising under title 11, or arising in a case under title 11).  The Insurance Interpleader Action is a core proceeding for several independent reasons.

The Second Circuit has held that core proceedings should be given a broad interpretation that is "close to or congruent with constitutional limits."  *U.S. Lines*, 197 F.3d at 637 (quoting *Resolution Tr. Corp. v. Best Prods. Co. (In re Best Prods. Co.)*, 68 F.3d 26, 31 (2d Cir. 1995)).  In the Second Circuit, "whether a contract proceeding is core depends on (1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization.  The latter inquiry hinges on 'the nature of the proceeding.'"  *Universal Oil Ltd v. Allfirst Bank (In re Millenium Seacarriers, Inc.)*, 419 F.3d 83, 97 (2d Cir. 2005) (quoting *U.S. Lines*, 197 F.3d at 637) (quoting, in turn *S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 707 (2d Cir. 1995)).  Proceedings can be core by virtue of their nature "if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings," such as allowance of claims, or "(2) the proceedings directly affect a core bankruptcy function."  *Millenium Seacarriers*, 419 F.3d at 97; *U.S. Lines*, 197 F.3d at 637.  Core bankruptcy functions include determining priority of claims, and, significantly, placing the property of the debtor, wherever found, under the control of the court, for equal distribution among the creditors, and administering all property in the debtor's possession.  *Millenium Seacarriers*, 419 F.3d at 97; *U.S. Lines*, 197 F.3d at 637.

With regard to the core status of this dispute, the Second Circuit in the *U.S. Lines* case provided the governing analysis:

> Notwithstanding that the Trust's [the successor to the
> debtor in possession under the confirmed chapter 11 plan] claims

are upon pre-petition contracts, we conclude that the impact these contracts have on other core bankruptcy functions nevertheless render the proceedings core. Indemnity insurance contracts, particularly where the debtor is faced with substantial liability claims within the coverage of the policy, may well be the most important asset of the debtor's estate. As such, resolving disputes relating to major insurance contracts are bound to have a significant impact on the administration of the estate. In *Orion*,[14] we concluded that where the insurance proceeds would only augment the assets of the estate for general distribution, the effect on the administration of the estate was insufficient to render the proceedings core. Resolving disputes over the P & I policies here has a much more direct impact on the core administrative functions of the bankruptcy court.

*U.S. Lines*, 197 F.3d at 638 (cleaned up, internal quotations and citations omitted). In the present case, the Debtor has also rights under a pre-petition insurance policy. In addition, the Debtor's rights to coverage also concern major claims against the Debtor's case, and may be the most important asset of the Debtor's estate. That the policy at issue is owned by another entity, AREH, and that it is a D&O rather than a P&I policy are immaterial. The purpose of the proceeding is to place the Debtor's claims under the policy under the control of the court for equal distribution among the creditors and for administering the property in the Debtor's possession. Consequently, the Insurance Interpleader Action is a core proceeding.

A second reason lies in the fact that the Stake is a limited fund. As set forth above, the Debtor's claims to and interest in the Stake is property of the estate. Any competing claims of the interpleader defendants to the limited fund diminish the estate's interest in the fund. As aptly stated by Mr. Chassen's counsel in his letter to Justice Cohen:

In this proceeding Mr. Chassen and Mr. Simpson are competing claimants to the disputed stake and their claims and positions are adverse to each other. Moreover, granting any parties' claim to the stake might delete the stake to the detriment of other claimants, including Mr. Simpson. Considering that the automatic stay may

---

[14] The reference is to *Orion Pictures Corp v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1102 (2d Cir. 1993).

