# EXHIBIT 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------x

GREAT AMERICAN INSURANCE COMPANY,    )

          )

          Plaintiff,    )

          )

          -against-    )

          )

ARCH REAL ESTATE HOLDINGS, LLC, JEFFREY    )

SIMPSON, JARED CHASSEN, WIGGIN AND DANA    )

LLP, GRIFFIN LLP, and OFFIT KURMAN PA,    )

          )

          Defendants.    )

          )

          )

------------------------------------------------x

Index No.:

Date Filed: June 25, 2024

**SUMMONS**
**REPLY IN OPPOSITION**

To the Above-Named Interpleader-Defendants:

        YOU ARE HEREBY SUMMONED to answer the complaint in this action, and to serve a copy of your Interpleader-Answer, or, if the Interpleader-Complaint is not served with this summons, to serve a notice of appearance on the Interpleader-Plaintiffs' attorneys within twenty days (20) after the service of this summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or, within thirty (30) days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

        Interpleader-Plaintiff designates New York County as the place of trial.

        Venue is proper in this county pursuant to C.P.L.R § 503, in that this Interpleader Action is brought in the same venue as the underlying New York County Lawsuit filed under Index Number 158055/2023, which substantially and materially impacts the Limit of Liability of the Asset Management Liability Policy, Policy Number PEPE246619 (the "Policy"), for which the Interpleader-Defendants have alleged adverse claims, and in which a substantial part of the events giving rise to the claim(s) occurred.

[SIGNATURE BLOACK AND SERVICE ADDRESS NEXT PAGE]

Dated: June 25, 2024

Respectfully submitted,

By: /s/ Edward C. Carleton

Edward C. Carleton, Esq.
Karl J. Fisher, Esq.

SKARZYNSKI MARICK & BLACK, LLP
One Battery Park Plaza – 32nd Floor
New York, New York 10004
Telephone: (212) 820-7750
ecarleton@skarzynski.com
kfisher@skarzynski.com

By: /s/ Scott A. Schechter

Scott A. Schechter, Esq.
Joshua DiLena, Esq.

KAUFMAN BORGEEST & RYAN, LLP
200 Summit Lake Drive
Valhalla, New York 10595
Telephone: (914) 449-1119
jdilena@kbrlaw.com

**Attorneys for Interpleader-Plaintiff**
**Great American Insurance Company**

TO INTERPLEADER-DEFENDANTS:

ARCH REAL ESTATE HOLDINGS LLC
88 University Place, 2nd Floor
New York, NY 10003

JEFFREY SIMPSON
1230 Park Avenue
Apt. 16E
New York, NY 10128

JARED CHASSEN
47 Bridge Street
Apt. 6A
Brooklyn, NY 11201

[Service Addresses Continue to Next Page]

2

WIGGIN AND DANA LLP
437 Madison Avenue, 35th Floor
New York, NY 10022

GRIFFIN LLP
420 Lexington Avenue, Suite 400
New York, NY 10170

OFFI KURMAN PA
590 Madison Avenue, 6th Floor
New York, NY 10022

3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------x

GREAT AMERICAN INSURANCE COMPANY,                )

                    Plaintiff,                        )

         -against-                                 )

ARCH REAL ESTATE HOLDINGS, LLC, JEFFREY          )
SIMPSON, JARED CHASSEN, WIGGIN AND DANA          )
LLP, GRIFFIN LLP, and OFFIT KURMAN PA,           )

             Interpleader - Defendants.           )

-------------------------------x------------X

JEFFREY SIMPSON, individually, and derivatively on   )
behalf of JJ ARCH LLC                                )
                        )

      Interpleader-Defendant/Counter-Claim Plaintiff,   )

         -against-                             )

GREAT AMERICAN INSURANCY COMPANY,                    )

      Interpleader-Plaintiff/Counter-Claim Defendant     )

         -against                              )

**Index No.:**

**INTERPLEADER COMPLAINT PURSUANT TO STATUTORY INTERPLEADER CPLR § 1006**

JARED CHASSEN, individually (former JJ Arch LLC
    Member)

              -against

ARCH REAL ESTATE HOLDINGS, LLC via it's
temporary Managing Member, 608941 NJ, Inc.

              -against

WIGGIN AND DANA LLP

              -against

GRIFFIN LLP

              -against

OFFIT KURMAN PA.

-------------------------------------------------x

## AMENDED ANSWER WITH COUNTERCLAIMS

Interpleader-Defendant, Jeffrey Simpson ("**Simpson**"), by and through his through his Pro Se representation , for his answer and for his counterclaims, individually and derivatively on behalf of JJ Arch LLC ("**JJ Arch**"), against Great American Insurance Company ("**GAIC**") alleges as follows:

**Answer: JJ Arch LLC is a party and was either mistakenly inadvertently not included in this Action and therefore causes a host of reasons why this Complaint is functionally irrelevant. Davidoff Hutcher and Citron was engaged by JJ Arch LLC (by Simpson as Managing Member) as Debtor to continue the Chapter 11 filing and was Counsel until the Dismissal of the Bankruptcy. Since this Action during the pendency of the Chapter Filing, not including the Debtor, which would have this policy as a component of the Estate caused a host of issues and as described below, the Case had to be Intervened and Moved to make it functional. It has been Remanded back to NYS Court but it lacks the Intervention that was included.**

I.      **NATURE OF THE ACTION**

1.      This is an Interpleader-Action brought pursuant to C.P.L.R. § 1006 against the above captioned Interpleader Defendants.

