OLSHAN FROME WOLOSKY LLP
Jonathan T. Koevary, Esq.
Anthony B. Crawford, Esq.
Sahand Farahati, Esq.
1325 Avenue of the Americas
New York, NY 10019
212.451.2300
jkoevary@olshanlaw.com
acrawford@olshanlaw.com
sfarahati@olshanlaw.com

*Counsel for Arch Real Estate Holdings LLC*

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
(212) 972-3000
Sean C. Southard, Esq.
Brendan M. Scott, Esq.
ssouthard@klestadt.com
bscott@klestadt.com

-and -

SCHWARTZ LAW PLLC
Allen Schwartz, Esq.
150 Broadway, Suite 701
New York, New York 10038
347-460-5379
allen@allenschwartzlaw.com

*Counsel for Jared Chassen*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>JEFFREY SOLOMON SIMPSON,<br><br>Debtor. | Chapter 11<br><br>Case No. 26-10359 (LGB) |
| GREAT AMERICAN TITLE INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>- against -<br><br>ARCH REAL ESTATE HOLDINGS, LLC, JEFFREY SIMPSON, JARED CHASSEN, WIGGIN AND DANA LLP, GRIFFIN LLP, and OFFIT KURMAN PA.,<br><br>Defendants. | Adversary No. 26-01015 (LGB)<br><br>**REPLY IN FURTHER SUPPORT OF ARCH REAL ESTATE HOLDINGS LLC'S AND JARED CHASSEN'S JOINT MOTION TO REMAND BASED ON LACK OF JURISDICTION OR, IN THE ALTERNATIVE, PRINCIPLES OF ABSTENTION OR EQUITY** |

13238536-1

Table of Contents

Page

PRELIMINARY STATEMENT ..................................................................................................1

REPLY ....................................................................................................................................2

    I.    The Opposition is Replete with Implicit Concession ............................................2

    II.    The Opposition's Framing Concerning Permissive Abstention and Equitable Remand Leads to Absurd Conclusions.....................................................4

    III.    The Interpleader Action is Not Core........................................................................8

    IV.    No Factor Weighs in Favor of Abstention..............................................................14

CONCLUSION.......................................................................................................................15

13238536-1

<u>Table of Authorities</u>

Page

CASES

*American Intl. Specialty Lines Ins. Co. v. N.A. of Business Owners & Professionals*,
253 F. Supp. 2d 468 (E.D.N.Y. 2003) ...............................................................................8, 9

*In re Celsius Network LLC*,
652 B.R. 34 (Bankr. S.D.N.Y. 2023) .....................................................................................11

*In re EMS Fin. Servs. LLC*,
491 B.R. 196 (E.D.N.Y. 2013) ..............................................................................................10

*In re JJ Arch LLC.*,
No. 24-10381 (JPM), 2024 WL 2933427 (Bankr. S.D.N.Y. June 10, 2024) ........................13

*In re MF Global Holdings Ltd.*,
469 B.R 177 (Bankr. S.D.N.Y. 2012) ....................................................................................11

*In re Nw. Airlines Corp.*,
384 B.R. 51 (S.D.N.Y. 2008)..................................................................................................13

*In re Peanut Corp. of Am.*,
407 B.R. 862 (W.D. Va. 2009) ...............................................................................................12

*In re Partners In Hope, Inc*,
662 B.R. 120 (Bankr. D.S.C. 2024)........................................................................................12

*In re Residential Cap., LLC*,
No. 15-CV-2712 (JPO), 2015 WL 9302834 (S.D.N.Y. Dec. 21, 2015)................................13

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir 2014) ..................................................................................................2

*Lincoln Life & Annuity Co. of New York v. Caswell*,
813 N.Y.S.2d 385 (1st Dep't 2006) .........................................................................................8

*Roman Catholic Diocese of Rockville Ctr. v. Certain Underwriters at Lloyds*,
634 B.R. 226 (S.D.N.Y. 2021)....................................................................................10, 11, 13

*Stern v. Marshall*
564 U.S. 462, 487 (2011).........................................................................................................3

