OLSHAN FROME WOLOSKY LLP
Jonathan T. Koevary, Esq.
Anthony B. Crawford, Esq.
Dean M. Oswald, Esq.
1325 Avenue of the Americas
New York, NY 10019
212.451.2300
jkoevary@olshanlaw.com
acrawford@olshanlaw.com
doswald@olshanlaw.com

*Counsel for Arch Real Estate Holdings LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| JEFFREY SOLOMON SIMPSON, | Case No. 26-10359 (LGB) |
| Debtor. | |
| GREAT AMERICAN TITLE INSURANCE COMPANY, | Adversary No. 26-01015 (LGB) |
| Plaintiffs, | **ARCH REAL ESTATE HOLDINGS LLC'S LIMITED OBJECTION TO PROPOSED FINDINGS PURSUANT TO RULE 9033 OF THE FEDERAL RULES OF** |
| - against - | |
| ARCH REAL ESTATE HOLDINGS, LLC, JEFFREY SIMPSON, JARED CHASSEN, WIGGIN AND DANA LLP, GRIFFIN LLP, and OFFIT KURMAN PA., | **BANKRUPTCY PROCEDURE** |
| Defendants. | |

13280114-6

# Table of Contents

Page

PRELIMINARY STATEMENT ............................................................................................1

LIMITED SPECIFIC OBJECTION ...................................................................................3

JURISDICTION ...................................................................................................................3

PROCEDURAL BACKGROUND.......................................................................................3

    A.    AREH Sues Great American for Funding Mr. Simpson's Illegal JJ Arch Bankruptcy Filing ..............................................................................................3

    B.    The State Court Action and Its Consolidation with the GAIC Action ....................4

    C.    Prior to His Personal Bankruptcy Filing, Mr. Simpson Twice Improperly Caused the Removals of the State Court Action, Effectively Delaying Settlement ..............................................................................................................6

    D.    After Causing Delay Through Removal, Court Orders Expedited Summary Proceeding Over Mr. Simpson's Objection Designed to Direct Funds to Qualifying Parties Ahead of a Summer 2026 Trial in the Corporate Control Action ...............................................................................7

    E.    Facing Criminal Contempt, Mr. Simpson Goes On Record in the Interpleader Action and Related Cases that He Will Boycott All Proceedings Before Justice Cohen..........................................................................9

    F.    Mr. Simpson Has Been Found By Multiple Courts in Related Cases to Have Engaged in Forum Shopping Behavior .......................................................13

    G.    The Underlying Arguments Concerning Forum Shopping....................................15

    H.    Mr. Simpson's Response ......................................................................................20

    I.    The Proposed Findings ..........................................................................................23

ARGUMENT.....................................................................................................................25

CONCLUSION..................................................................................................................28

i

<u>Table of Authorities</u>

<u>Page</u>

CASES

*Arch Real Estate Holdings, LLC v. Great American Insurance,*
Index No. 652914/2024 (Sup Ct. N.Y. Co.) ................................................................ *passim*

*Chassen v. Simpson,*
25-cv-02373 (S.D.N.Y.) (JHR) (HJR) ........................................................................14

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,*
544 U.S. 280 (2005) .....................................................................................................13

*Great American Insurance Co. v. Arch Real Estate Holdings LLC et al.,*
Index No. 653208/2024 ........................................................................................ *passim*

*Great American Insurance Co. v. Arch Real Estate Holdings LLC et. al.*
No. 24-04026 (JPM) (Bankr. S.D.N.Y. 2024) ..............................................................6

*Hunter v. McMahon,*
75 F.4th 62 (2d Cir. 2023) ...........................................................................................13

*In re AOG Ent., Inc.,*
569 B.R. 563 (Bankr. S.D.N.Y. 2017) ........................................................................14

*In re JJ Arch LLC,*
663 B.R. 258 (Bankr. S.D.N.Y 2024) ......................................................................6, 14

*In re JJ Arch LLC,*
No. 24-10381 (JPM) (Bankr. S.D.N.Y. June 10, 2024), ECF No. 131 .......................27

*In re JJ Arch LLC,*
Nos. 24-10381 (JPM), 24-1335 (JPM), 2024 WL 2933427 (Bankr. S.D.N.Y.
June 10, 2024) .........................................................................................................13, 16

*Mt. McKinley Insurance Company v. Corning, Inc.,*
399 F.3d 436 (2d Cir. 2005) .........................................................................................23

*Jeffrey Simpson, individually and derivatively, as managing member of JJ Arch*
*LLC, suing derivatively as managing member of Arch Real Estate Holdings*
*LLC and JJ Arch LLC, v. Jared Chassen, et al.,*
Index No. 158055/2023 ......................................................................................... *passim*

*Quackenbush v. Allstate Ins. Co.,*
517 U.S. 706 (1996)......................................................................................................14

ii

*ResCap Liqudiating Trust v. Primary Capital Advisors, LLC (In re Residential Capital, LLC)*,
 527 B.R. 865 (S.D.N.Y 2014)..................................................................................26, 27

*Rescap Liquidating Trust v. PHH Mortgage Corp.*,
 518 B.R. 259 .....................................................................................................................27

*Simpson v. Chassen*,
 25-CV-4004 (JMF), 2025 WL 1784931 (S.D.N.Y. June 27, 2025) ...........................14, 16, 25

*Simpson v. Cohen et. al.*,
 Civ. No. 1:26-cv-00130 (LTS) (S.D.N.Y.) ...................................................................13

*Simpson v. Cohen et. al.*,
 Civ No. 1:26-cv-00193 (LTS) (S.D.N.Y.) ....................................................................13

*Simpson v. New York State Unified Court System, et. al.*,
 Civ. No. 1:26-cv-00110 (LTS) (S.D.N.Y.) ...................................................................13

*Simpson v. Wilson et. al.*,
 Civ. No. 2:26-cv-00125 (SJB)(ARL) (E.D.N.Y.) .......................................................13

*Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld LLP*,
 201 B.R. 635 (S.D.N.Y. 1996)......................................................................................27

### STATUTES

28 U.S.C. § 157..............................................................................................................3, 23

28 U.S.C. §§ 1334...........................................................................................................1, 23

28 U.S.C. § 1446.............................................................................................................1, 7

28 U.S.C. § 1447.................................................................................................................1

28 U.S.C. § 1452.................................................................................................................1

42 U.S.C. § 1983...........................................................................................................12, 19

### OTHER AUTHORITIES

Fed. R. Bankr. P. 9033(b) .............................................................................................1, 2

Pursuant to Rule 9033(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") Arch Real Estate Holdings LLC ("AREH" or the "Movant"), by and through its undersigned counsel, submits this limited objection (the "Limited Objection") to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law (the "Proposed Findings") dated May 14, 2026 [Adv. Pro. ECF No. 28] upon the Movant's and co-movant Jared Chassen's Motion pursuant to 28 U.S.C. §§ 1334, 1446, 1447 and 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure dated April 1, 2026 [Adv. Pro. ECF Nos. 7, 9, and 13] (the "Motion") to remand the above-referenced proceeding styled *Great American Insurance Co. v. Arch Real Estate Holdings LLC et al.,* Index No. 653208/2024 (the "State Court Action" or the "Interpleader Action"), removed by Mr. Simpson to the Bankruptcy Court pursuant to the Notice of Removal, ECF No. 1 (March 3, 2025) ("Notice of Removal"). In support of its Limited Objection, the Movant respectfully states as follows:

## PRELIMINARY STATEMENT

1. Although pleased that the Bankruptcy Court would grant AREH's motion, out of an abundance of caution, AREH challenges a specific fact finding in a protective manner in order that the District Court does not rely on that finding in the context of determining any other party's objection.