> apply to Mr. Chassen's claims to the stake, Mr. Chassen will refrain from filing a summary judgment motion without further court direction.[15]

The competition for the insurance proceeds has an adverse effect on the estate, because any distribution of the insurance proceeds to an entity other than the Debtor depletes the amount of proceeds and available to the Debtor, which diminishes the estate. The automatic stay, which prohibits "any act to obtain possession of property of the estate or of property from the estate or exercise control over property of the estate," 11 U.S.C. § 362(a)(3), protects against such depletion. *Celsius Network*, 652 B.R. at 42; *SVB Fin. Grp.*, 650 B.R. at 798; *MF Global*, 469 B.R. at 191. The Debtor's claims to prevent depletion of the estate's assets in the Insurance Interpleader Action are claims to enforce the automatic stay. Pertinent to the present Motion, a proceeding to enforce the automatic stay constitutes a core proceeding. *Amedisys, Inc. v. Nat'l Century Fin. Enters., Inc. (In re Nat'l Century Fin. Enters., Inc.)*, 423 F.3d 567, 573-74 & n.5 (6th Cir. 2005); *In re Caesars Ent. Operating Co.*, 540 B.R. 637, 639 (Bankr. N.D. Ill 2015); *see In re Congregation Birchos Yosef*, 535 B.R. 629, 632 (Bankr. S.D.N.Y. 2015), *appeal dismissed*, No. 15-CV-6408, 2016 WL 5394755 (S.D.N.Y. Sept. 27, 2016), *aff'd*, 699 F. App'x 91 (2d Cir. 2017).

When there are competing claims to a limited fund of insurance proceeds between a debtor estate and nondebtors, the ability of nondebtors to access the insurance proceeds is governed by motion under 11 U.S.C. § 362(d) for a relief from automatic stay. *Celsius Network*, 652 B.R. at 42-43; *SVB Fin. Grp.*, 650 B.R. at 798-99; *MF Global*, 469 B.R. at 191-92. Significantly, only this Court has the jurisdiction to consider a motion to modify the automatic stay. The state court has no such jurisdiction. *Gruntz v. County of Los Angeles (In re Gruntz)*,

---

[15] The letter quoted above is attached to the accompanying declaration of Alec P. Ostrow as Exhibit 3.

202 F.3d 1074, 1083 (9th Cir. 2000); *Cathey v. Johns-Manville Sales Corp.*, 711 F.2d 60, 63 (6th 1983). Although state courts have concurrent jurisdiction with bankruptcy courts over civil proceedings arising under the Bankruptcy Code, arising in a case under the Bankruptcy Code, or related to a case under the Bankruptcy Code, 28 U.S.C. § 1334(b), and state courts have jurisdiction to determine whether the automatic stay applies, *Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin United Corp. Litig.)*, 765 F.2d 343, 347 (2d Cir. 1985); nothing in section 1334(b) "vests the states with any jurisdiction over a core bankruptcy proceeding, including 'motions to terminate, annul, or modify the automatic stay.'" *Gruntz*, 202 F.2d at 1083 (quoting 28 U.S.C. § 157(b)(2)(G)); *accord In re Kilmer*, 501 B.R. 208, 214 (Bankr. S.D.N.Y. 2013). Because only this Court can lift the automatic stay to allow a nondebtor to access the insurance proceeds, the Insurance Interpleader Action is a core proceeding.

A third reason that the Insurance Interpleader Action is a core proceeding is that the Debtor's claims to insurance proceeds when the insurer does not dispute its liability to the Debtor constitute a turnover proceeding. 11 U.S.C. § 542(b). Section 542(b) of the Bankruptcy Code provides that: "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order, the trustee." 11 U.S.C. § 542(b). A "debt" is defined in the Bankruptcy Code as the "liability on a claim." *Id.* § 101(12). A "claim" is defined to include "a right to payment." *Id.* § 101(5)(A). A debt is considered "matured or payable on demand" is it is "presently payable as opposed to one that is contingent and becomes payable only upon the occurrence of a certain act or event." *Celsius Mining LLC v. Mawson Infrastructure Grp. Inc. (In re Celsius Network LLC)*, 658 B.R. 643, 667 (Bankr. S.D.N.Y. 2024) (cleaned up, internal quotation omitted). In the present case, the Debtor's claim is against GAIC, which has acknowledged coverage, thus making GAIC's debt