**Answer: Simpson admits the allegation.**

2.      GAIC is the insurer of Interpleader-Defendant Arch, and its directors and officers, as defined by and pursuant to the terms and conditions of an Asset Management Liability Policy, Policy Number PEPE246619 (the "Policy"). The Policy contains an aggregate limit of liability of $ 3 million. The Policy is annexed hereto as **Exhibit A**.

**Answer: Simpson admits the allegation.**

3.      Interpleader-Defendants Simpson and Chassen have sought, and Simpson has been extended, coverage under the Policy as **Insureds**.[1] The **Insureds** are currently engaged in a lawsuit in New York County Supreme Court filed under Index No.158055/2023) ("The New York County Lawsuit"); the lawsuit concerns the corporate dissolution of Arch and the pleadings filed by Simpson and Chassen in the Lawsuit are annexed hereto as **Exhibit B**.

**Answer: Simpson admits that he was extended unquestionable coverage under the Policy in November of 2023 with continuous dialogue with GAIC and regular funding for 6 months prior to this Action causing a shut-down which leaves Simpson with a serious Detrimental Reliance case against GAIC, which GAIC is aware.**

**As it relates to Chassen, Simpson objects entirely to coverage as he does not meet the standards for coverage per the Policy.  Most specifically, his Joint Defense Agreement, dated August 4th, 2023 (we do not yet possess a full copy but have a copy of the first executed page) likely provides for legal payments being made by 608941 NJ Inc. in addition, we have provided proof to the Court that 608941 NJ, Inc. paid at least $250,000 for Chassen's legal expenses on the onset of the legal dispute.   In addition, Chassen made a claim for coverage 6 months after Simpson was awarded coverage.   Only discovery will share the details surrounding these matters.   Chassen is also excluded from coverage from his bad acts more formally articulated in the Prel. Injunction provided to Simpson against Chassen on October 3rd, 2023 under case number 158055-2023, which did not provide for a bond and Chassen did not pursue an appeal.   The JJ Arch LLC operating agreement is very explicit as it relates to damages, expenses, and indemnification for the bad acts that he chose to do in contravention to Simpson, the sole Managing Member of JJ Arch LLC, which was the sole Managing Member of AREH, prior to the November 3rd, 2023 Prel Injunction where the NYS Court gave 608941 NJ Inc. certain temp. relief as to control of AREH, the Non Member Manager of the Arch's portfolio.**

**Note: In Chassen's reply he does not dispute the Claim herein regarding the "Arch corporate dissolution" but he has in all other Actions and Pleadings. Simpson and 608941 NJ Inc. agreed to a corporate dissolution in early 2023 and later denies it. Simpson commenced a JJ Arch corporate dissolution in conjunction with the filing of the draft (non approved) Bankruptcy plan. JJ Arch LLC only requires "Notice" for Simpson to commence it's dissolution and it did exactly that even though Chassen disputes that as well.**

4. Interpleader-Defendant Griffin was retained as counsel to JJ Arch LLC, a member in interest of the **Insured** (Arch), and debtor in the pending Chapter 11 Bankruptcy filed in the Southern District of New York filed under 1:24-BK-10381 (referred to herein as the "SDNY Bankruptcy"). The initial Chapter 11 filing by Griffin in the SDNY Bankruptcy matter is annexed hereto as **Exhibit C**. As a result, Griffin has incurred fees that are potentially covered under the Policy.

**Answer: Simpson admits the allegation as he authorized the Griffin engagement in conjunction with GAIC doing the same. Ultimately, Griffin walked away in the midst of the heated litigation when this very Action was filed so his entitlement to legal bills is very much in question. He also filed the "core" schedules in the Pleading and refused to act on them in the midst of the Action contributing to the Cause of the Dismissal of the Case. His representation was also subject to the Bankruptcy Court's retention application and approval which Simpson ultimately rejected given the controversy of legal disbanding amongst the issue surrounding payments in this very pleading. Simpson believes that his claim against Griffin for damages will be greater than his legal bills that he is demanding herein. Simpson also believes that the GAIC party is aligned with him on this pursuit.**

5. Interpleader-Defendant Wiggin was retained as counsel to JJ Arch LLC, a member in interest of the **Insured** (Arch), and debtor in the pending Chapter 11 SDNY Bankruptcy; Wiggin is also counsel to JJ Arch LLC in an adversarial proceeding stemming from

the SDNY Bankruptcy; the adversarial proceeding was commenced under Index No. 1:24-AP-01335 (referred to herein as the "adversarial proceeding"). The Appearances by Wiggin in the SDNY Bankruptcy matter and the adversarial proceeding are annexed collectively hereto as **Exhibit D**. As a result, Wiggin has incurred fees that are potentially covered under the Policy.