*Universal Oil Ltd v. Allfirst Bank (In re Millenium Seacarriers, Inc.)*,
   419 F.3d 83 (2d Cir. 2005)................................................................................................9

*Wolfe v. The Estate of Conzen*,
   791 F. Supp. 2d 348 (S.D.N.Y. 2011)..............................................................................8

STATUTES

28 U.S.C. § 1334.................................................................................................................1, 3, 4

OTHER AUTHORITIES

Fed. R. Bankr. P. 9027.............................................................................................................1

Fed. R. Civ. P. 8(a) .................................................................................................................2

Jared Chassen ("Mr. Chassen") and Arch Real Estate Holdings LLC ("AREH" and together with Mr. Chassen, the "Movants"), by and through their respective undersigned counsel, submit this reply (the "Reply") in response to the Jeffrey Simpson's opposition (the "Opposition" or the "Opp.") dated April 23, 2026 [ECF Nos. 19, 20] to the Movants' joint motion dated April 1, 2026 pursuant to 28 U.S.C. §§ 1334, 1446, 1447 and 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure [ECF Nos. 9, 10] (together with Movant's Correction and Supplement dated April 7, 2026 [ECF No. 13], the "Motion")[1] to remand the Interpleader Action and in further support of the Motion respectfully state as follows:

## PRELIMINARY STATEMENT

1.      Mr. Simpson has not met his burden to defeat remand. Multiple defendants have made or intend to make claims against the Stake. These defendants include the Movants. Movants have also asserted Independent Claims against GAIC, which Independent Claims form part of the Interpleader Action. None of these claims are core. That Mr. Simpson's claims to the Stake might be property of the estate, or that the law firm defendants' claims might be derivative of Mr. Simpson's rights do not make the action itself core. Likewise, the Independent Claims are neither statutorily nor constitutionally core. Because the Interpleader Action is not core and because the Opposition does not challenge any of the remaining asserted mandatory abstention grounds, this Court must abstain from presiding over the Interpleader Action.

2.      Permissive abstention and equitable remand are also warranted. Rather than challenge the overwhelming evidence of forum shopping, the Opposition would simply have this Court ignore that permissive abstention factor because a neutral trustee would also have the power to remove. But the permissive abstention doctrine ***does recognize*** the removal's motive as a factor,

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

and this motive is nowhere denied nor can it be. Mr. Simpson's uncontested forum shopping motive in this case ought to be outcome determinative in of itself, because an objective analysis from a trustee's perspective provides only one clear path: seek to lift the automatic stay and proceed to the Commercial Division as soon as practicable. That is the quickest path for the estate to obtain any recoveries from the Stake. Likewise, the other permissive abstention factors do not weigh in Mr. Simpson's favor. Finally, in arguing for a central forum to hear disputes, the Opposition overlooks that this argument would practically render moot the equitable remand doctrine in nearly all cases and misplaces a reliance on Justice Cohen's deference to the federal courts, which federal courts are tasked to determine issues of remand and the automatic stay.

## REPLY

### I. The Opposition is Replete with Implicit Concession

3. The Opposition sidesteps away from the Motion's key facts and arguments. First, the Opposition does not dispute that it is Mr. Simpson's burden to oppose remand.[2]

4. Second, in arguing that the Interpleader Action is core, the Opposition focuses solely on claims against the Stake, and not on the Independent Claims. As set forth in the Motion, AREH brought a breach of contract action against GAIC for advancing over $800,000 in Policy proceeds to cover JJ Arch's bankruptcy filing in violation of the Policy, which Mr. Chassen joined. This lawsuit predated the Interpleader Action under a separate index number, but was merged into the Interpleader Action as part of the January 2026 Summary Order. Summary Order at 2, 4.

---

[2] The Opposition further concedes that removal requires a "short and plain statement of the facts" entitling the party to remove (Opp. at 12), but incorrectly distinguishes the removal standard from Fed. R. Civ. P. 8(a), which precisely requires "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 8(a)(1) & (a)(2). However, under the *Twombly & Iqbal* standard "a short and plain statement" cannot be conclusory. Motion ¶ 35. The *Twombly & Iqbal* standard has been extended to jurisdictional statements and as set forth in the Motion, that includes cases of removal. *Id. citing, inter alia*, *Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir 2014) (applying Rule 8(a) standard to removal jurisdictional statement).