2. The Proposed Findings would grant the Motion and remand the State Court Action by correctly concluding as a matter of law that mandatory abstention is warranted.[1] The State Court Action consists of two separate actions that had been consolidated to a single index number by the Commercial Division. The original action is a breach of contract lawsuit brought by AREH against Great American Insurance Company ("GAIC") alleging improper disposition of over $800,000 in

---

[1] *See* Hr'g Tr. 57:9-15, Apr. 30, 2026, Adv. Pro. ECF No. 27.

13280114-6

proceeds of an officer and director policy purchased and owned by AREH (the "Policy").[2] The original action was subsequently consolidated into the later filed State Court Action, which was brought by GAIC as an interpleader action against the above captioned debtor and debtor in possession Jeffrey Simpson ("Mr. Simpson" or the "Debtor"), JJ Arch LLC ("JJ Arch") (which, for the purposes of the Motion, is an non-Debtor entity operating under Mr. Simpson's control), and five other non-Debtor defendants, including AREH and co-Movant Jared Chassen. GAIC's interpleader complaint alleges competing claims to coverage under the Policy, which contemplates GAIC's deposit of over $2.1 million into the Commercial Division.

3.      The Proposed Findings were made over the opposition of Mr. Simpson. Although the result is correct, the Proposed Findings were made notwithstanding an erroneous fact finding— that removal was not an act of forum shopping—that, in a vacuum, could weigh in favor of permissive abstention. Permissive abstention is a ground of Movant's alternative relief that the Bankruptcy Court did not reach. While the erroneous finding of lack of forum shopping was not essential to the Bankruptcy Court's mandatory abstention finding, should the District Court review permissive abstention or direct the Bankruptcy Court to review permissive abstention, whether Mr. Simpson engaged in forum shopping will be a relevant factor to such determination.

4.      As Bankruptcy Rule 9033(b) provides the same objection deadline for all parties, Movant cannot know whether Mr. Simpson or any other party will object to any of the Proposed Findings until the day Movant's objections are due. For this reason, Movant files this Limited Objection out of an abundance of caution in order to preserve its objection to the specific incorrect fact finding to the extent other parties concurrently seek District Court review of the Proposed

---

[2] Asset Management Liability Solution Policy No. PEPE246619 with a policy period of April 18, 2023, to April 18, 2024.

13280114-6

Findings. If no other party timely objects to the Proposed Findings, Movant intends to withdraw this Limited Objection and let the Proposed Findings stand.

## LIMITED SPECIFIC OBJECTION

5. Movant's Limited Objection is that the Bankruptcy Court erred in finding that Mr. Simpson's removal of this adversary proceeding was not an improper forum shopping exercise. The record demonstrates to the contrary and the District Court should review this finding de novo.

## JURISDICTION

6. The District Court has jurisdiction by virtue of 28 U.S.C. § 157(c)(1), which provides that

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after ***reviewing de novo those matters to which any party has timely and specifically objected***.

28 U.S.C. § 157(c)(1)

## PROCEDURAL BACKGROUND

**A. AREH Sues Great American for Funding Mr. Simpson's Illegal JJ Arch Bankruptcy Filing**

7. On June 7, 2024, AREH brought suit against GAIC in the case captioned, *Arch Real Estate Holdings, LLC v. Great American Insurance*, Index No. 652914/2024 (Sup Ct. N.Y. Co.) (the "AREH Action"), alleging breach of contract arising from GAIC's voluntary payment of JJ Arch's attorneys' fees in violation of the terms of the Policy AREH Action Complaint NYSCEF No 2. A copy of the Policy is found at Adv. Pro. ECF No. 1-2.[3]  AREH also sought a declaration that it was entitled to coverage under the Policy for several litigations that it was defending against.

---

[3] Cites to Adv. Pro. refer to the Bankruptcy Court's adversary proceeding docket of this matter.

13280114-6

AREH Action Complaint <u>NYSCEF No 2</u>. AREH seeks a jury trial as part of the AREH Action Complaint. *Id.*

8. Specifically, AREH alleged that GAIC's voluntary payment of legal fees for JJ Arch's chapter 11 bankruptcy filing—despite having previously determined that JJ Arch was not an insured under the Policy—was improperly eroding or reducing the policy limits and causing AREH damages.

9. AREH sought damages caused by GAIC's breach of the terms of the Policy in funding litigation adverse to AREH's interests and harming AREH by impairing its ability to perform important, time-sensitive business transactions and failing to provide coverage for several litigations that AREH was defending against. *See* AREH Action Complaint, <u>NYSCEF No 2</u>. AREH subsequently amended its complaint by way of counterclaims as part of the later consolidation with the Interpleader. <u>NYSCEF Nos. 240</u>, <u>309</u>.[4]

10. AREH also sought a declaration that: "(a) JJ Arch is not an insured (which Great American has already conceded); (b) Great American's decision to pay JJ Arch's costs in the Bankruptcy Case and any payment of such costs constitutes a voluntary payment; and (c) Great American's payment of JJ Arch's costs in the Bankruptcy Case does not erode the Policy's available limits for AREH and other insureds to the extent of such payments." *Id.* at 22-23.

**B.     The State Court Action and Its Consolidation with the GAIC Action**

11. On June 26, 2024, GAIC filed its Interpleader Complaint instead of answering or otherwise moving in response to AREH's lawsuit. GAIC sought to deposit the amounts remaining under the Policy limits ($2,105,999.29 after accounting for previous advances) with the New York

---

[4] Unless otherwise denoted, cites to NYSCEF will be to the Commercial Division's docket in the State Court Action.

13280114-6

City Department of Finance. and named as defendants AREH, Mr. Simpson, Mr. Chassen, Wiggin and Dana LLP, Griffin LLP, and Offit Kurman PA as parties with competing interests in such Policy.

12. The Interpleader Complaint alleged that GAIC properly advanced $894,000.71 in Policy proceeds for purported "Costs of Defense." Interpleader Complaint [Adv. Pro. ECF. 1-1] ¶¶ 33-35. It further alleges that the entirety of this amount was advanced to or on behalf of Mr. Simpson. *Id.* In so doing, GAIC made clear that it has favored Mr. Simpson's claims over other insureds, and that it had refused to make any payments to Mr. Chassen at Mr. Simpson's request.

13. On November 29, 2024, the Commercial Division granted JJ Arch LLC's motion to intervene in the Interpleader Action. NYSCEF No. 135. AREH filed a counterclaim on August 30, 2024, seeking declaratory judgment that the policy covers AREH with respect to a separate litigation. NYSCEF No. 69.

14. On December 9, 2025, the Commercial Division ordered the AREH Action consolidated with the Interpleader Action under the Interpleader Action caption. AREH amended its counterclaim to reflect AREH's claims for coverage under the policy with respect to the case captioned, *Jeffrey Simpson, individually and derivatively, as managing member of JJ Arch LLC, suing derivatively as managing member of Arch Real Estate Holdings LLC and JJ Arch LLC, v. Jared Chassen, et al.*, Index No. 158055/2023, (the "Corporate Control Action") (including related proceedings), and certain other related litigation.