presently payable.  Because the policy is a claims made policy, the Debtor's right to payment is not dependent upon a future event.  Significantly, GAIC does not contest its liability to the Debtor, because it commenced an interpleader and states in paragraph 48 of its complaint that, "GAIC is a disinterested stakeholder in the Policy."  This procedural posture eliminates the exclusion from turnover actions of disputed debts.  *See O'Toole v. M. Cabrera & Assocs., P.C. (In re Kaspar)*, 667 B.R. 195 (Bankr. S.D.N.Y. 2025).  Because the Debtor's claims to insurance proceeds in an interpleader action in which the insurer has acknowledged coverage and does not contest liability constitutes satisfies the requirements of a turnover under section 542(b) of the Bankruptcy Code, these claims constitute a turnover proceeding under 28 U.S.C. § 157(b)(2)(E), which, of course, is a core proceeding.

Consequently, because the Insurance Interpleader Action affects the marshaling of property of the estate and the automatic stay it affects core bankruptcy functions and thus is a core proceeding.  The Insurance Interpleader Action is also a core proceeding because the Debtor's claims within it both enforce the automatic stay and seek a turnover of estate property. As a result, mandatory abstention is inapplicable.  *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 232 (2d Cir. 2002).  The remand motion based on it should be denied.

IV

<b><u>PERMISSIVE ABSTENTION IS NOT APPROPRIATE.</u></b>

As an alternative to mandatory abstention, the Motion seeks permissive abstention, pursuant to 28 U.S.C. § 1334(c)(1).  Permissive abstention is discretionary, and should be exercised sparingly because this Court, like all federal courts "have a virtually unflagging

obligation to exercise the jurisdiction given to them, and may may abstain only for a few and extraordinary and narrow circumstances." *Delaware Tr. Co. v. Wilmington Tr. N.A.*, 534 B.R. 500, 513 (S.D.N.Y. 2015) (cleaned up, internal quotation omitted); *accord Lothian Cassidy, LLC v. Lothian Exploration & Dev. II, L.P.*, 487 B.R. 158, 165 (S.D.N.Y. 2013); *In re Residential Cap., LLC*, 519 B.R. 890, 903 (Bankr. S.D.N.Y. 2014).

In determining whether to abstain permissively, courts often consider twelve factors:

> (1) the effect or lack thereof on the efficient administration of the estate of a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden on the court's docket, (10 the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*Delaware Tr. Co.*, 534 B.R. at 512-13; *Lothian Cassidy*, 487 B.R. at 165.  It is respectfully submitted that these factors point decisively in favor of not abstaining.  In particular, the centrality of the issues in the Insurance Interpleader Action to the main case, as evidenced by the Debtor's 1007-2 Declaration and his Schedules, place factors (1) and (6) in the column of retaining rather than abstaining from the proceeding.  Similarly, the discussion above regarding bankruptcy issues of property of the estate, the automatic stay, and turnover, demonstrate that state law issues do not predominate over bankruptcy issues and that core issue have substance, rendering factors (2) and (7) in favor of retaining the proceeding.  There is no contention of difficult or unsettled state law to be applied, which also places factor (3) in the column of

retaining the proceeding. The Motion itself at paragraph 79 concedes that there is no right a jury trial, which makes factor (11) fall in the column of retaining the proceeding. As to the presence of nondebtor parties, it should be emphasized that the interpleader defendants are scheduled creditors and have participated in hearings in the main case, including in objecting to the retention of Debtor's counsel. This should render factor (12) as favoring the retention of the proceeding.

Specifically regarding the Motion's argument regarding on factor (10), the alleged forum shopping, it should be observed that if there were a different trustee of the Debtor's estate, it could not be seriously contended that such trustee would be engaged in forum shopping. But because the Debtor filed for chapter 11, there is no different trustee. The Debtor is a debtor in possession. 11 U.S.C. § 1101(1). A debtor in possession has all of the rights, powers, functions, and duties of a trustee, except for the right to compensation. *Id.* § 1107(a). If a separate trustee could remove the Insurance Interpleader Action to centralize litigation pertaining to the Debtor and the Debtor's estate before the bankruptcy court, then, it is respectfully submitted that there is no good reason to abstain from the Insurance Interpleader Action just because the name of the person with the rights, powers, functions, and duties of the trustee is Jeffrey Simpson.