**Answer: Simpson admits the allegation as he authorized the Wiggin engagement in conjunction with GAIC doing the same. Ultimately, Wiggin walked away in the midst of the a heated litigation when this very action was filed so their entitlement to legal bills is very much in question. He also joined the Action (via his relationship with Griffin) knowing the "core" schedules in the Pleading and refused to act on the them in the midst of the Action contributing to the Cause of the Dismissal of the Case. His representation was also subject to the Bankruptcy Court's retention application and approval which Simpson ultimately rejected given the controversy of legal disbanding amongst the issue surrounding payments in this very pleading. Simpson believes that his claim against Wiggin for damages will be greater than their legal bills that he is demanding herein. Simpson also believes that the GAIC party is aligned with him on this pursuit.**

6.      Interpleader-Defendant Offit is counsel to interested party Simpson, who is also a member of JJ Arch LLC, the debtor in the pending Chapter 11 SDNY Bankruptcy. The Notice of

---

[1] Unless otherwise specified, capitalized and bolded terms used in this Interpleader Action have the same meaning that is ascribed to them in the Policy, **Exhibit A**.

2

Appearance by Offit in the SDNY Bankruptcy matter is annexed hereto as **Exhibit E**. As a result, Offit has incurred fees that are potentially covered under the Policy.

**Answer: Simpson admits the allegation as he authorized the Offit Kurman engagement in conjunction with GAIC doing the same. Ultimately, Offit Kurman walked away in the midst of the a heated litigation when this very action was filed so their entitlement to legal bills is very much in question. Their representation was also possibly subject to the Bankruptcy Court's retention application and approval which Simpson ultimately rejected given the controversy of legal disbanding amongst the issue surrounding payments in this very pleading. Offit Kurman was engaged to pursue the Bankruptcy, they changed their position mid stream pushing that they represent Simpson personally only because they wanted GAIC to pay them without a retention application to the Court. Simpson raised his hands on concerns on this and pushed back. Offit Kurman has also commenced a separate action against Simpson personally for payments of legal fees even though their engagement letter does not provide for such and they have been alerted to this concern and issue, it was ignored.**

7. As discussed in detail below, GAIC faces competing demands from at least two **Insureds** (Simpson and Chassen), each seeking coverage for the Policy's remaining available **Limit of Liability**. At the time of this filing, factoring in **Costs of Defense** advanced on behalf of Simpson, the remaining limit of liability is $2,105,999.29.

**Answer: Simpson denies that there are competing Claims between himself and Chassen for the reasons described above where Chassen isn't entitled to proceeds. To the contrary, Simpson illustrated to GIAC that 608941 NJ Inc and Chassen were not honoring the Indemnitee (with "advances") per the AREH and JJ Arch agreements.**

4

8.      As an offer of compromise, GAIC offered to divide the remaining policy proceeds equally between Simpson and Chassen.  Simpson rejected the proposal unequivocally and has threatened to sue GAIC if GAIC advances any **Costs of Defense** incurred on Chassen's behalf.

**Answer:  Simpson agrees that GAIC made this offer but as Simpson has said countless times, he cannot consent and endorse providing insurance proceeds that will likely be illustrated as Insurance Fraud.  This policy and the law do not allow any Claimants to make demands on insurance carriers when the same expense is covered elsewhere, the typical term is "double dipping".**

**Note: In Chassen's reply, he states in his early remarks that he makes his reply upon authority via JJ Arch.   He does not have authority to do anything within JJ Arch, without Simpson's consent explicitly and especially since Nov 2021 per the 1st Amendment to JJ Arch.   Simpson also terminated him for Cause, so he would need to come to Simpson first before making such Claim under any circumstances but he did not.   Chassen was never employed by AREH, not under the corporate documents, but it is possible that 608941 NJ Inc engaged him, without consent by Simpson, even then, the policy would likely not consider this as it was not presented to GAIC.**

9.      Upon information and belief, Simpson's and Chassen's claims for **Costs of Defense**, along with any anticipated indemnity payments made to resolve the Lawsuit, as well as claims made by the additional Interpleader-Defendants (Griffin, Wiggin, Offit) will exceed the remaining Policy proceeds.

**Answer: Simpson agrees with this allegation but does not see how the policy will be making payments to Chassen for the reasons described herein.  In addition Simpson believes that Actions should be taken against the 3 law firms for their Attorney Client**

breaches surrounding funding and not taking direction from Simpson (as Manager of the Debor) during a Bankruptcy proceeding. These claims are not acknowledged by Simpson except for the legal costs required to pursue. Simpson believes that the remaining proceeds should be sufficient for him to finalize all of the AREH and JJ Arch litigation if the Court finally acknowledges the indemnity provisions and the general terms of the executed agreements without further modifications. Simpson is pursuing this in that case in real time. There are derivative cases that AREH is obligated to defend Simpson pursuant to the Nov 3rd, 2023 NYS Court Order, Simpson hopes that the Court will Order 6098941 NJ Inc to honor those obligations in the upcoming Emergency Ex Parte TRO hearing scheduled for Nov 27, 2024.

Note: Simpson has advised GAIC on multiple occasions where is named personally in lawsuits and he requires coverage to defend those claims where 608941 NJ Inc. has carved him out of responses and actually suggests parties pursue him personally further. The policy also has a "Spousal" obligation and that extends to where Chassen and / or 608941 NJ Inc. have added the party "YJ Simco LLC" to Claims where Simpson's wife is a significant Member of that entity.