13238536-1

Insurance Interpleader <u>NYSCEF No. 360</u> (also available at Adv. Pro. ECF. 1-55), Motion ¶ 8. Under that Summary Order, Movants' claims from that merged action are Independent Claims to be addressed after the summary proceeding which concerns the Stake. Setting aside whether the claims to the Stake itself are core, the Motion argues that Independent Claims cannot be core. Motion ¶¶ 49-50. The Motion further notes that AREH has affirmatively withheld its consent to entry of final orders of the Court and asserts the Independent Claims cannot be constitutionally core under *Stern v. Marshall*, 564 U.S. 462, 487 (2011). *Id.* ¶¶ 50-51. The Opposition simply does not counter any of these points. Moreover, the Opposition ignores Movants' April 7, 2026 Correction and Supplement [ECF No. 13] (the "Supplement"), that notes AREH's jury trial right concerning the Independent Claims, which further informs a constitutional analysis.[3]

5.      Third, where the Motion argues that each mandatory abstention prong is met, the Opposition's counter is limited to challenging whether the Interpleader Action arises under title 11. Therefore, the Opposition impliedly concedes that the Motion is timely; the Interpleader Action is based on a state law claim; Section 1334 provides the sole basis for federal jurisdiction; the Interpleader Action was commenced in state court; and the Interpleader Action can be timely adjudicated in state court.

6.      Fourth, in arguing that the claims to the Stake may be derivative of estate claims and thus "core," the Motion focuses only upon the law firms claims and ignores that AREH and Chassen—each insureds under the Policy—indicated their intentions in the Motion to submit a claim to the Stake itself. Motion ¶ 21.

---

[3] Mr. Simpson had ample notice of the Supplement, which was filed 16 days prior to the April 23, 2026 Opposition date. Counsel for Mr. Simpson receives ECF Notices which include the Supplement, was copied on the courtesy email to the Court containing the Supplement, and was present at the April 14, 2026 status conference where counsel for AREH discussed the filing of the Supplement.

13238536-1

7.      Fifth, nowhere does the Opposition challenge any of the pages and pages of evidence (i) supporting that *this* removal of the Interpleader Action was a was a forum shopping exercise; or (ii) outlining the previous history of Mr. Simpson's forum shopping activity for this proceeding and others, which includes Judge Furman's finding of frivolous and vexatious behavior, and beginning with removals in connection with JJ Arch chapter 11 case.

8.      Sixth, when it comes to the remaining forum shopping factors, the Opposition does not dispute factor 5 (no jurisdictional basis other than 28 U.S.C. § 1334) and ignores the Supplement which discusses factor 11 (AREH's jury trial right).

9.      Finally, the Opposition heavily relies upon the *U.S. Lines* decision, which is also discussed in the Motion, but ignores the post-*U.S. Lines* authority discussed in the Motion that strictly limit *U.S. Lines's* holding.

## II.     The Opposition's Framing Concerning Permissive Abstention and Equitable Remand Leads to Absurd Conclusions

10.     Addressing permissive abstention, the Opposition devotes a single paragraph to discussing factors other than forum shopping followed by a single paragraph discussing forum shopping. Tellingly, the Opposition does not at all contest the Motion's thorough allegations concerning's Mr. Simpson's forum shopping motivation in removing the Interpleader Action. Nor can it, because the record is beyond question. Instead, the Opposition would have this Court write forum shopping—hence, Mr. Simpson's motive—out of the well-established permissive abstention analysis because "it should be observed that if there were a different trustee of the Debtor's estate, it could not be seriously contended that such trustee would be engaged in forum shopping" and that "there is no good reason to abstain from the Insurance Interpleader Action just because the name of the person with the rights, powers, functions, and duties of the trustee is Jeffrey Simpson." Opp. at 20.