15. AREH also sought a declaration that GAIC's funding of JJ Arch's bankruptcy case was improper, and that any payments made to fund JJ Arch's bankruptcy case constituted a voluntary payment by GAIC that did not erode the policy limits and which should be restored to

13280114-6

the available limits under the Policy. Mr. Chassen also asserted independent counterclaims against GAIC. NYSCEF No. 104.

**C.** **Prior to His Personal Bankruptcy Filing, Mr. Simpson Twice Improperly Caused the Removals of the State Court Action, Effectively Delaying Settlement**

16.     Prior to the consolidation, the Interpleader Action had been removed at Mr. Simpson's direction and then subsequently remanded twice before, which had the net effect of slowing down what should have otherwise been a summary process. As of Mr. Simpson's chapter 11 bankruptcy filing on February 19, 2026 (the "Petition Date"), a so-ordered summary process was set to begin in earnest with a March 26, 2026 return date set to consider competing claims and briefing due on February 26, 2026. The schedule was then stayed automatically once again as of the Petition Date and as a consequence of Mr. Simpson's chapter 11 case.

17.     The Debtor concedes that the Interpleader Action has been previously twice removed.  *See* Debtor's Notice of Removal ("Removal Notice") Adv. Pro. ECF 1 ¶ 9. The prior removals were each caused by the Debtor. First, JJ Arch, operating under Mr. Simpson's direction, removed the Interpleader Action to JJ Arch's then pending bankruptcy case on September 19, 2024. Although JJ Arch was not a party to the Interpleader Action at the time (it later intervened), it argued in its Notice of Removal that JJ Arch "is the active party and is the real party in interest." *Great American Insurance Co. v. Arch Real Estate Holdings LLC et. al.* No. 24-04026 (Bankr. S.D.N.Y. ECF No 1, ¶ 11. The Interpleader Action was remanded on October 30, 2024, in connection with Bankruptcy Judge Mastando's October 11, 2024 order dismissing the JJ Arch bankruptcy case for cause based upon a substantial or continuing loss or diminution of the estate, Mr. Simpson's gross mismanagement, and Mr. Simpson's bad faith, including forum shopping from Justice Cohen of the Commercial Division. *In re JJ Arch LLC*, 663 BR 258 (Bankr. S.D.N.Y. 2024).

13280114-6

18.  Second, on March 20, 2025, following the JJ Arch dismissal, Mr. Simpson removed the case himself to the District Court. 25-cv-02375 (S.D.N.Y.).[5] GAIC objected, arguing that the removal was improper because it was (1) untimely pursuant to 28 U.S.C. § 1446(b)(1); (2) not all defendants consented as required by 28 U.S.C. § 1446(b)(2)(A); and (3) lack of federal subject matter jurisdiction *Id*. ECF No. 9. Defendants Chassen and AREH joined. *Id*. ECF No. 10. On July 1, 2025, District Judge Vyskocil entered an order remanding the State Court Action on the second ground—not all defendants consented and AREH actively opposed—without reaching any other ground. *Id*. at ECF No. 32.

19.  This second removal came on the heels of a hearing where Justice Cohen orally ruled on a path forward that would grant the interpleader and consolidate the two insurance cases. NYSCEF No. 288. However, the removal occurred prior to entry of any order memorializing Justice Cohen's ruling and the case was not restored to the Commercial Division's docket until July 16, 2025. NYSCEF No. 285.

**D.**  **After Causing Delay Through Removal, Court Orders Expedited Summary Proceeding Over Mr. Simpson's Objection Designed to Direct Funds to Qualifying Parties Ahead of a Summer 2026 Trial in the Corporate Control Action**

20.  On November 25, 2025, the State Court conducted a conference in the AREH Action. The Court put on the record that the conference had been in error and that the Court had intended to schedule a conference in the Interpleader Action. NYSCEF No. 308. Justice Cohen stated that he would soon reschedule a conference for the Interpleader Action, which was subsequently held on December 1, 2025. Justice Cohen further stated at the November conference:

---

[5] At the time of the March 2025 removal, Mr. Simpson concurrently removed two other actions pending before Justice Cohen (Corporate Control Action NYSCEF Nos. 1380 & Chassen v. Simpson (654928/2024), NYSCEF No. 101). At that time, the Commercial Division indicated it was going to appoint a receiver over Mr. Simpson's objection. Corporate Control Action NYSCEF No. 1352.

13280114-6

There hasn't been any real discussion apart from coming to court about getting this insurance dispute resolved because the obvious point I wanted to make today was I don't know if I would call it a wasting asset, but this insurance -- these insurance proceeds are intended to be used for these cases, and if the insurance dispute doesn't get resolved soon, it becomes sort of not very sensible, and I have made that point before, but the removal and remand process has thrown everything off from what it should have been. But you know, we've now had the case back here I guess since July. And so my goal is to light a fire. I'll light a fire under you two, but my real point is to communicate this to the others, and I guess what I'll do is set another calendar as soon as I can with everyone which is the idea for today.

***

I certainly am fine with you communicating that we had this hearing and that we're going to have it the right way shortly and that the Court is very anxious to get to a final resolution on the insurance proceeds.

Hr'g Tr. 5:2-16; 6:12-15, Nov. 25, 2025. NYSCEF No. 308.

21.     Shortly after the subsequent December 1 conference, parties submitted a joint proposal for the Court to conduct a summary proceeding that called for opening briefs due January 15 with a February 12 return date. Mr. Simpson and JJ Arch (acting at Mr. Simpson's direction) were the only two holdouts:

We have conferred with counsel for the Interpleader Defendants; and Arch Real Estate Holdings, LLC, Jared Chassen, Wiggin & Dana LLP, Griffin LLP and Offit Kurman PA do not oppose the proposed Order and are amenable to the process to address the claims to the Stake laid out therein. Interpleader Defendant Jeffrey Simpson, personally and derivatively on behalf of JJ Arch LLC, does not join and otherwise opposes the request to enter the proposed Order; and based upon discussions with counsel, we understand that Mr. Simpson intends to submit a separate filing in short order stating his/JJ Arch's positions directly.

December 12, 2025, Letter on behalf of GAIC, attaching proposed order. NYSCEF No. 311.

22.     On December 12, 2025, the Commercial Division set a Case Management Order scheduling trial in the Corporate Control Action for July 27, 2026. Corporate Control Action NYSCEF No. 2167

23.     January 22, 2026, the Commercial Division entered the proposed order (the "Summary Order") as slightly modified, providing for a summary adjudication process concerning

8

the stake of $2,105,999.29 (the "Stake") with opening briefs due February 26, 2026, and a March 26, 2026 return date. NYSCEF No. 360 (also available at Adv. Pro. ECF No. 1-55.). The order directed GAIC to deposit the Stake with the New York City Department of Finance.

24. The Debtor filed his bankruptcy case one week prior to the submission deadline. Claiming interests in the Stake, AREH and Mr. Chassen each intended to file submissions in accordance with the Summary Order.

25. The Summary Order recognized that "some Interpleader Defendants claim a right to amounts beyond the Stake, and contend that more remains available under the Policy than the Stake and/or assert independent liability against GAIC (the "Independent Claims")."

26. Importantly, the Commercial Division ordered that:

> the Independent Claims, and all other claims for independent liability asserted against GAIC relating to the Policy, and all claims for amounts beyond the Stake asserted against GAIC relating to the Policy shall be severed and adjudicated in this Interpleader Action following resolution of the distribution of the Stake, on a schedule to be set by the Court that will include appropriate time for discovery;

Summary Order at 2, 4.