Thus, the factors supporting retention of the proceeding substantially outweigh the other factors that favor abstention or are neutral. The factors favoring abstention do not overcome the presumption against permissive abstention in light of the Court's virtually unflagging obligation to exercise all of the jurisdiction given to it. *Delaware Tr. Co.*, 534 B.R. at 512-13; *Lothian Cassidy*, 487 B.R. at 165; *Residential Cap.*, 519 B.R. at 903. As a result, permissive abstention is not appropriate, and the remand motion based on it should be denied.

**V**

**EQUITABLE REMAND IS ALSO NOT APPROPRIATE.**

As a last resort, the Motion seeks a remand on equitable grounds under 28 U.S.C. § 1452(b). The equitable remand analysis is essentially the same as the permissive abstention analysis. *N.Y.C. Emp. Ret. Sys. v. Ebbers (In re Worldcom Sec. Litig.)*, 293 B.R. 308, 334 (S.D.N.Y. 2003), *aff'd sub nom. Cal. Pub. Emp. Ret. Sys. v. Worldcom, Inc.*, 368 F.3d 86 (2d Cir. 2004); *accord KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*, 600 B.R. 214, 233 (S.D.N.Y. 2019). For the reasons set forth above, the equities point in direction of retaining the Insurance Interpleader Action in this Court. This is especially true because of the injustice and expense that would be imposed on the Debtor by having to litigate matters central to his reorganization in multiple courts.

Significantly, following the Debtor's chapter 11 filing, Justice Cohen not only stayed the Insurance Interpleader Action, but also stayed a related action in its entirety. Order, *Simpson v. Chassen*, Index No. 158055/2023, NYSCEF No. 2363 (Sup. Ct. N.Y. Cnty. Feb. 27, 2026). Following letters from the parties that requested and opposed reconsideration of the stay, Justice Cohen issued a court notice declining to disturb the stay, stating:

> [T]his case at this point should be included in the federal proceedings so that it can move forward . . . . Maintaining related proceedings in a single forum (to ensure coordination and avoid inconsistent rulings) has long been the Courts preference in these interconnected matters, and at this juncture the Bankruptcy Court appears to be that forum.

Court Notice, *Simpson v. Chassen*, Index No. 158055/2023, NYSCEF No. 2369 (Sup. Ct. N.Y. Cnty. Mar. 10, 2026).[16] Although the above notice was filed in the related action, it pertains just as much to the Insurance Interpleader Action, which is currently before this Court.

---

[16] The Court Notice is attached to the accompanying declaration of Alec P. Ostrow as Exhibit 6.

21

As a district judge in the Southern District of New York observed over 40 years ago in a case where there was litigation in multiple forums, "it is preferable to resolve all these issues in a single forum; and that piecemeal adjudication of these issues in different forums would be counterproductive for readily apparent reasons." *Commercial Union Ins. Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 31 B.R. 965, 975 (S.D.N.Y. 1983). Because, as set forth above, this Court has the jurisdiction to adjudicate all of the issues in the Insurance Interpleader Acton, and the litigants in the Insurance Interpleader Action are already litigating in this Court, this Court should contravene the purpose of bankruptcy to centralize the litigations concerning the Debtor in a single forum by remanding the Insurance Interpleader Action on equitable grounds.

[The remainder of this page is intentionally left blank.]

## Conclusion

For the reasons set forth above, Jeffrey Simpson, in his capacity as debtor in possession, respectfully requests that the Motion be denied in all respects, and that he be granted such other and further relief as is just.

Dated: New York, New York
April 23, 2026

Respectfully Submitted,

BECKER, GLYNN, MUFFLY, CHASSIN &
HOSINSKI LLP
299 Park Avenue, 16th Floor
New York, New York 10171
Telephone: 212-888-3033
Facsimile: 212-888-0255

By: */s/ Alec P. Ostrow*
Alec P. Ostrow
aostrow@beckerglynn.com

*Proposed Attorneys for Plaintiff, Jeffrey Solomon Simpson, as Debtor and Debtor in Possession, Defendant*