10.    GAIC has initiated this Interpleader Action to resolve multiple and competing demands to the proceeds of the Policy by the Interpleader-Defendants, which may expose GAIC to liability. GAIC seeks relief from liability as an uninterested stakeholder by depositing the remaining sum of the policy to the Court, which can then be distributed pursuant to the Court's equitable findings and determinations for the claimants.

Answer: Simpson denies that this is the case. Simpson believes that by stopping the funding of the Actions that GAIC committed to, it has caused irreparable damage, harm, loss, etc to him and JJ Arch. They immediately stopped funding in the midst of the heated

litigation that they funded for Simpson (in conjunction with JJ Arch) for 6 months without issue or concern prior. These actions have made it nearly impossible to retain new counsel which has caused him to be Pro Se counsel herein. The trepidation of the Carrier, the uncertainty of instant changes of position that have occurred and the conundrums that this case at large has presented make it a risky proposition for legitimate lawyers to jump in without a very large retainer, in advance.

## II.    JURISDICTION AND VENUE

11.    This Court has jurisdiction over this controversy under C.P.L.R §§ 301, 302, and 1006. This is a New York State civil statutory interpleader action, involving the Policy, and is raised due to multiple claims on the Policy by Interpleader-Defendants whose residence and/or principal place of business is in the State of New York.

**Answer: Simpson has concerns with this. The Arch Property Holdings I LLC Amended and Restated Agreement, executed in 2020 is set up where JJ Arch is the sole Managing Member, without right of removal. It explicitly says that JJ Arch is the only party authorized on behalf of this type of insurance coverage. That agreement is governed by Delaware law. The AREH agreement has a provision in section 14 that indicates that any material term being amended will be effectuated when there is any other new agreement that is executed by the parties (this occurred). It does not require an amendment to AREH, which was executed in 2017.**

12.    Venue is proper in this county pursuant to C.P.L.R § 503, in that this Interpleader-Action is brought in the same venue as the underlying New York County Lawsuit, and in which a substantial part of the events giving rise to the claim occurred.

**Answer: Per 11 above, Simpson's belief is that this matter is one that is likely supposed to**

be heard in SDNY District Court as it relates to the provisions of the Arch Property Holdings 1 LLC and it's explicit illustration on Delaware law governance.  Simpson being Pro Se cannot be sure of this but it is a concern that is raised herein.

The Policy indicates that it is governed by NY Law.  However 12's claim is not entirely correct, the very first litigation matter in this case was brought by 608941 NJ Inc in SDNY District Court and kept it as a placeholder for 6 months to see how Chassen would do in NYS when Simpson had to pursue him (Chassen did the acts of stealing the company so NYS was the proper venue).   608941 NJ Inc paid for Chassen's expenses and later acknowledged that they endorsed his pursuits but they kept their SDNY District Court case against Simpson open until March of 2024.

13.     Pursuant to C.P.L.R § 1006, this Court may issue its process for all claimants to the Policy and enter an Order restraining Interpleader-Defendants from instituting or prosecuting any proceeding in any State or United States Court affecting GAIC's obligations under the Policy.

Answer: see 12 above.

III.     **PARTIES**

14.     Interpleader-Plaintiff, GREAT AMERICAN INSURANCE COMPANY, is an insurance corporation existing under the laws of the State of Ohio and with its principal place of business in the State of Ohio. GAIC issued the Policy in the State of New York.

Answer:  Issuing the policy in the State of New York is not clear that the party should make this pleading in NYS Court rather than SDNY per the above.

15.     Interpleader-Defendant, ARCH REAL ESTATE HOLDINGS LLC, is an **Insured** under the Policy and upon information and belief has its principal place of business in the State

8

of New York.

**Answer:  Simpson has not been involved with AREH place of business since Nov of 2023 by temporary Court Orders but he has been advised that 608941 NJ Inc. shut down the office in NY at the end of 2023 so their principal place of business is Toronto, Canada, not NY.**

16.     Interpleader-Defendant, JEFFREY SIMPSON, is an **Insured Person** under the Policy, subject to GAIC's reservation of rights, and upon information and belief is a citizen of the State of New York.

**Answer:  Simpson admits to this allegation**.

17.     Interpleader-Defendant, JARED CHASSEN, is an **Insured Person** under the Policy, subject to GAIC's reservation of rights, and upon information and belief is a citizen of the State of New York.

**Answer: Simpson cannot attest to this, at this time.**

18.     Interpleader-Defendant, WIGGIN AND DANA LLP, on information and belief may be entitled to the Policy proceeds in connection with its representation of an interested

9

member of the **Insured**; it is a limited liability partnership with its principal place of business in the State of New York.

**Answer:  Simpson has no knowledge of this.**

19.      Interpleader-Defendant, GRIFFIN LLP, on information and belief may be entitled to the Policy proceeds in connection with its representation of an interested member of the **Insured**; it is a limited liability partnership with its principal place of business in the State of New York.

**Answer:  Simpson has no knowledge of this.**

20.      Interpleader-Defendant, OFFIT KURMAN PA, on information and belief may be entitled to the Policy Proceeds in connection with its representation of Simpson; it is a professional association with its principal place of business in the State of New York.