13238536-1

11.     In short, Mr. Simpson would have this Court ignore the forum shopping factor completely because he is a debtor in possession with the powers of a trustee and, if a trustee could do it, so could he. This position would write factor 10 and Mr. Simpson's motive completely out of the established caselaw on forum shopping. The argument also begs the question: given the posture of the Interpleader Action as of the petition date, can anyone reasonably believe a hypothetical trustee other than Mr. Simpson would have removed the case? It is highly doubtful.

12.     Having Mr. Simpson's interests in mind, the Summary Order provided for a streamlined summary procedure concerning the Stake designed to distribute funds to stakeholders ahead of a July 2026 trial in the Corporate Control Action. Motion ¶¶17-19. Defendants seeking rights to the Stake, which included Mr. Simpson, Mr. Chassen, and AREH, had until February 26, 2026 to file their claims motions, and a return date was scheduled for March 26, 2026. The automatic stay of this chapter 11 case, filed on February 19, 2026, arguably prevented parties from proceeding and no defendant filed a claim motion subsequent to the petition date.

13.     Had Mr. Simpson or a trustee immediately moved to lift the automatic stay following his chapter 11 filing to return to the Commercial Division, the Interpleader Action could have been back on track with only a slight modification to its schedule. Instead, with removal, Mr. Simpson created two new obstacles to moving forward. First, Mr. Simpson or any trustee had to have anticipated facing a remand motion before this action could proceed. Second, it is far from clear that the Federal Rules of Bankruptcy Procedure would allow for the sort of speed and streamlined process provided by the Summary Order concerning the Stake. A quick return to the Commercial Division is ***the only mechanism*** for the estate to achieve a quick recovery.

14.     Unless a hypothetical trustee believed in Mr. Simpson's baseless accusations that Justice Cohen is a "corrupt judge" who is "on the take," (Motion ¶¶ 25, 68, 69, 71, 73) it stands to

5

reason removal is an absurd proposition and a trustee would never have removed the Interpleader Action. The assertion that because a trustee can do it, Mr. Simpson can too, proves entirely self-serving, and says more about who Mr. Simpson is as a fiduciary than anything else.

15. Likewise, just as Mr. Simpson would write forum shopping out as a permissive remand prong, he would also write out the concept of equitable remand completely. The Opposition seeks to centralize "because of the injustice and expense that would be imposed on the Debtor by having to litigate matters central to his reorganization in multiple courts." Opp. at 21. Set aside that any "injustice" would be of Mr. Simpson's own making (like the proverbial orphan that murdered his parents), if centralization in the Bankruptcy Court was paramount, there would be no equitable remand because that same argument can be made for just about any case.

16. In an attempt to strengthen this argument, the Opposition relies on Justice Cohen's broad preference for a single forum. *Id*. But Justice Cohen's stay of the Interpleader Action was expressly an act of comity to the federal court that came in the backdrop of Mr. Simpson's two years of unrelenting attacks on him—many of which are cited in the Motion (and not disputed)—which attacks include Mr. Simpson's December 2025 demand that the Bankruptcy Court require Justice Cohen to appear before it in an email to this Court copying Justice Cohen, where he argued to this Court that Justice Cohen "ignore[s] all stays and had made clear that he hates bankruptcy and has caused this disastrous of a mess." Corporate Control Action NYSCEF Doc. No. 2177 Dec. 4, 2025 4:00p.m. This Court denied the request on December 5, 2025. *In re YJ Simco LLC*, 25-10437-lgb, ECF No. 71. Justice Cohen's direction further comes in the wake of Mr. Simpson's threats as follows:

> Once again, SHAME ON YOU JUDGE JOEL COHEN, for what you have done and continue to do - all prejudicial, biased and with intentional harm to me, including your actions this week. If i must file for personal bankruptcy as a result to stop your absurdity, that i will do and your "unclean" hands will be investigated

> to the nth degree. I will once again go to all law enforcement agencies with your actions. I can only imagine where your immunity starts and stops as it relates to federal bankruptcy code crimes.

*1/24/26* email of Mr. Simpson to Justice Cohen attached as Ex A to the accompanying declaration of Jonathan T. Koevary Esq., filed contemporaneously herewith.