27. Accordingly, the Summary Order contemplates AREH's additional claims against GAIC from the AREH Action that were consolidated with the Interpleader Action will remain viable as part of the Interpleader Action after resolution of the entitlements to the Stake and will be adjudicated on a later schedule set by the Commercial Division.

**E.** **Facing Criminal Contempt, Mr. Simpson Goes On Record in the Interpleader Action and Related Cases that He Will Boycott All Proceedings Before Justice Cohen**

28. In the months leading to his personal bankruptcy filing, Mr. Simpson wrote a series of letters and emails declaring he had no intention of allowing Justice Cohen to continue to preside over the Interpleader Action or the Corporate Control Action. Many of these communications

9

came in the wake of Justice Cohen's late November scheduling of a December 1, 2025, conference in the Interpleader Action, for which the "main focus is on directing that this matter proceed efficiently and expeditiously and in a consolidated manner now that the cases are back in this Court." November 26, 2025, Letter from Hon. Joel N. Cohen, NYSCEF No. 296 at 2.  See for example,

> So you lost your chance at the table here, unless an unless a competent jurisdiction tells me otherwise (no, that's not you with what you've done). Again this is my show as a business owner and operator , not yours to attack by 14th amendment right to private business"
>
> So no again. Focus on all the parties but I'm the only one relevant here because this is my show and you somehow think you got to take control of my businesses . I cannot wait for the day for the federal courts or criminal justice folks to look at everything that you did and put you in the hot seat because you actually did bad things, very bad things, those that no Court in any world would do, unlike me - the other guy who stands up for justice and in a normal world has people like you for breakfast and they never sued me because I never could but because of immunity you get to play this game.

Nov. 26, 2025, Email to Justice Cohen NYSCEF No. 296.

> And anyone that reads this will want to understand why you have the right to touch my insurance and no sir, go ahead do what you want to do on Monday [the date of the scheduled conference in the State Court Action] but I'll have nothing to do with it or anything in front of you. Any negative consequence will simply just be added to the list of damages by an incompetent Court.

Nov. 26, 2025, Email NYSCEF No. 297.

> The insurance issue is non issue because Scott Schecter, made demands similar to mine of Schwartz, and he avoided answering the questions. He also told me, on behalf of his client, that the moment this relationship, via the JDA was released, they would resume coverage for my for legal defense. He chose not to. Why would they do that? They have a judge on the take, who needs the circumstance for me to get obliterated so that he could save his own rear end. There is no other reason why last October he gave Mr. Schecter the choice, of behalf his client, to not resume funding of my defense. That's another law being breached by this court. The NYS law is explicit on insurance but why would that matter here? No rules matter here.

***

13280114-6

Making an argument in front of incompetent judicial body that is either corrupt or allows corruption in front of its eyes, that suffices for me to speak up and stay far away. Instead my energy will be spent with prosecutors and law-enforcement.

Nov. 27, 2025, Email NYSCEF No. 299.

To the extent you (the court) proceeds forward with a Conference which with you never means a conference it always means that you do bad things to the one that you prejudice the most, me regardless how it all surrounds me how I own it all I have control over all of it how everything was for my benefit because it was my business, you still do whatever you want because you clearly just don't have that in your life so you need to jump in and try to control other people's destinies because you use power in ways that you were not granted to do, and it is unlawful. If Mr. Rajotte decides to appear today, he's doing that on his own but not with my support because no one will convince me to appear in front of a corrupt court. Unless I'm forced to by someone under the law (with competent jurisdiction) I will not present myself in front of a disastrous abomination of any type of justice system that occurs in the courtroom of Judge Joel Cohen.

Any ruling, any decisions will be challenged, so will your proposed reappointment for June 2026.

Dec.1, 2025, Email: NYSCEF No. 300.

And no I've told Mr Rajotte to stay far away from you and my words are meaningful to me and I am not interested in appearing in front of you or going anywhere near you. When I talked about a restraining order against you I meant it. You have a vendetta to ruin my life, and it is horrific. So I'm not pleading to you I'm talking to you to tell you that you are not going to push Mr. Rajotte into a corner. You've caused enough damage and destruction.

Dec. 24, 2025, Email: NYSCEF No. 315.

Again, my position hasn't changed and it's very clear below and I don't need to repeat myself. When someone other than you decides about jurisdiction and what is right from wrong we will have further dialogue in NYS court.

If you consider any further harmful action against me and anything related to me further, it will be reported to all the authorities as I have for every other action that you've done to date. Your immunity only lasts so far.

You are on notice and I expect this to be our last communication other than the one where you are on the stand and you are on trial for what you've done here.

Dec. 24, 2025, Email: NYSCEF No. 316.

13280114-6

29.     During this time period, Mr. Simpson was facing a fully submitted civil and criminal contempt motion for his long-standing defiance of orders concerning the appointment and direction of the receiver following a multi-day evidentiary hearing in the Corporate Control Action.[6] While the motion was pending, Mr. Simpson engaged in repeated acts of defiance of other state court orders that led to multiple sanctions orders. Corporate Control Action NYSCEF No. 1847, September 24, 2025 Order; NYSCEF No. 1851, September 29, 2025 Order; NYSCEF No. 1998, October 8, 2025 Order; NYSCEF No. 2157, December 5, 2025 Order.[7] Mr. Simpson also refused to appear at the contempt hearing. NYSCEF Nos. 2126-2127, October 2025 Emails from Simpson to Court; NYSCEF No. 2052, October 10, 2025, Hr'g. Tr.

30.     Mr. Simpson was also facing a fully submitted default judgment motion and motion to strike his pleadings for his open boycott of the state court proceedings, which included his longstanding refusal to participate in discovery. Corporate Control Action NYSCEF Nos. 2230-2255, 2322-2327, 2334-2343; NYSCEF Nos. 2258-2264.

31.     Prior to his February 19, 2026 personal chapter 11 bankruptcy case, Mr. Simpson filed three frivolous lawsuits under 42 U.S.C. § 1983 against Justice Cohen in federal district court, as well as a federal case against the temporary receiver appointed by Justice Cohen in the Corporate

---

[6] *See* Corporate Control Action NYSCEF Nos. 1537-1558, 1567-1569, 1586, 1591-1597, 1600, 1603-1606, 1608-1609, 1611-1678, 1683, 1688-1693, 1705-1760, 1811-1815, 1817-1819, 1842-1844, 1860-1897, 1918-1921, 1984-1987, 2000, 2005, 2050-2052, 2056, 2072, 2073, 2075.

[7] Many of Mr. Simpson's emails have been subsequently filed on the NYSCEF docket at Corporate Control Action NYSCEF Nos. 1860-1897, 1909-1911, 2126-2134, 2150, 2152-2153, 2179-2185. Mr. Simpson himself posted many such emails to NYSCEF and filed a letter to the state court where he said that in his view "we do not have a Court or a Judge on this Case …" Corporate Control Action NYSCEF Nos. 1929-1983. Mr. Simpson, unsurprisingly, has never paid any of the fines in those orders despite being ordered to do so. The last order warned Mr. Simpson that further defiance could lead to the striking of his pleadings. Corporate Control Action NYSCEF No. 2157. Demonstrating that he was undeterred even by such warnings or such consequences, after the fourth sanctions order, Mr. Simpson continued to send such emails and continued to defy the orders. *See e.g.*, Corporate Control Action NYSCEF Nos. 2239-2248.