**Answer:  Simpson has no knowledge of this.**

IV.      <u>**THE POLICY**</u>

21.      The Policy Period runs from April 18, 2023, to April 18, 2024. The Policy provides a $3 million aggregate Limit of Liability.  A true and correct copy of the Policy is attached to this Complaint as **Exhibit A**.

**Answer:  Simpson refers to the Policy, however he cannot attest to if the Policy was extended as it had a 1 year tail option for approximately $40,000 due in early 2024. Simpson inquired regarding extension with the Carrier and 608941 NJ, Inc. as interim Managing Member of AREH, but did not receive a reply.   There is no dispute that this litigation has coverage as it was expressly confirmed by GAIC as the Claim occurred during the Policy period.**

22.      Subject to its complete terms and conditions, the Policy provides specified

coverage to **Insureds** for **Loss** (including **Cost of Defense** expenses) resulting from **Claims** first made during the **Policy Period** for **Wrongful Acts**. See **Exhibit A**, Section I(A)-(C) Insuring Agreements.

**Answer: Simpson believes that Chassen is carved out of the Policy for coverage because of his pursuit of Wrongful Acts.**

23.     Section V of the Policy's General Terms and Conditions states, "The **Insurer** shall be liable to pay one hundred (100%) of Loss in excess of the applicable **Retention** amount . . . **Costs of Defense** shall be part of, and not in addition to, the Limit of Liability . . . and such **Costs of Defense** shall reduce the Limit of Liability . . . The **Insurer's** liability for all **Loss** shall be the amount shown in item 3 of the Declarations [$3 million] *which shall be the maximum aggregate Limit of Liability of the Insurer for the* **Policy Period**." (emphasis added).

**Answer: Simpson illustrated to the GAIC that his November 2023 Claim was not subject to Retention and GAIC acknowledged such.**

**Simpson cannot acknowledge that the Carrier is capped at it's coverage limit given it's breach of honoring the Claim in which it approved and funded from Nov., 2023 to May, 2024, where it talked of this Action and then continues to hold back funding all in efforts to rid itself of this complicated case and ultimately get a release from the parties.**

24.     Section VII(C) of the Policy's General Terms and Conditions states, "[t]he **Insurer** shall advance on behalf of the **Insureds**, excess of any applicable **Retention**, covered **Costs of Defense** which the **Insureds** have incurred in connection with covered **Claims** . . . Any amounts advanced by the **Insurer** shall serve to reduce the **Limit of Liability** stated in Item 3 [$3 million]."

**Answer: See above in 23 and refers to the Policy.**

25.     Section VII(E)((4) of the Policy's General Terms and Conditions states, "[t]he

exhaustion of the **Limit of Liability** by the payment of **Loss**, and the resulting end of the **Insurer's** duty to pay on behalf of the **Insureds,** will not be affected by the **Insurer's** failure to comply with and of the provisions of this Policy."

**Answer: Simpson points back to the Policy.**

26.     Therefore, when GAIC has paid $3 million in **Loss**, it shall have no further obligations under the Policy to pay any further **Cost of Defense** expenses or indemnify any **Insured**.

**Answer:  See reply in 23 above.**

27.     The Policy defines **Loss**, as "compensatory damages, settlements, pre-judgment interest, post-judgment interest and **Cost of Defense......** " See Definition Section III(N) of the Policy.

**Answer: Refer to the Policy.**

28.     The Policy defines **Cost of Defense**, as "reasonable and necessary legal fees, costs and expenses incurred in the investigation, defense or appeal of any **Claim......** " See Definition Section III(B) of the Policy.

**Answer: Refer to the Policy.**

29.     The Policy defines **Wrongful Act**, as "any actual or alleged **Employment Practices Wrongful Act** or any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty, or any actual or alleged error or omission in the rendering of or the failure to render **Professional Services:** (1) by the **Insured Persons**, in their capacity as such; (2) with respect to Insuring Agreement (B)(2), by the **Insured Organization**; or (3) with

6

respect to Insuring Agreement (C), by the **Insured Persons** while serving in an **Outside Position**." See Definition Section III(Z) of the Policy.

**Answer: refer to the Policy.**

30.     Lastly, The Policy states under Section IX(B), "insolvency or bankruptcy of the **Insureds** . . . shall not release the **Insurer** from the payment of . . . **Loss** or **Costs of Defense** occasioned during the life of and within the coverage of this Policy."

**Answer: refer to the Policy.**

## V.     THE NOTICED MATTERS

31.     The Interpleader-Defendants have provided notice of three related matters for coverage under the Policy, which collectively stem from the corporate dissolution of the **Insured** (Arch) and the claims and cross claims between Simpson and Chassen. The three related matters are:

i.   New York County Lawsuit with claims and cross claims by **Insureds**, subject to GAIC's reservation of rights, filed under Index No. 158055/2023, filed on August 15, 2023, (annexed as **Exhibit B**);

ii.  Chapter 11 SDNY Bankruptcy filed by a member in interest (JJ Arch LLC) of the **Insured** company (Arch) under Index No. 1:24-BK-10381, filed on March 7, 2024 (annexed as **Exhibit C**);

iii. Chapter 11 SDNY Bankruptcy Adversary Proceeding filed by Simpson, a member in interest of the debtor JJ Arch LLC, seeking to remove the matter to New York County Supreme Court under Index No 1:24-AP-01335, filed on April 3, 2024 (annexed as **Exhibit D**). (the New York County Lawsuit, the Bankruptcy and Adversary Proceeding are referred to collectively as the "Noticed Matters").