17. Further, Justice Cohen's opinion on removal lacked the benefit of adversarial briefing on issues such as the applicability of mandatory abstention or this Court's anti-removal injunction and was not a legal determination as to whether removal is proper, something only the federal courts can determine.

18. Given Mr. Simpson's unrelenting attacks on Justice Cohen and the New York State Unified Court System, which includes threats that he would have the federal courts investigate Justice Cohen for his actions, it should surprise no one that Justice Cohen has erred in favor of overbreadth. But Justice Cohen is not the arbitror of this Court's jurisdiction or abstention. Having taken perhaps unprecedented steps to bully Justice Cohen to rule his favor or remove him from the case, it would be manifestly unjust to allow Mr. Simpson to now benefit in reliance on the perhaps inevitable result of Justice Cohen allowing him to get his way. Giving credit to Justice Cohen's deference under these circumstances would only reward litigant conduct that is without precedent and which has violated all norms of litigant behavior.

19. Finally, the Opposition argues on the false premise "the litigants in the Insurance Action are already litigating in this Court." Not so! AREH has not filed a claim and is well within its rights to choose never to do so. AREH expressly withheld consent to this jurisdiction. It has not filed any pleading in the main case or participated any objection. Likewise, many of the other defendants have not filed any documents in the main case or adversary, beyond notices of appearance. While not relevant, Mr. Chassen is the only party to the adversary proceeding that has

13238536-1

filed pleadings in the main case or has been involved in other adversaries. Treating AREH as if it is an active litigant in the main case or other adversary proceedings when it is not should have no bearing just as punishing Mr. Chassen for protecting his rights should have no bearing on the Motion.

**III.    The Interpleader Action is Not Core**

20.     As an initial matter, Mr. Simpson mischaracterizes the nature of the Interpleader Action as a mere "turnover proceeding," where "the insurer does not dispute its liability to the Debtor." This is factually and legally inaccurate. Federal courts have recognized that an interpleader action is "a remedial device which allows a person holding property or money to compel two or more parties ***asserting mutually exclusive rights*** to the fund to join and litigate their respective claims in one action." *American Intl. Specialty Lines Ins. Co. v. N.A. of Business Owners & Professionals*, 253 F. Supp. 2d 468, 476 (E.D.N.Y. 2003) (emphasis added); *Wolfe v. The Estate of Conzen*, 791 F. Supp. 2d 348, 352 (S.D.N.Y. 2011) ("the purpose of interpleader . . . is to prevent a stakeholder from having to pay two or more parties for one claim"). New York courts allow an insurance company "to avail itself of the interpleader mechanism for the purpose of discharging its obligations under the policy while affording the interested parties an ***opportunity to litigate the dispute between themselves***." *Lincoln Life & Annuity Co. of New York v. Caswell*, 813 N.Y.S.2d 385, 391 (1st Dep't 2006) (emphasis added).

21.     Here, GAIC does not owe any "liability" to Mr. Simpson nor is Mr. Simpson ***automatically*** entitled to any portion of the Stake such that the Stake should be considered the property of Mr. Simpson's estate. Rather, the Interpleader Action seeks to determine the rights of all parties seeking an interest in the stake, of which Mr. Simpson is one of many other claimants. indeed, interpleader proceedings are conducted in two steps: first determining "whether the stakeholder may be relieved from liability; and second, the court actually adjudicates the

8

defendants' adverse claims to the interpleaded fund." *American Intl. Specialty Lines*, 253 F. Supp. 2d at 476. Mr. Simpson's rights to recover under the policy, as well as the rights of the other claimants must first be litigated and determined by the court.

22. Likewise, Mr. Simpson has offered no legal support for his notion that he should get "extra" or superior rights to a D&O policy (or its proceeds) over other insureds merely because Mr. Simpson filed for chapter 11 protection. As discussed, there has been no judicial determination as to what rights, if any, Mr. Simpson may have to the Stake. Furthermore, Mr. Simpson's position would essentially turn bankruptcy into a sword where when faced with competing claims in an interpleader action, a party could simply file for chapter 11 to upend the entire process.