13280114-6

Control Action, and various counsel, all in a failed effort to stop the state court proceedings. *Simpson v. New York State Unified Court System, et. al.*, Civ. No. 1:26-cv-00110 (LTS) (S.D.N.Y.); *Simpson v. Cohen et. al.*, Civ No. 1:26-cv-00193 (LTS) (S.D.N.Y.); *Simpson v. Cohen et. al.*, Civ. No. 1:26-cv-00130 (LTS) (S.D.N.Y.); *Simpson v. Wilson et. al.*, Civ. No. 2:26-cv-00125 (SJB)(ARL) (E.D.N.Y.).

**F.**     **Mr. Simpson Has Been Found By Multiple Courts in Related Cases to Have Engaged in Forum Shopping Behavior**

32.      In April 2024, Mr. Simpson removed the Corporate Control Action to federal bankruptcy court after he filed a Chapter 11 bankruptcy petition on behalf of JJ Arch LLC during March of that same year as its purported "sole member" and without Mr. Chassen's consent. Corporate Control Action NYSCEF Nos. 629, 630, 631, 632, Notice of Bankruptcy and Correspondence; NYSCEF Nos. 635-636, Notice of Removal. The Bankruptcy Court found that Mr. Simpson's removal was an act of forum shopping. *See In re JJ Arch LLC*, Nos. 24-10381 (JPM), 24-1335 (JPM), 2024 WL 2933427 at *15-20 (Bankr. S.D.N.Y. June 10, 2024); *id.* at *19, n 24 (citing to and noting that "[m]any of Mr. Simpson's emails indicate a certain displeasure for Mr. Chassen … and—perhaps most notably—Justice Cohen's Interim Orders."). Judge Mastando stated that "[i]t is well-established that state-court losers complaining of injuries caused by state-court judgments' cannot use the federal judiciary as an appellate court." *Id.* at 20 (*citing Hunter v. McMahon,* 75 F.4th 62, 65 (2d Cir. 2023) (discussing the *Rooker-Feldman* doctrine). Judge Mastando further stated:

> *Rooker-Feldman*, of course, only applies where "the losing party in state court filed suit in federal court *after the state proceedings ended.*" *Hunter v. McMahon*, 75 F.4th 62, 65 (2d Cir. 2023) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)) (emphasis in original). The Court nonetheless finds that, in this case, the principle underlying *Rooker-Feldman* and its progeny support abstention under Section 1334(c)(1). *See* 28 § 1334(c)(1) ("[N]othing in this section prevents a district court in the interest of justice, or in the *interest of comity* with State courts or *respect for State law*, from abstaining from hearing a particular

proceeding arising under title 11 or arising in or related to a case under title 11.") (emphasis added); *see also In re AOG Ent., Inc.,* 569 B.R. 563, 573 (Bankr. S.D.N.Y. 2017) ("Federal courts abstain out of deference to the paramount interests of another sovereign, and the concern is with principles of comity and federalism.") (citing *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 723 (1996)).

*Id.*

33.     On October 11, 2024, the Bankruptcy Court dismissed the JJ Arch bankruptcy case entirely because it found that Mr. Simpson had filed it in subjective and objective bad faith and then grossly mismanaged JJ Arch during the bankruptcy proceeding. *In re JJ Arch LLC*, 663 B.R. 258 (Bankr. S.D.N.Y 2024).

34.     On June 27, 2025, the United States District Court sanctioned Mr. Simpson for filing a frivolous removal to federal court and enjoined him from further removals without the District Court's prior permission. *Simpson v. Chassen*, 25-CV-4004 (JMF), 2025 WL 1784931, at *2 (S.D.N.Y. June 27, 2025). In issuing an injunction, the District Court found that "Simpson's vexatious history of litigation is evidenced by his three baseless attempts to remove this action to federal court," and "[c]oupled with his vexatious conduct in state court" led the court "to believe that Simpson used the removals as a vehicle to defy the [state court's] orders." *Id.* (internal citations and quotations omitted).

35.     Finally, in yet another wrongfully removed case involving Mr. Simpson and Mr. Chassen, *Chassen v. Simpson*, 25-cv-02373 (S.D.N.Y.) (JHR) (HJR), Magistrate Judge Henry J. Ricardo entered a report and recommendation, subsequently adopted by District Judge Jennifer H. Rearden, found that

> While it is a close call, the Court should not impose sanctions in this case due to Simpson's pro se status. He is warned, however, that should he remove the State Court Action a second time, he should expect to be sanctioned. *See Weiss v. Yotta Techs., Inc.*, No. 22-cv-8569 (JPO), 2024 U.S. Dist. LEXIS 174052 at *4–5 (S.D.N.Y. Sept. 25, 2024).

 (May 28, 2025, ECF No. 29 at 12, adopted August 25, 2025, ECF No. 32).

14

36.     Mr. Simpson is on record for asserting that "I will not present myself in front of a disastrous abomination of any type of justice system that occurs in the courtroom of Judge Joel Cohen." In fact, in late 2025, Mr. Simpson engaged in a campaign of defiance, going on record again and again to make his position crystal clear that he would no longer appear before the Commercial Division in the Interpleader Action or otherwise. This conduct comes on the heels of Mr. Simpson having removed the Interpleader Action twice before: first in connection with the JJ Arch bankruptcy case, which was subsequently remanded when the JJ Arch case was dismissed, and later by Mr. Simpson, which the District Court remanded for having been improper. The most recent Notice of Removal also comes in the wake of two previous decisions, one by Bankruptcy Judge Mastando, and the other District Judge Furman, each finding that Mr. Simpson engaged in forum shopping to escape the very same judge presiding over the Interpleader Action, with Judge Furman finding that Mr. Simpson acted vexatiously in doing so.

**G.     The Underlying Arguments Concerning Forum Shopping**

1) The Motion

37.     The Motion sought mandatory abstention in the first instance. Permissive abstention was one of the alternative requests for relief. Although forum shopping is generally not considered a factor in considering mandatory abstention (although the Bankruptcy Court did consider it in the context of whether reference withdrawal would be appropriate), it is not disputed that the presence of forum shopping is one of 12 factors courts consider in determining whether permissive abstention of an adversary proceeding pending in the Bankruptcy Court is warranted. Motion ¶60.[8]

---

[8] Cites herein to the Motion refer to the Memorandum of Law filed at Adv. Pro. ECF. No. 7.

13280114-6

38. After sharing the same procedural history as discussed above, the Motion argued as follows at Paragraphs 66-73:

39. Factor 10 - Forum Shopping independently weighs heavily in favor of remand. As set forth above, the record is replete with Mr. Simpson boycotting proceeding before Justice Cohen, including with respect to the Interpleader Action. He sent email after email after email to Justice Cohen stating that he will not proceed. Mr. Simpson also has already been found by two courts to have engaged in forum shopping away from Justice Cohen, and was sanctioned for vexatious conduct by one of them, while another court found sanctions "a close call" on account of removal of a different case before Judge Cohen. Mr. Simpson also brought lawsuits against Justice Cohen and was facing a criminal contempt motion before Justice Cohen when he filed the bankruptcy case. The evidence of prior removals, communications demonstrating Mr. Simpson's unwillingness to go-forward, and lack of cooperation in agreeing to a summary order sufficiently demonstrates Mr. Simpson's forum shopping intent. *See e.g.* NYSCEF Nos. 296, 297, 299, 300, 315, 316.