**Answer:  Derivative matters are not indicated here and Simpson noticed the Carrier of each individually.   There are at least 3 others that Simpson is aware of and provided notice of such.**

32.     The Interpleader-Defendants, Simpson and Chassen, have sought and continue to seek from GAIC advancement of **Loss**, including **Cost of Defense** expenses, in connection with

13

the Noticed Matters. It is anticipated that Interpleader-Defendants Wiggin, Griffin, and Offit will demand from GAIC advancement of Loss in connection with fees on behalf of the **Insured**'s connection with the Bankruptcy and Adversary Proceeding.

**Answer:  Simpson has made a Claim in Nov 2023 and received funding per commentary above but was explicitly told that funding on a "pre tender" basis was not going to be reimbursed.   Initially he was told "Possibly" but after countless requests, he was finally told "no".   Chassen doesn't make a claim until approximately 6 months later and it seems pretty apparent that GAIC is treating him differently by potentially offering him "pre tender" expense reimbursement.   Simpson has questioned this to GAIC, no reply has been provided. Simpson also wholeheartedly objects to any coverage provided to Chassen considering he committed Wrongful Acts per the Policy and he continues to do such on a daily basis, regardless of what the Court Orders illustrate for him to do.   The Injunction of Nov 2023 did not provide for a bond, no appeal was applied for, putting aside formalities – case closed, he committed the Wrongful Acts and is excluded from JJ Arch entirely for Cause and insurance proceeds.   The fact that he seeks these proceeds and GAIC suggests that Simpson should provide settlement funding to Chassen is effectively asking Simpson to participate in insurance fraud, which he will not do.**

33.     As of the date of the filing of this declaratory judgment action, GAIC has advanced $894,000.71 in **Costs of Defense** incurred by Simpson connection with the Noticed Matters.

**Answer: Simpson believes this is correct but it has committed to more expenditures to various other law firms, none of which have been paid, not including the 3 contained herein.**

34.     Chassen has requested, and GAIC has acknowledged partial coverage for Chassen

14

in connection with **Costs of Defense** Chassen has incurred in connection with the Noticed Matters. Upon information and belief, Chassen's **Costs of Defense** total at least $500,000.00.

**Answer: refer to 32 above.**

35. In light of the payments already made on Simpson's behalf, $2,105,999.29 remains of the Policy's Limit of Liability.

**Answer: Simpson admits to this with the exception articulated in 23 above**.

## VI. CURRENT LAWSUIT AGAINST GAIC

36. On June 7, 2024, GAIC was named as a defendant in an action brought by Arch Real Estate Holdings, LLC ("Arch"), filed in New York County Supreme Court under Index No. 652914/2024; Plaintiff alleges that GAIC is wrongfully misappropriating the Policy proceeds in connection with the SDNY Bankruptcy matter and adversarial proceeding. Arch seeks a Judgment and Order stating, *inter alia*, that GAIC extended coverage related to these matters does not erode the Policy Limit, breach of the Policy contract, as well as damages. The Summons and Complaint are annexed hereto as **Exhibit F**.

**Answer: This Action is frivolous and improper, as noted above and to be explicit, Simpson engaged the policy, made sure the policy was paid for 5 years and controlled any potential Claims until the events of the larger litigation. Chassen making a Claim for Pre Tender expenses happening at the same time as 608941 NJ Inc. trying to say that JJ Arch is not entitled to proceeds is another illustration of bad acting and a plan to commit insurance fraud. Chassen has made it known to Simpson and GAIC that if he receives proceeds, he must give them to 608941 NJ Inc to provide reimbursement under his Joint Defense Agreement (which Simpson has asked repeatedly for and GAIC is aware of such but does not possess to his knowledge). Chassen and AREH and or 608941 NJ Inc have made it**

**explicitly clear that they are jointly attacking Simpson since August 2023 and will not provide any discovery or evidence. Why GAIC would consider funding Chassen anything, it is contradictory. Also, AREH is suggesting that JJ Arch should not get funding, that is Simpson and Chassen, not just Simpson so it is circular.**

VII. **JEFFREY SIMPSON'S DEMAND**

37. In the New York County Lawsuit, Simpson alleges that Chassen illegitimately sought to remove him as the managing member of Arch Real Estate Holdings (**the Insured**). Simpson's claims include breach of contract related to the Arch Operating Agreement; breach of fiduciary duty; conversion; tortious interference with contractual relations; and he demands money damages in an amount to be determined at trial.

**Answer: Simpson made these claims as it relates to JJ Arch first and foremost. This does not include his malicious and intentional theft of funds, transferring of bank accounts, intellectual property, locking Simpson out of the office, defamation of character, solicitation, collusion, etc. Chassen would not have any authority as it relates to AREH, other than what 608941 NJ Inc may have attempted to provide to him improperly.**

38. As noted above, GAIC has acknowledged coverage for, and Simpson has incurred at least $894,000.71 in **Costs of Defense** in connection with the Noticed Matters. Simpson has demanded that GAIC continue to advance **Costs of Defense** on his behalf, and has insisted that no **Costs of Defense** payments be made on behalf of Chassen.