23. Likewise, the Interpleader Action involves more than claims against the Stake. As Mr. Simpson admits, the policy is owned by AREH, who is the named insured. Likewise, Mr. Simpson acknowledges that AREH brought a separate action against GAIC for breach of contract and seeking a declaration of AREH rights under the policy at issue, which was ultimately consolidated with the Interpleader Action. The Opposition further does not wrestle with the existence of separate claims that AREH and Chassen had against GAIC that are separate from the Stake and ignores the Motion's legal arguments, including constitutional arguments concerning same. Motion ¶¶ 49-51.

24. The Interpleader Action is not core. As Mr. Simpson notes, in the Second Circuit, "whether a contract proceeding is core depends on (1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization. The latter inquiry hinges on 'the nature of the proceeding.'" *Universal Oil Ltd v.*

*Allfirst Bank (In re Millenium Seacarriers, Inc.)*, 419 F.3d 83, 97 (2d Cir. 2005) (quoting *U.S. Lines*, 197 F.3d at 637)

25. Even allowing that Mr. Simpson's **right to proceeds** are property of the estate, that does not render "core" his contract claims to those rights. *In re EMS Fin. Servs. LLC*, 491 B.R. 196, 203 (E.D.N.Y. 2013) ("[W]hile the debtor]s rights under its insurance policies are property of a debtor's estate, the contract claims are not rendered core simply because they involve property of the estate").

26. Here the policy at issue pre-dates the bankruptcy case, which this Court has found to be dispositive. *See Roman Catholic Diocese of Rockville Ctr. v. Certain Underwriters at Lloyds,* 634 B.R. 226, 236 (S.D.N.Y. 2021) ("This alone usually means that the contract claims are non-core.").

27. Likewise, the Interpleader Action does not necessarily implicate core bankruptcy functions. Indeed, this Court noted that "A claim is non-core if it does not depend on bankruptcy laws for its existence and . . . could proceed in a court that lacks federal bankruptcy jurisdiction." *Id.* Here, the Interpleader Action's genesis lies in state court and could and should be resolved there.

28. Mr. Simpson's reliance on *U.S. Lines* is misplaced. This Court has often limited the applicability of *US Lines.* For example, in *Roman Catholic Diocese*, this Court stated:

> In *Roman Catholic Diocese of Rockville Centre, New York v. Arrowood Indemnity Co.*, Judge Caproni reasoned that *United States Lines* "should be limited to its facts," meaning that "a declaratory judgment action about the scope of insurance policies is only core when the insurance policies are the lone asset and provisions in the insurance policies necessarily implicate core bankruptcy functions to enable the proceeds of the policies to be accessed."

634 B.R. at 235.

13238536-1

29.     Here, Mr. Simpson has made no showing that his unresolved claim at issue under the policy is his "lone asset," just that it "may be the most important asset of Mr. Simpson's estate." As this Court noted "central to the Second Circuit's reasoning in *U.S. Lines* was that the policies there represent[ed] the only potential source of cash available. Courts in this District have distinguished *U.S. Lines* on that basis. *Roman Catholic*, 634 B.R. at 235.

30.     Moreover, Courts have further curtailed *U.S. Lines*'s holding based on its unique "pay-first" policy that is not present here. As set forth in the Motion:

> As recently explained in depth in McCord as Tr. of Est. of Haniff v. Gov't Emps. Ins. Co., No. 22-MC-3611 (MKB), 2023 WL 4209542, at *5 (E.D.N.Y. June 27, 2023), however, "recent cases suggest that [a contractual dispute over insurance policies] is "non-core" and "the Second Circuit has since limited U.S. Lines' holding to its facts." (citing Mt. McKinley Ins. Co. v. Corning Inc., 399 F.3d 436, 448 (2d Cir. 2005) ("explaining that the Circuit Court's holding in U.S. Lines was based on 'mutually re-enforcing effects of two factors,' that the policies were 'the only asset available' and 'were pay-first policies that required the trustee to pay the claims and then seek indemnification'"). See also Roman Cath. Diocese of Rockville Ctr., N.Y., 2021 WL 1978560, at *6 . Here, as evidenced by the fact that GAIC has already advanced in excess of $800,000 and deposited the balance of the policy (in excess $2.1 million) with the Commercial Division, U.S. Lines' unique pay-first factor is simply not present.