40. When [Bankruptcy] Judge Mastando found this provision had been met with the Corporate Control Action, it was on account of Simpson evading Justice Cohen for having temporarily lost control of AREH. *See JJ Arch* 2024 WL 2933427 (recommending remand because of, inter alia, Simpson's forum shopping and reciting record and evidence of forum shopping). When the Corporate Control Action was finally remanded, instead of cooperating, Mr. Simpson proceeded on a bridge burning path with Justice Cohen: he frivolously removed the Corporate Control Action twice more in efforts to disrupt the appointment of a receiver and then to interfere with the duties of a receiver. *See Simpson v Chassen*, 25-CV-4004 (JMF), 2025 WL 1784931, at *2 (S.D.N.Y. June 27, 2025) ("Simpson's vexatious history of litigation is evidenced by his three

16

13280114-6

baseless attempts to remove this action to federal court," which "coupled with his vexatious conduct in state court — have caused needless expense to the other parties, burdened the federal and state courts involved, and leads the Court to believe that Simpson "used the removal as a vehicle to defy the [state court's] orders."); *See also* Corporate Control Action, NYSCEF No. 2072, Joint Post-Trial Memo (detailing and citing to evidentiary record of Mr. Simpson's defiance of receiver orders).

41. During the pendency of a civil and criminal contempt motion against him for violating the state court's receiver orders, Mr. Simpson was sanctioned four times by the state court for repeatedly violating the Court's rules barring substantive or *ex parte* emails. Corporate Control Action, NYSCEF No. 1847, September 24, 2025 Order (sanctioning Mr. Simpson $500 for repeatedly violating orders barring email communications even after repeated warnings, and noting that one email from Mr. Simpson to the state court said, "if you want to assess me a fine, please do."); Corporate Control Action, NYSCEF No. 1851, September 29, 2025 Order (sanctioning Mr. Simpson $1000 after Mr. Simpson sent numerous emails right after the first sanctions orders, including an email that stated "So this time I'm going to step on the rules (the ones that apply only to the thieves and to the judge (when he wants to ) who has a serious memory and corruption problem) please issue me a fine and I'll appeal it, whatever it takes to get me far away from you because you have no respect for me and my rights, zero."); Corporate Control Action, NYSCEF No. 1998, October 8, 2025 Order (sanctioning Mr. Simpson $1500 after Mr. Simpson continued to violate the Court's orders); Corporate Control Action, NYSCEF No. 2157, December 5, 2025 Order (sanctioning Mr. Simpson $2000 and warning that further violations could lead to his pleading being stricken, after Mr. Simpson "sent more than a dozen emails" in which he became "increasingly aggressive and abusive, among other things, repeatedly and

17

baselessly accusing the Court of 'being on the take' and daring the Court 'to give [him] sanctions.'"). After being warned that he faced having his pleadings stricken if he continued, Mr. Simpson continued to violate these orders. Corporate Control Action, NYSCEF Nos. 2239, 2248, 2280-2288, 2346, 2349.

42.     As set forth on pages 9-11, *supra*, Mr. Simpson sent a barrage of emails to Justice Cohen making abundantly clear his boycott of the state court proceedings, including the Interpleader Action. Mr. Simpson also sent barrage of baseless accusatory emails to Court administration, DOJ, and Manhattan DA frivolously accusing Justice Cohen of corruption, and telling Justice Cohen that he would be boycotting proceedings in front of him. *See e.g.*, Corporate Control Action, NYSCEF Nos. 2126-2127 (informing Court that "I am not participating in anything regarding a court hearing with you as it's adjudicator, not happening."); Corporate Control Action, NYSCEF No. 2134 ("Unless I'm forced to by someone under the law (with competent jurisdiction) I will not present myself in front of a disastrous abomination of any type of justice system that occurs in the courtroom of Judge Joel Cohen."); Corporate Control Action, NYSCEF No. 2150 ("I'm going to copy the honorable Joel Cohen. His rules don't matter anyway he makes them up as he goes and he breaks the CPLR rules on a daily basis."); Corporate Control Action, NYSCEF No. 2152 ("[M]y Fed removal was money good so no you had no authority and any authority, you have when you broke the law. You break the law every day in this courtroom on this case I'm sure you do it elsewhere too."); Corporate Control Action, NYSCEF No. 2179 ("Go ahead with your sanctions there will be a lawsuit that will bring this court to the federal court by Monday for its horrific acts of extreme prejudice, bias, discrimination, negligence of reporting criminal acts and much more to be followed. Take up your sanctions there. as I said many moons ago I will not present myself in front of a corrupt / . judge court ever again."); *See also* Corporate

13280114-6

Control Action, NYSCEF Nos. 2239-2248; NYSCEF Nos. 1860-1897, 1909-1911, 2126-2134, 2150, 2152-2153, 2179-2185; NYSCEF Nos. 1923-1983.

43. As set forth above, in January 2026, Mr. Simpson also filed a number of frivolous Title 1983 actions against Justice Cohen and counsel for numerous parties. The actions in this district were dismissed after Mr. Simpson failed to pay the filing fee.

44. On January 14, 2026, the state court scheduled a status conference in the Corporate Control Action for January 21, 2026 via Court Notice. Corporate Control Action, NYSCEF No. 2229, Court Notice. On January 16, 2026, in response to the Court Notice, Mr. Simpson wrote the state court the following:

> Joel Cohen,
>
> What don't you understand? You are corrupt and I filed an action against you and the participants here. Inviting the folks to take action against me is further deteriorating from the damages that you judge Joel Cohen have created. No independent outside party disagrees and I demand police intervention now.
>
> I demand justice and I demand it now. You don't get the right to speak up any further about anything here with what you've done to cause destruction. And Gold, you will lose your license for practicing soon just like the rest.

Corporate Control Action, NYSCEF No. 2285.

45. A few days later, Mr. Simpson wrote the state court: "There will NOT be a conference this week (or ever ), on my case (in front of Cohen), that I called for until justice is served and we get clarity from people who are not biased and prejudicial. If you, Cohen, proceed you're doing at your own risk." Corporate Control Action, NYSCEF No. 2281. On January 17, 2026, Mr. Simpson wrote the state court "courtesy copy attached here of my letter to the bankruptcy court [Judge Beckerman] this morning reacting to breach of "stay", as I mentioned previously. It was submitted through ECF. I understand that Joel Cohen here has given his views on this issue that are arbitrary and prejudicial, because he hates bankruptcy court and he hates

19

losing control of a case, especially when he's been wrong for over two years and if he loses control of the situation, it will be more than me exposing him." Corporate Control Action, NYSCEF No. 2287.

46.     The State Court held the status conference. On January 24, 2026, Mr. Simpson wrote Justice Cohen:

> Once again, SHAME ON YOU JUDGE JOEL COHEN, for what you have done and continue to do - all prejudicial, biased and with intentional harm to me, including your actions this week.
>
> If i must file for personal bankruptcy as a result to stop your absurdity, that i will do and your "unclean" hands will be investigated to the nth degree.
>
> I will once again go to all law enforcement agencies with your actions.  I can only imagine where your immunity starts and stops as it relates to federal bankruptcy code crimes.

ECF No. 22-A, Jan. 24, 2026 Email (emphasis added). On February 11, 2026, Mr. Simpson wrote to Judge Cohen, saying that "He is corrupt and he's not deciding a single thing in my case, the end." Corporate Control Action, NYSCEF No. 2346, Feb. 11, 2026 Email.

47.     The foregoing overwhelmingly demonstrates the Debtor's desire and intent to forum shop the Interpleader Action into a new forum away from the Commercial Division, which demonstration comes in the wake of previous federal findings of Mr. Simpson's forum shopping in other cases to escape precisely the same forum.