**Answer: Simpson attests that this is correct for the reasons indicated above and does not preclude the seeking of damages against GAIC for improperly starting this Action and by the writing of this Action, it is illustrated that they do not have a good understanding of who has which authority and the like, the theme of many in this case.**

VIII. **JARED CHASSEN'S DEMAND**

16

39.     In the New York County Lawsuit, Chassen asserted cross claims alleging, *inter alia*, that Simpson's business missteps led to his forced resignation under the Arch Operating Agreement, and that he breached his fiduciary duty as a member of Arch; that the Arch operating agreement is void; and he seeks compensatory and equitable relief.

**Answer: The designation of JJ Arch and Arch are unclear here so Simpson cannot give a valid response other than to say that Chassen make claims.**

40.     Chassen seeks coverage for at least $500,000 in **Costs of Defense** incurred in connection with the Noticed Matters, and has demanded that GAIC continue to advance Chassen's going-forward **Costs of Defense**. GAIC has acknowledged partial coverage for Chassen under the Policy.

**Answer: Per 36 above, it is very concerning that GAIC has considered varying treatment from Simpson to Chassen. Simpson can only attest to this because he was asked to illustrate lack of indemnity after seeking such from AREH via 608941 NJ Inc. Simpson has shown the Court that Chassen not only had an indemnity but was offering it to various employees.**

IX.     <u>**ADDITIONAL CLAIMS TO THE POLICY PROCEEDS**</u>

41.     GAIC anticipates that Simpson will seek to enjoin GAIC from advancing any **Costs of Defense** on behalf of Chassen, and that Chassen will in turn sue GAIC in order to obtain coverage if GAIC does not advance on behalf of Chassen.

**Answer: Simpson has commenced this Action (to enjoin Chassen) on Nov 7, 2024. To the extent Chassen sues, he committed Wrongful Acts and the like so it will be frivolous just like the AREH lawsuit against GAIC. Discovery should illustrate the collusive nature of Wrongful Acts and that is why those parties have avoided any**

17

discovery in over a year.

42.     Upon information and belief, one or more Interpleader-Defendants Wiggin, Griffin, and Offit, which provided attorney's services to JJ Arch LLC, a member in interest of the **Insured** (Arch), in relation to its Chapter 11 Bankruptcy filing and adversarial proceeding, may be entitled to recover incurred costs and fees that are potentially covered under the Policy.

**Answer:  Simpson can confirm this but Offit Kurman is suggesting that the can pursue Simpson only and that they were excluded as it relates to the Chapter Filing.  There are also potential claims against these attorneys for causing a Dismissal of the Pleading due to them walking away in the midst of the action.**

43.     GAIC anticipates receiving a claim for compensation by the Interpleader-Defendants, Wiggin, Griffin, and Offit, for **Costs of Defense** incurred on Simpson's and/or JJ Arch's behalf.

**Answer: refer to various replies above on the same issue.**

X.      <u>**NEED FOR INTERPLEADER**</u>

44.     As set forth above, GAIC is subject to inconsistent obligations with respect to the remaining Policy limits. Further, GAIC is the subject of a pending lawsuit brought by Arch for its extended coverage (<u>see</u> **Exhibit F**).

**Answer: Simpson made a proper Claim in Nov 2023, GAIC wrote a 12 page letter articulating the case, the situation and everything that they endorsed for 6 months thereafter.   Nothing should have changed but GAIC decided to hire another attorney (the one who drafted this) to meddle with Claim at large and caused its own inconsistency which brought on risk and potential damages.   The law firms making claims probably would not be if there were not simultaneously notified that there legal bills were in**

**jeopardy.**

45. The claims for the remaining Policy proceeds will be exhausted by the **Cost of Defense** incurred by Simpson and Chassen. GAIC cannot pay continued **Cost of Defense** expenses to both Simpson and Chassen without being exposed to additional lawsuits alleging that it favors the rights of one Insured Interpleader-Defendant over the rights of another Insured Interpleader-Defendant.

**Answer: A claim was made, it was honored properly with diligence and dialogue and consenting Counsel on both sides. GAIC put themselves at risk per 44 above. That does not allow them to "walk away" unscathed and leave Simpson harmed when there is clear detrimental reliance. Simpson lost his company, his income and his reputation by bad acts that are crystal clear. That is why he bought an insurance policy, for protection. For him to not have legal expenses covered, it has resulted in potential foreclosure of his home, lacking abilities to pay other personal obligations and the like. The harm is exponential.**

46. Likewise, GAIC cannot refuse to pay either Simpson's or Chassen's continued **Cost of Defense** without exposing GAIC to yet another lawsuit that it favors the rights of one Insured Interpleader-Defendant over the rights of another Insured Interpleader-Defendant.