Motion at 20-21. The Opposition relies on *U.S. Lines*, but has no answer for this. Instead, Mr. Simpson goes to great lengths citing cases regarding the priority of payments under D&O policies at issue in bankruptcy cases such as *In re Celsius Network LLC*, 652 B.R. 34 (Bankr. S.D.N.Y. 2023) and *In re MF Global Holdings Ltd.*, 469 B.R 177 (Bankr. S.D.N.Y. 2012) to support the proposition that proceeds are property of the estate.

31.     Mr. Simpson, however, concedes that the cases he cites are factually distinguishable from the facts in this case. In these cases, it was the corporate entity that was both owner of the policy and the bankrupt entity and individual directors sought payment under the subject policies. Those cases rightly held that because of the nature of D&O policies the directors

13238536-1

and officers were entitled to proceeds under the policies and that the automatic stays could be lifted to pay defense costs for the debtor's directors and officers. The cases expressly reserved whether those claims were property of the estate, but regardless that question is not relevant here.

32.     Here, AREH, not Mr. Simpson, is the owner of the policy. Motion ¶ 1. The policy is not the property of Mr. Simpson, nor is the policy at issue a part of Simpson's estate. Mr. Simpson merely has an unresolved claim for coverage under the policy that predates Mr. Simpson's bankruptcy filing. Mr. Simpson has offered no legal support for his notion that he should get "extra" or superior rights to a D&O policy (or its proceeds) over other insureds merely because Mr. Simpson filed for bankruptcy on behalf of himself. Indeed, courts have held the opposite.

33.     As discussed, AREH is the named insured, while Mr. Simpson and Mr. Chassen were each insured by virtue of being AREH's officers and directors. Mr. Simpson, and not AREH, is the debtor. That his estate may have a contractual claim against the Policy may make the underlying claim property of the estate, does not render the claim property of the estate, even if there is an interpleader component to the action. *In re Peanut Corp. of Am*., 407 B.R. 862, 865 (W.D. Va. 2009) ("As an interpleader action brought pursuant to federal statute and rule, FIC's adversary proceeding is non-core. It does not invoke a substantive right provided by title 11, nor is it a proceeding that could arise only in the context of a bankruptcy case. And because it does not involve issues uniquely related to bankruptcy law, the interpleader action could clearly proceed in a forum outside Bankruptcy Court"); *In re Partners In Hope, Inc*, 662 B.R. 120, 139 (Bankr. D.S.C. 2024) (interpleader of tax refunds non-core).

34.     Nor does the possible existence of derivative claims render the Interpleader Action to be core. Mr. Simpson engages in a lengthy definition of a derivative claim only to conclude that

13238536-1

he does not "seek a determination at this time that the law firm's claims are derivative and hence property of the estate assertable only by the Debtor." This speculative placeholder argument, however, does not elevate the Interpleader Action to being a core proceeding.

35. Indeed, whether the law firms are entitled to any relief under the Policy will be contested in the Interpleader Action given that none of the law firms are insured and their work was performed largely if not exclusively for JJ Arch, an entity that is not an insured under the Policy. Regardless, resolution of the law firm's claims to the stake involve a question of state law that is not dependent upon bankruptcy law for resolution. *See Roman Catholic Diocese of Rockville Ctr. v. Certain Underwriters at Lloyds,* 634 B.R. 226, 236 (S.D.N.Y. 2021) ("A claim is non-core if it does not depend on bankruptcy laws for its existence and . . . could proceed in a court that lacks federal bankruptcy jurisdiction."). Moreover, reliance on the potential derivative nature of the law firm claims does not address either AREH or Mr. Chassen's claims to the Stake or their Independent Claims, which are very much part of the Interpleader Action.