## H.     Mr. Simpson's Response

48.     None of the foregoing allegations of Mr. Simpson's behavior were disputed in opposition. Rather, the Opposition argued:

> Specifically regarding the Motion's argument regarding on factor (10), the alleged forum shopping, it should be observed that if there were a different trustee of the Debtor's estate, it could not be seriously contended that such trustee would be engaged in forum shopping. But because the Debtor filed for chapter 11, there is no different trustee. The Debtor is a debtor in possession. 11 U.S.C. § 1101(1). A debtor in possession has all of the rights, powers, functions, and duties of a trustee,

13280114-6

except for the right to compensation. Id. § 1107(a). If a separate trustee could remove the Insurance Interpleader Action to centralize litigation pertaining to the Debtor and the Debtor's estate before the bankruptcy court, then, it is respectfully submitted that there is no good reason to abstain from the Insurance Interpleader Action just because the name of the person with the rights, powers, functions, and duties of the trustee is Jeffrey Simpson.

Opp. at 20. In short, the Opposition's response is that Mr. Simpson, as a debtor in possession, has a powers of a bankruptcy trustee, and since a bankruptcy trustee with the power to remove would not have engaged in forum shopping, neither did Mr. Simpson.

2) Movant's Reply

49.     The Reply argued as follows at Paragraphs 10-14:

50.     Addressing permissive abstention, the Opposition devotes a single paragraph to discussing factors other than forum shopping followed by a single paragraph discussing forum shopping. Tellingly, the Opposition does not at all contest the Motion's thorough allegations concerning's Mr. Simpson's forum shopping motivation in removing the Interpleader Action. Nor can it, because the record is beyond question. Instead, the Opposition would have this Court write forum shopping—hence, Mr. Simpson's motive—out of the well-established permissive abstention analysis because "it should be observed that if there were a different trustee of the Debtor's estate, it could not be seriously contended that such trustee would be engaged in forum shopping" and that "there is no good reason to abstain from the Insurance Interpleader Action just because the name of the person with the rights, powers, functions, and duties of the trustee is Jeffrey Simpson."

51.     In short, Mr. Simpson would have this Court ignore the forum shopping factor completely because he is a debtor in possession with the powers of a trustee and, if a trustee could do it, so could he. This position would write factor 10 and Mr. Simpson's motive completely out of the established caselaw on forum shopping. The argument also begs the question: given the

21

posture of the Interpleader Action as of the petition date, can anyone reasonably believe a hypothetical trustee other than Mr. Simpson would have removed the case? It is highly doubtful.

52. Having Mr. Simpson's interests in mind, the Summary Order provided for a streamlined summary procedure concerning the Stake designed to distribute funds to stakeholders ahead of a July 2026 trial in the Corporate Control Action. Motion ¶¶17-19. Defendants seeking rights to the Stake, which included Mr. Simpson, Mr. Chassen, and AREH, had until February 26, 2026 to file their claims motions, and a return date was scheduled for March 26, 2026. The automatic stay of this chapter 11 case, filed on February 19, 2026, arguably prevented parties from proceeding and no defendant filed a claim motion subsequent to the petition date.

53. Had Mr. Simpson or a trustee immediately moved to lift the automatic stay following his chapter 11 filing to return to the Commercial Division, the Interpleader Action could have been back on track with only a slight modification to its schedule. Instead, with removal, Mr. Simpson created two new obstacles to moving forward. First, Mr. Simpson or any trustee had to have anticipated facing a remand motion before this action could proceed. Second, it is far from clear that the Federal Rules of Bankruptcy Procedure would allow for the sort of speed and streamlined process provided by the Summary Order concerning the Stake. A quick return to the Commercial Division is *the only mechanism* for the estate to achieve a quick recovery.

54. Unless a hypothetical trustee believed in Mr. Simpson's baseless accusations that Justice Cohen is a "corrupt judge" who is "on the take," (Motion ¶¶ 25, 68, 69, 71, 73) it stands to reason removal is an absurd proposition and a trustee would never have removed the Interpleader Action. The assertion that because a trustee can do it, Mr. Simpson can too, proves entirely self-serving, and says more about who Mr. Simpson is as a fiduciary than anything else.

22

## I. The Proposed Findings

55. The Bankruptcy Court conducted a hearing on April 30, 2026, where Movant reiterated its forum shopping arguments in the context of permissive abstention. Hr'g Tr. 18:6–25; 19:1-25; 20:1-20, Apr. 30, 2026, ECF No. 27. At the hearing, the Bankruptcy Court read its ruling into the record and, while it focused solely on mandatory abstention, one of several independent analyses in concluding mandatory abstention was warranted touched upon forum shopping.[9] The only issue in dispute concerning mandatory abstention, governed by 28 U.S.C. § 1334(c)(2) was whether the Bankruptcy Court's subject matter jurisdiction over the State Court Action was "core" or whether it "related to."[10]

56. Citing *Mt. McKinley Insurance Company v. Corning, Inc.,* 399 F.3d 436, 448, (2d Cir. 2005) and its progeny, the Court found that the State Court Action was not core because the Court has considered this, but has determined that, you know, prior to the bankruptcy proceeding, this would have been independent of the bankruptcy proceeding, and the case law doesn't seem to look at this as independent of the bankruptcy proceeding, meaning that it's essential to the process of the bankruptcy proceeding. The Bankruptcy Court further found:

---

[9] 28 U.S.C. § 1334(c)(2) is the controlling statute in determining whether mandatory abstention is warranted of this adversary proceeding, which provides that:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, ***related to a case under title 11 but not arising under title 11 or arising in a case under title 11***, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphasis added). "Arising under or arising in a case under title 11" is generally understood to be synonymous with term "core" as used under 28 U.S.C. § 157.

[10] Hr'g Tr. 14:1–16, Apr. 30, 2026, Adv. Pro. ECF No. 27.

13280114-6

The Court finds that, therefore, the claims are non-core, as asserted in this proceeding – for this proceedings purposes. And under *Stern v. Marshall*, the Court would not have the final authority to adjudicate certain of the claims, certainly not the claims that are the subject of -- that were the subject of the separate proceeding before they were joined.

The Court has considered that it could retain jurisdiction and then remand part of this by splitting it again, has thought about that. The Court has considered, you know, whether or not -- what to do when half of a pending action can't possibly be core and is related to, and the other half of the action doesn't seem to fit within the District Court's view of core. Even though had it been brought in a different process, it might have been considered, could possibly be considered to be core, so whether it makes sense for me to just waive a magic wand and turn this into something that's core.

Hr'g Tr. 54:5–22, Apr. 30, 2026, Adv. Pro. ECF No. 27.

57.     In considering whether to waive its magic wand, and after properly finding whether the claims were not core, the Court then applied a different test – the *so called Orion test* – that courts consider in whether to withdraw the reference. It was here, in the discussion of the *Orion* factors, that the Court considered whether there was forum shopping:

Prevention of forum shopping, that's a tough one too. Clearly, the record tells you that there was a lot of issues where Mr. Simpson tried to remove the proceeding to other courts. There are obviously issues about that. But I don't think that the reason that this was removed to our court is based on forum shopping necessarily here. It's based on the view that Mr. Ostrow articulated, which is not wrong, which is that there are aspects of this process that require our court to be involved; lifting the stay requires the court to be involved.

The fact that the party asserting it is definitely the Debtor, the debtor-in-possession means that it's not unreasonable that the Debtor would like to seek to have that issue heard before this Court. So the Court is not finding that this was removed for some basis of inappropriate forum shopping.