**Answer: per the above, it has already illustrated favored relief offered to Chassen. If the two parties made the claims simultaneously, there would be a different dialogue. Simpson also asked GAIC if this risk was possible and he was told it is "highly unlikely". Imagine a carrier funding both sides of a litigation? The truth is Chassen doesn't have a fight, it is what is behind the scenes with 608941 NJ Inc. The carrier should support Simpson in pursuit of that discovery as it was doing until May of 2024.**

19

## FIRST CLAIM FOR RELIEF
**(Statutory Interpleader Against All Interpleader-Defendants pursuant to C.P.L.R. § 1006)**

47.    GAIC incorporates by reference all of the preceding paragraphs of this complaint as if fully set forth herein.

**Answer:  No response.**

48.    GAIC is a disinterested stakeholder in the Policy.

49.     GAIC faces conflicting adverse claims with respect to the Policy's proceeds thereby exposing GAIC to multiple litigations and liability, absent resolution of all such issues in one proceeding.

**Answer:  refer to above.**

50.     GAIC has available and is prepared to deposit the remaining policy proceeds with the Court, which is the Policy's remaining Limit of Liability.

**Answer:  That is not relevant and should go without saying, they have a contractual obligation and breached it.**

51.     It is just and equitable that the Court declare the rights and legal obligations of the Parties to this lawsuit.

**Answer: Only after proper discovery and testimony via due process.**

## SECOND CLAIM FOR RELIEF
**(Preliminary Injunction and Temporary Restraining Order pursuant to C.P.L.R. § 6301)**

52.     GAIC incorporates by reference all of the preceding paragraphs of this complaint as if fully set forth herein.

53.     Arch Real Estate Holdings LLC commenced a lawsuit against Great American Insurance Company in New York County Supreme Court under Index No. 652914/2024; Plaintiff alleges that GAIC is wrongfully misappropriating the Policy proceeds in connection with the SDNY Bankruptcy matter and adversarial proceeding.

54.     As a result of this lawsuit, as well as other potential lawsuits by adverse claimants named herein, GAIC will suffer imminent and irreparable harm defending itself against this lawsuit; further, based on the circumstances alleged in this Interpleader-Complaint, GAIC can establish a probable chance of success on the merits of this Interpleader Complaint brought

pursuant to C.P.L.R. § 1006; lastly, the balance of equities is in GAIC's favor because it has committed to depositing the remaining policy proceeds with the Court until the priority of the adverse claimants are established.

**Answer: GAIC is forgetting what it's purpose is and negating that here, why have insurance if it is not called upon in hard times and situations. There is no sympathy afforded to them to further the fiasco for Simpson with what they did in May of 2024. It was unquestionably damaging to him finding relief in this horrible case he has been plagued with and it allowed more bad acts to occur with the circular nature of the collusion when it spent months working with Simpson to get to the bottom of it initially. Simpson attempted to connect with the firm that published this action but they refused to have a dialogue. That is not commercial. Simpson also made calls to countless individuals at GAIC in pursuit of help when this started, none of them returned calls for months.**

22

55. Thus, it is just and equitable to enjoin Arch Real Estate Holdings LLC from proceeding in its prosecution of the lawsuit styled as Arch Real Estate Holdings LLC against Great American Insurance Company, New York County Supreme Court (Index No. 652914/2024); and also issuing a temporary restraining order enjoining all other named Interpleader-Defendants from commencing a lawsuit against GAIC with respect to the Policy proceeds.

**Answer: Simpson can attest that the litigation in 55 is improper.**

**WHEREFORE**, Interpleader-Plaintiff, GAIC, respectfully requests that this Court enter judgment as follows:

(1) permitting and directing GAIC to deposit the sum of $2,105,999.29 into the Registry of this Court, in full satisfaction of its obligations under the Policy;

**Answer: Simpson objects for the reasons stated above.**

(2) entering an Order requiring the Interpleader-Defendants to interplead their rights to the proceeds of the Policy; and discharging GAIC from any and all liability to Interpleader-Defendants and any and all current or future claims and/or obligations relating to the Policy;

**Answer: Simpson objects for the reasons stated above.**

(3) entering, pursuant to C.P.L.R. § 1006 and this Court's inherent equitable powers, a preliminary injunction during the pendency of this Interpleader Action, and thereafter permanently and perpetually enjoin each and every Interpleader-Defendant from instituting or prosecuting any action or proceeding against GAIC with respect to or arising out of the Policy in dispute in any state or federal court or other forum;

**Answer: Simpson objects and will likely be pursuing damages**

23

**against GAIC for the reasons set forth herein.**

(4)  granting any other relief necessary to effectuate the purposes of interpleader;

(5)  Issuing an Order and Judgment enjoining the current lawsuit filed under

Index No. 652914/2024 and enjoining the named co-defendants/adverse

claimants from bringing a lawsuit again GAIC regarding the Policy proceeds;

**Response:  Simpson objects to 4 and 5 as well.**

With regard to Simpson's  relief sought,  which will be articulated in an emergency OSC on this

same day,  Simpson asks to the Court to Order the Carrier to follow the guidelines of their policy

and  fulfill the obligations that they set out to do by their initial award.    Any other matters will be

handled or resolved in due course.

Simpson also asks the  Court to consider the jurisdictional issues raised herein.

Dated: November 22, 2024
New York, New York

Respectfully submitted,

Jeffrey Simpson, Pro Se

4888-9195-5654, v. 2

25