36. Taken to its logical conclusion, the Opposition ultimately poses that where a debtor has a claim, the action must be core. But that would mean wherever the debtor is a plaintiff or counterclaimant, the matter must core because the claims are property of the estate. That is simply not the law. *See, e.g., In re JJ Arch LLC*., No. 24-10381 (JPM), 2024 WL 2933427, at *8-9 (Bankr. S.D.N.Y. June 10, 2024) (finding action brought by Mr. Simpson and then-debtor JJ Arch as plaintiffs to be non-core); *Roman Catholic, supra,* (debtor's insurance claim not core); *In re Residential Cap., LLC*, No. 15-CV-2712 (JPO), 2015 WL 9302834 (S.D.N.Y. Dec. 21, 2015) (post-confirmation trust insurance claim not core); *In re Nw. Airlines Corp*., 384 B.R. 51 (S.D.N.Y. 2008) (breach of lease claim brought by debtor not core).

13238536-1

## IV. No Factor Weighs in Favor of Abstention

37. The Opposition argues factor 1 and 6 weigh in favor of abstention, but, with the lifting of the automatic stay, which any party including Mr. Simpson can move for at any time, factor 1 clearly weighs in favor of immediate remand as the Commercial Division is most ready to swiftly deal with Mr. Simpson's claims to the Policy through the summary proceeding and thus guide the administration of this case. Meanwhile, factor 6—relatedness or remoteness weighs in favor of remand given the remoteness of the Independent Claims, and AREH and Chassen's claims to the Policy, regardless of the potential derivative nature of the law firms' claims. The Opposition's claim that factors 2 and 7 weigh in favor are baseless, as the claims are solely based on state law and not bankruptcy law and as is the substance of the proceeding. Factor 3 (difficult or unsettled state law) may be neutral, but the Opposition gives no reason why that ought to weigh one way or another. AREH does have a jury trial right on its Independent Claims, and the Opposition simply ignores what the Supplement has to say on that point.

38. As to factor 10 (forum shopping), that is discussed in detail above and Mr. Simpson's answer for it is unavailing. Finally, the Opposition's claims concerning Factor 12 (the presence of non-debtor parties) is absurd. The Interpleader Action has seven total parties, six of which are named defendants. Only one of six of seven parties is a debtor. Facially, this factor weighs in favor of abstention. To get around this obvious fact, the Opposition argues that "it should be emphasized that the interpleader defendants are scheduled creditors and have participated in hearings in the main case, including in objecting to the retention of Debtor's counsel." Parties appear to protect their rights. That does not mean they submit to the Bankruptcy Court's jurisdiction or are active participants. AREH has expressly withheld its consent to entry of final orders. No defendant has filed a proof of claim. Mr. Chassen is the only party who objected to the

13238536-1

retention motion, and his legitimate concern over Mr. Simpson's counsel's disinterestedness should not be used against him to defeat a remand motion.

<strong><u>CONCLUSION</u></strong>

WHEREFORE, Movants respectfully request that this Court overrule the Opposition, issue proposed findings granting the Motion, and grant the Movants such other relief as is just and proper.

Dated: April 27, 2026

**OLSHAN FROME WOLOSKY LLP**

*/s/* Jonathan T. Koevary
Jonathan T. Koevary
Anthony B. Crawford
Sahand Farahati
1325 Avenue of the Americas
New York, NY 10019
212.452.2300
jkoevary@olshanlaw.com
acrawford@olshanlaw.com
sfarahati@olshanlaw.com

*Counsel for Arch Real Estate Holdings LLC*

-and-

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

*/s/* Sean C. Southard
Sean C. Southard
Brendan M. Scott
200 West 41st Street, 17th Floor
New York, New York 10036
ssouthard@klestadt.com
bscott@klestadt.com

-and-

13238536-1

**SCHWARTZ LAW PLLC**
Allen Schwartz, Esq.
150 Broadway, Suite 701
New York, New York 10038
347-460-5379
allen@allenschwartzlaw.com

*Counsel for Jared Chassen*

16

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2026, a true and correct copy of the foregoing was served on all parties in interest by electronic transmission via the Court's ECF system to all parties authorized to receive electronic notice in this case.

/s/ Jonathan T. Koevary
Jonathan T. Koevary