*Id. at* 56:5–20.

58.     That was the extent from forum shopping, but the Court did acknowledge that the process would be more streamlined in State Court:

With respect to this dispute, Mr. Koevary makes some good points as well about the process. I wouldn't be able to probably have as streamlined a process as

13280114-6

Justice Cohen has proposed in his process because that's just not what federal courts do. I mean, I'd have to have -- I think the process, meaning the expense, the matters of things that would have to be before me even I decided that this were for, would be more costly. So I don't see it as efficient in some ways because my process can't be as streamlined as his and then I have the whole issue of what to do with the whole second part of this.

*Id. at* 36:22–37:1-7.

## **ARGUMENT**

59.     The Bankruptcy Court erred in finding that no forum shopping occurred. The record set forth in the motion and repeated above establishes the record of Mr. Simpson's history of forum shopping a number of proceedings away from Justice Cohen which, *inter alia*, resulted District Court issuing sanctions that included an injunction against removals based upon a finding that "Simpson's vexatious history of litigation is evidenced by his three baseless attempts to remove this action to federal court," and "[c]oupled with his vexatious conduct in state court" led the court "to believe that Simpson used the removals as a vehicle to defy the [state court's] orders" (*Simpson v. Chassen*, 25-CV-4004 (JMF), 2025 WL 1784931, at *2 (S.D.N.Y. June 27, 2025)). The record further firmly establishes Mr. Simpson's intention to forum shop the State Court Action specifically. Though the record repeated above is voluminous, his intent is summed by this communication from Mr. Simpson to Justice Cohen:

> If Mr. Rajotte [Mr. Simpson's lawyer] decides to appear today, he's doing that on his own but not with my support because no one will convince me to appear in front of a corrupt court. Unless I'm forced to by someone under the law (with competent jurisdiction) I will not present myself in front of a disastrous abomination of any type of justice system that occurs in the courtroom of Judge Joel Cohen.

Dec. 1, 2025, Email: NYSCEF No. 300.  Three months later, Mr. Simpson removed the State Court Action for a third time.

60.     This extensive record is ***uncontested***. Moreover, the Bankruptcy Court agreed with Movant's argument that the federal courts could not address the interpleader component of the

State Court Action in a streamlined manner as the Commercial Division had ordered, and "the process, meaning the expense, the matters of things that would have to be before me even I decided that this were for, would be more costly. So I don't see it as efficient in some ways because my process can't be as streamlined as [Justice Cohen's]." Hr'g Tr. 37:2-6, Apr. 30, 2026, Adv. Pro. ECF No. 27.

61. Nonetheless, the Bankruptcy Court did not find forum shopping essentially because it was the **debtor** doing the forum shopping, i.e., "that the party asserting it is definitely the Debtor, the debtor-in-possession means that it's not unreasonable that the Debtor would like to seek to have that issue heard before this Court. So the Court is not finding that this was removed for some basis of inappropriate forum shopping." *Id.* at 56:15–20.

62. In short, the Bankruptcy Court found that because it was the Debtor and not some other party that shopped the forum, the forum shopping was not "inappropriate" and his preference was not "unreasonable." *Id.* However, debtors nearly always prefer to have all their cases decided by the Bankruptcy Court and courts in this district have rejected excusing debtors and estate representatives from forum shopping behavior.

63. For example, in *ResCap Liqudiating Trust v. Primary Capital Advisors, LLC (In re Residential Capital, LLC)*, 527 B.R. 865 (S.D.N.Y 2014), a liquidating trust formed as the debtor's successor pursuant to a chapter 11 plan brought an adversary proceeding in the Bankruptcy Court for the Southern District of New York against PCA, which was one of the debtor's lenders. PCA moved to withdraw the reference and have the case transferred to the District of Minnesota. The District Court granted the motion in full.

64. In Applying the *Orion Factors* in determining whether to withdraw the reference, the District Court, Swain, J. opined:

13280114-6

The prevention of forum shopping factor also strongly supports withdrawal of the reference and determination of the transfer issue at this time, given the clarity of the contractual venue provision. ResCap argues that this action should remain before Judge Glenn for reasons of efficiency and judicial economy, and cites a "strong public[ ] interest in centralizing bankruptcy proceedings in the bankruptcy court where the case is pending." . . . These concerns do not outweigh PCA's right to have the benefit of its bargain by litigating this action in the venue set out in the contractual forum selection clauses. It is apparent to the Court that ResCap favors Judge Glenn's case management approach in the circumstances of this case, ***and allowing ResCap to avoid litigating this action in Minnesota would condone tactical forum shopping***. The Second Circuit has emphasized forum shopping as a tactic to be addressed—and prevented—in the consideration of a motion to withdraw the reference. *Orion Pictures*, 4 F.3d at 1101. Accordingly, there is cause to withdraw the reference of this adversary proceeding at this time, and PCA's motion is granted to the extent it seeks such relief.

*Id.* at 872 (emphasis added). *See also Rescap Liquidating Trust v. PHH Mortgage Corp.*, 518 B.R. 259, 267 (S.D.N.Y. 2014 (weighing forum shopping factor against debtor's liquidating trust where trust initially filed action in District of Minnesota and after a change of heart, voluntary dismissed that action and brought it in the S.D.N.Y. bankruptcy court); *Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld LLP*, 201 B.R. 635, 641-42 (S.D.N.Y. 1996) (reference withdrawn where bankruptcy trustee engaged in forum shopping behavior by filing an action in order to avoid an outcome of a pending action with overlapping facts).

65.     Finally, in 2024, while acting in control of JJ Arch, the Bankruptcy Court of the Southern District of New York issued proposed findings of remand of the Corporate Control Action based on Mr. Simpson's forum shopping acting on behalf of then-debtor JJ Arch. *In re JJ Arch LLC*, No. 24-10381 (JPM) (Bankr. S.D.N.Y. June 10, 2024), ECF No. 131.

66.     Here the evidence of the forum shopping is ample as is the evidence that the Commercial Division would be a more efficient forum. The Bankruptcy Court simply bypassed all of this evidence on the grounds that its natural that a debtor would prefer its home court. There is simply no basis under the relevant caselaw as to why a debtor should be carved out of the forum

13280114-6

shopping analysis as any other party might be. Such a rule, if held, encourages debtors and estate representatives to manipulate the system and engage in forum shopping in favor of a home court advantage.

67.    While the *Orion factors* decided by the Bankruptcy Court (in Movant's favor) was extraneous to whether the action itself was core or related to, should the District Court revisit those factors or conduct a forum shopping analysis in the context of permissive abstention, the District Court should find that the Debtor engaged in forum shopping as part of any related analysis.

## CONCLUSION

**WHEREFORE**, for the reasons set forth above, Movant respectfully requests that the Court grant its Limited Objection.

Dated: May 28, 2026

**OLSHAN FROME WOLOSKY LLP**

*/s/* Jonathan T. Koevary
Jonathan T. Koevary
Anthony B. Crawford
Dean M. Oswald
1325 Avenue of the Americas
New York, NY 10019
212.452.2300
jkoevary@olshanlaw.com
acrawford@olshanlaw.com
doswald@olshanlaw.com

*Counsel for Arch Real Estate Holdings LLC*

13280114-6

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2026, a true and correct copy of the foregoing was served on all parties in interest by electronic transmission via the Court's ECF system to all parties authorized to receive electronic notice in this case.

*/s/ Jonathan T. Koevary*
Jonathan T. Koevary